# EXHIBIT 1

# LIMITED LIABILITY COMPANY AGREEMENT

## OF

## ELEVATED RETURNS LLC

This limited liability company agreement (this "**Agreement**") is made on the 6th day of October, 2014 by Stephane De Baets ("**SDB**"), as sole member.

SDB desires to organize and operate a limited liability company pursuant to the provisions of the Act (as defined below) under the name "Elevated Returns, LLC" (the "Company").

In consideration of the foregoing and the covenants and agreements set forth herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, this Agreement is hereby adopted as the operating agreement of the Company.

    1.    <u>Certain Definitions</u>. As used in this Agreement unless the context otherwise specifies or requires, the following terms shall have the following meanings:

        a.    "Act" shall mean the Delaware Limited Liability Company Act, as amended from time to time.

        b.    "Member" shall mean SDB and each individual who subsequently is admitted as a Member of the Company (all of whom are sometimes referred to herein collectively as the "Members").

        c.    "Membership Interest" shall mean the number of interests of the Member in the Company, representing all of the rights of a Member in the Company, including a Member's right to a share of the profits and losses of, and the right to receive distributions from, the Company and the right to participate in the management of and vote on matters coming before the Company.

        d.    "Person" shall mean and include an individual, corporation, partnership, association, limited liability company, trust, estate or other entity.

    2.    <u>Formation</u>.  SDB hereby forms a limited liability company pursuant to the provisions of the Act and, for that purpose, SDB has caused a Certificate of Formation (the "Certificate") to be executed and submitted to the Secretary of State of Delaware for filing. The rights and liabilities of the Members shall be as provided in the Act, except as herein otherwise expressly provided.

    3.    <u>Name.</u> The name of the Company shall be Elevated Returns, LLC.

    4.    <u>Office.</u> The Company shall maintain its principal office at such place as the Member may designate from time to time.

    5.    <u>Purposes and Powers.</u> The Company is formed for the purposes of engaging in any lawful act or activity for which a limited liability company may be formed under the Act.

6.  **Term**. The term of the Company shall commence upon the filing of the Certificate and shall continue perpetually until the Company is dissolved, unless sooner dissolved in accordance with the Act or pursuant to the terms of this Agreement.

7.  **Percentage Interests**. Unless and until any additional Member is admitted to the Company, SDB shall own all the Membership Interests of the Company. The number of Membership Interests of each Member in the Company and the percentage of all of the outstanding Membership Interests that each Member's interest represent (collectively, the "Percentage Interests") shall be as set forth on Schedule A attached hereto, as amended from time to time. The Members' respective Percentage Interests shall be adjusted from time to time to the extent necessary to properly reflect the addition of a new Member, the withdrawal of a Member or the transfer of any Membership Interests to a Member.

8.  **Capital and Dues.**

    a.  **Initial Capital Contributions**. Any Person who becomes a Member after the date of this Agreement shall be required as a condition of Membership to make an initial capital contribution equal to the Fair Market Value of the Percentage Interest said Member will receive. For purposes of this Subsection 8(a), the "Fair Market Value" of a Percentage Interest shall mean the fair market value of the Company as a going concern, as determined by the Members in their sole discretion, divided by the total number of Members prior to the addition of the new Member.

    b.  **No Interest on or Return of Capital Contributions**. Members are not entitled to the payment of interest on capital accounts. Except as otherwise provided in this Agreement, no Member is entitled to receive any return of a capital contribution.

    c.  **No Personal Obligation**. Except as may be otherwise provided in the Act, the debts, obligations and liabilities of the Company, whether arising in contract, tort or otherwise, shall be solely the debts, obligations and liabilities of the Company and none of the Members or officers, shall be personally liable for any such debt, obligation or liability of the Company solely by reason of being a Member or officer, except that each Member shall remain personally liable to the Company for the payment of his/her unpaid contributions of capital to the Company, as required pursuant to this Section 8. The failure of the Company to observe any formalities or requirements relating to the exercise of its powers or management of its business or affairs under the Act or this Agreement shall not be grounds for imposing personal liability on the Members or officers for liabilities of the Company.

9.  **Profit. Loss and Distributions.**

    a.  **Allocation of Profit and Losses**. The net profits and the net losses of the Company shall be allocated to the Member in accordance with the positive balance in the Member's capital account. The terms "net profits" and "net losses" shall mean, for each fiscal year or other period, an amount equal to the Company's taxable income or loss for such year or period, determined in accordance with the Code, as amended, with the goal that the Company is treated for tax purposes as an entity which is disregarded as a separate entity from its owner under the Code.

    b.  **Cash flow**. The "cash flow of the Company" for each fiscal year or other period shall be equal to the net profits or net losses of the Company for such year or period, determined in accordance with Section 9 (a), above, plus:

    i. depreciation and other noncash charges deducted in determining such net profits or net losses;

    ii. the net cash proceeds resulting from any refinancing of Company property or the sale of any Company property received during such year or period, and minus:

    iii. principal payments made during such year or period on Company loans;

    iv. any other cash expenditures made during such year or period which have not been deducted in determining the net profits or net losses of the Company for such year or period; and

    v. any amount determined by the Member to be required to maintain sufficient working capital and/or a reserve for repairs and/or replacements.

The cash flow of the Company shall be determined for each fiscal year and, as so determined, shall be distributed to the Member at such times as determined by the Member. Nothing herein shall mandate the distribution of cash flow.

  c. **Fiscal Year.** The fiscal year of the Company shall be the calendar year. Distribution shall be made to the Member at the times and in the aggregate amounts as determined by the Member. Such distributions shall be allocated to the Member.

 10. **Members.**

  a. **Names and Addresses.** The names and addresses of the Members are as set forth on **Schedule A** attached hereto, as amended from time to time.

  b. **Admission of Additional Members.** One or more additional members may be admitted to the Company with the consent of the Member upon such terms and conditions as the Member, in its discretion, shall approve. In the event of the admission of any new Member or Members, the Member and such additional Member or Members shall execute an appropriate amendment to this Agreement reflecting such terms and conditions and such other matters which PW deems appropriate or upon which the Member and such additional Member or Members shall agree.

 11. **Management of the Company.**

  a. **Member Managed.** The business affairs of the Company shall be managed by the Member in accordance with the Act. Management of the Company shall be vested in the Member. The Member may appoint a President, one or more Vice Presidents, a Treasurer, a Secretary and/or one or more other officers as it deems necessary, desirable or appropriate, with such authority and upon such terms and conditions as the Member deems appropriate. Any such officer shall serve at the pleasure of the Member and may be removed, with or without cause, by the Member.

  b. **General.** Except where otherwise required by the law, the Member shall be responsible and have sole authority for all aspects of the day-to-day management and direction of the Company, and shall have all of the power and authority permitted to be exercised by Members under the Act in furtherance thereof.

3

12. **Dissolution and Liquidation of the Company**.

    a. The Company shall be dissolved and its affairs wound up upon the first to occur of the following:

        i. the affirmative vote of the Member;

        ii. the entry of a decree of judicial dissolution under Section 18-802 of the Act.

    b. **Procedure for Winding Up and Distribution**. If the Company is dissolved, the Member shall wind up its affairs. Upon the winding up of the Company, the Company's assets shall be distributed as follows, unless otherwise required by applicable law:

        i. to pay all creditors of the Company other than Member, in the order of priority provided by law;

        ii. to pay all creditors of the Company that are Members; and

        iii. after payment of all debts, liabilities and obligations of the Company, to adjust the Member's capital accounts in accordance with this Agreement and to distribute to the Members their respective positive capital account balances, if any.

13. **Indemnification**. Except as provided by law, the Company shall indemnify any Member or officer made, or threatened to be made, a party to any action or proceeding, whether criminal or civil, including an action by or in the right of the Company to procure a judgment in its favor, by reason of the fact that such Member or officer, or such Member's or officer's testator or intestate, is or was a Member or officer of the Company, against judgments, fines, amounts paid in settlement and reasonable expenses, including attorneys' fees actually and necessarily incurred as a result of such action or proceeding or any appeal thereon.

    a. **Complete Agreement: Amendments**. This Agreement constitutes the complete and exclusive statement of the Member and supersedes all prior written and oral statements with respect to the subject matter hereof. This Agreement may only be modified or amended in writing.

    b. **Governing Law**. All questions concerning the construction, validity and interpretation of this Agreement and the performance of the obligations imposed by this Agreement shall be governed by the laws of the State of Delaware, without giving effect to principles of conflicts of laws.

    c. **Binding Provisions**. This Agreement shall be binding upon and inure to the benefit of the Member and its respective heirs, distributees, executors, administrators, personal representatives, successors and permitted assigns.

    d. **Construction: Effectiveness**. Common nouns and pronouns shall be deemed to refer to the masculine, feminine or neuter, singular or plural, as the context in which they are used may require. All headings herein are inserted only for convenience and ease of reference and are not to be considered in the interpretation of any provision of this Agreement. This Agreement shall become effective upon its execution and delivery by one or more Members, and if only one Member has executed and delivered this Agreement, then all references to the Members shall refer to such Member.

     e. <u>Severability: Waiver</u>. If any provision of this Agreement shall be found by a court of competent jurisdiction or administrative agency to be illegal or in conflict with applicable law, the same shall either be conformed to comply with applicable law or stricken, if not so conformable, so as not to affect the validity or enforceability of the remainder of this Agreement. Neither the failure of nor any delay on the part of any party hereto in exercising any right, power or privilege hereunder shall preclude other or further exercise thereof, nor shall any waiver of any right, power, privilege or default hereunder constitute a waiver of any other right, power, privilege or default of the same or of any other term or provision. No waiver shall be effective unless in writing.

The party hereto is signing this agreement on the date first set forth above.

_[signature]_

Stephane De Baets

5

## Schedule A

| Member | Percentage Interest |
|---|---|
| Stephane De Baets | 100% |

6



## ELEVATED RETURNS LLC

## WRITTEN CONSENT OF THE SOLE MEMBER OF

The undersigned, being the sole member of Elevated Returns, LLC, a Delaware limited liability company (the "**Company**"), does hereby adopt the following resolutions:

- that the following persons are hereby appointed to the office set forth opposite their names, to hold such office or offices until a successor or successors are appointed and qualified:

| Name | Office |
| --- | --- |
| Stephane De Baets | President |
| Simon Prisk | Vice President |
| Galia Antebi | Secretary |
| Stanley Ruchelman | Assistant Secretary |

This consent is being signed on the 6th day of October, 2014.

_____
Stephane De Baets