IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

**Civil Action No.: 24-cv-01950-CNS**

JASON KIRSCHENBAUM

    Plaintiff,

v.

STEPHANE DE BAETS, ELEVATED RETURNS, LLC, 315 EAST DEAN ASSOCIATES, INC., and ASPEN DIGITAL, INC.

    Defendants.

---

## MOTION TO DISMISS

---

Defendants Stephane De Baets ("De Baets"), Elevated Returns, LLC ("Elevated Returns"), 315 East Dean Associates, Inc. ("East Dean"), and Aspen Digital, Inc. ("Aspen Digital") (collectively "Defendants"), by and through their attorneys, Garfield & Hecht, P.C., hereby respectfully submit this Motion to Dismiss pursuant to Rule 12(b)(6). Dismissal is required by res judicata based on the prior rulings on the merits of litigation initiated by Plaintiff Jason Kirschenbaum ("Plaintiff") against the same Defendants in New York State Supreme Court, Commercial Division, New York County, and by Plaintiff's failure to plead the requisite elements of his federal securities claims.

### I. CERTIFICATION CONCERNING CONFERRAL

In accordance with Civil Practice Standard 7.1B, counsel for Defendants conferred with counsel for Plaintiff regarding the relief requested in this Motion. During conferral counsel for Defendants notified counsel for Plaintiff that Plaintiff's claims are barred by

3067229.6

*res judicata* and Plaintiff's inability to plead federal securities claims, defects that are not curable. Plaintiff's counsel disagreed. Therefore, this dispositive Motion is opposed.

## II. INTRODUCTION

This case is an undisguised attempt to relitigate claims that Plaintiff has already lost (or failed to timely assert) in New York State Court. In his Complaint and Demand for Jury Trial ("Complaint"), Plaintiff asserts claims against Defendants for declaratory relief, breach of contract, conversion, civil theft, violation of Section 20(a) of the Exchange Act (as defined in the Complaint), and violation of Section 9(a) and 9(f) of the Exchange Act. The claims allegedly arise out of a set of business transactions involving Plaintiff and Defendants between 2016 and 2020. Plaintiff claims to have assisted Defendants in developing various investment vehicles and alleges that he invested significant sums of money into a digital token that he and Defendants co-created but has been unable to redeem his investment; his lawsuit seeks to recover the funds invested.

However, Plaintiff has already brought this same lawsuit in a different jurisdiction and lost. As acknowledged in the Complaint, in the summer of 2019, Plaintiff filed a lawsuit against the same Defendants (and others) in the Supreme Court of the State of New York County of New York: Commercial Division (the "New York Lawsuit"). Copies of the initial Complaint, the First Amended Complaint, and the Second Amended Complaint from the New York Lawsuit (collectively, the "New York Complaints") are attached as **Exhibits A, B, and D** to the accompanying attorney's declaration. As is evident from the New York Complaints, the New York Lawsuit related to the same alleged set of business transactions involving Plaintiff and Defendants. There, Plaintiff asserted claims for breach of

contract, conversion, declaratory judgment, fraud, breach of fiduciary duties, accounting, and various quasi-contract claims. All have been dismissed, and two efforts in 2023 to revive them and add new claims involving the same facts were denied.

Plaintiff now seeks to relitigate the same claims and issues rejected in the New York State Court. However, the claim preclusion doctrine bars the relitigation of claims that were brought or that could have been brought in a prior lawsuit that was decided on the merits. The New York Lawsuit was resolved on the merits, with most claims dismissed based on documentary evidence and legal infirmity, the balance by subsequent summary judgment. Thus, all of Plaintiff's state law claims that arise from the transactional facts at issue in the New York Lawsuit are barred. The Exchange Act claims are likewise barred for inability to allege the requisite elements for a private damages action.

### III. FACTUAL AND PROCEDURAL BACKGROUND

A. **PROCEDURAL BACKGROUND**[1]

The New York Lawsuit extended over four years, through three complaints and two further proposed complaints that were rejected for lack of merit. There, Plaintiff asserted claims against the Defendants in this action for breach of contract, conversion, declaratory judgment, and various other state law claims, all of which were dismissed.

Plaintiff first commenced the New York Lawsuit in June 2019, alleging purported causes of action for breach of contract, breach of fiduciary duty, and various quasi-contractual causes of action. The gravamen of the Complaint was that Plaintiff had entered

---

[1] The facts below are drawn from the Declaration of Richard G. Menaker, dated October 2, 2024, and the exhibits thereto, which are drawn from the New York Lawsuit docket. See **Exhibit 1, Menaker Decl.**

into a "partnership" with one or more of the Defendants to create income-producing entities and was now entitled to millions of dollars from the supposed business relationship, which was said to arise from a letter agreement whose terms were incorporated into the Complaint. All defendants moved to dismiss for failure to state a cause of action.

Rather than oppose the motion to dismiss, Plaintiff filed an Amended Complaint (Menaker Decl. Ex. B) that changed his characterization of the alleged relationship from "partnership" to a "joint venture," abandoned his breach of contract claim, and added causes of action for conversion, declaratory judgment, and fraud. The Court indicated that it would include the Amended Complaint in the record of the motion to dismiss and offered Plaintiff the opportunity to oppose the motion or seek leave to amend further. Plaintiff then filed opposition papers and a motion to file a Second Amended Complaint.

On October 16, 2020, the Court issued its Decision and Order ("2020 Decision") dismissing both the original Complaint and the Amended Complaint as to all Defendants. *See* Menaker Decl., Ex. C. Among the claims dismissed were state-law claims asserted in this action, as to which the Court stated as follows:

> [**CONVERSION:**] Mr. Kirschenbaum alleges that he contributed over $1.36 million to Aspen Coin, and that the fee from the Aspen Coin raise was put towards a contribution in Securitize. Mr. Kirschenbaum further alleges that the defendants were obliged to return his funds by way of a distribution or an opportunity to liquidate or redeem his interests in either Aspen Coin or Securitize. However, Mr. Kirschenbaum does not explain how his invested funds were subject to any obligation to be returned and whether such obligation was conferred by contract or another manner. In addition, Mr. Kirschenbaum does not identify the funds he seeks to have returned as required to state a claim for conversion. An alleged breach of contract is insufficient to serve as a predicate for a claim of conversion. Accordingly, the second cause of action for conversion must be dismissed. Nothing alleged in the Second Amended Complaint remedies the foregoing defects and the branch of the . . . cross motion to amend his conversion claim is therefore denied.

> **[DECLARATORY JUDGMENT:]** Mr. Kirschenbaum's declaratory judgment cause of action seeks a declaration that he is a "rightful member of the various entities and joint ventures" as described in the Amended Complaint. However, this claim is barred by the documentary evidence – i.e., the Agreement – which specifies that (i) the Agreement would terminate if the parties were unsuccessful in listing the Sunset Tower REIT (i.e., "if we are not successful on the first try/deal") and (ii) that nothing therein was "intended to create a partnership or joint venture between parties". Stated differently, Mr. Kirschenbaum's ultimate claim to a 25% equity interest in the formation of an advisory company, either ER or ER Global, is resolved by the express terms of the Agreement and there is no basis to maintain a declaratory judgment under these circumstances Likewise, Mr. Kirschenbaum fails to identify a justiciable controversy over his claim to a share in any other purported projects with the defendants. Accordingly, the eighth cause of action for a declaratory judgment is dismissed and his cross motion to amend this claim is denied.

2020 Decision at 10-11, 16-17 (citations omitted).

The Court also denied leave to add a claim for breach of contract (abandoned in Amended Complaint and reasserted in the proposed Second Amended Complaint):

> **[BREACH OF CONTRACT:]** In the Second Amended Complaint, Mr. Kirschenbaum alleges that he entered into several enforceable agreements with Mr. De Baets and ER, including the Agreement, but fails to identify any specific breach of said agreements by the two defendants. In addition, the purported breach of contract claim is flatly contradicted by the documentary evidence, namely the Agreement itself. As discussed above, the Agreement provides that Mr. Kirschenbaum would be compensated with 50% of any advisory fee paid to the advisory company and 25% equity in the advisory equity, but only upon a successful listing of the REIT on the NASDAQ, which did not occur. Furthermore, the Agreement specifies that an unsuccessful first listing would result in dissolution of the advisory company and that no further partnership or agreements would exist in relation to the advisory company. In other words, the failure to list the Sunset Tower REIT on the NASDAQ automatically resulted in dissipation of the contemplated advisory company and any rights conferred under the Agreement in relation to the advisory company. . . . In addition, Mr. Kirschenbaum's conclusory allegations that he entered into multiple enforceable agreements with Mr. De Baets and ER rings hollow because Mr. Kirschenbaum does not specify any other contracts that the parties entered into or the specific provisions that were allegedly breached. Accordingly, that branch of the cross motion for leave to add a claim for breach of contract is denied.

*Id*., 17-18 (citations omitted).

Importantly, the Court allowed Plaintiff to move forward with a claim for unjust enrichment, described by the Court as follows:

> In sum and substance, Mr. Kirschenbaum alleges that he contributed significantly to a number of projects: the Sunset Tower deal, creation of the Aspen REIT and Aspen Coin, the acquisition of a certain interest in Securitize, development of ER/ER Global, and a capital raise for the acquisition of Seamico Securities. ***More specifically, Mr. Kirschenbaum asserts that he contributed $1 million to the Aspen REIT, $1.36 million to Aspen Coin, and invested $1 million in Securitize, and that the defendants have denied him any ability to liquidate or redeem his interests in the same.*** According every favorable inference to Mr. Kirschenbaum, as the court must on a motion to dismiss, Mr. Kirschenbaum has sufficiently alleged that the defendants were unjustly enriched through his monetary contributions to the Aspen REIT, Aspen Coin, and Securitize and, thus, states a claim for unjust enrichment.

2020 Decision at 13-14 (citations omitted) (emphasis added). Thus, Plaintiff was allowed to prosecute the only claim he stated with respect to his alleged contributions to the Aspen REIT, Aspen Coin, and Securitize transactions under a theory of unjust enrichment, which was alleged in Plaintiff's Second Amended Complaint against Elevated Returns, LLC and Stephane De Baets. The parties then proceeded to discovery.

Discovery was exhaustive. Defendants produced over 30,000 responsive documents consisting of over 238,000 pages. Plaintiff's productions were similarly substantial, and included documents voluntarily produced to Plaintiff by Securitize, without a subpoena. Both Plaintiff and De Baets were deposed. Menaker Decl., ¶ 12.

At the conclusion of discovery, Defendants moved for summary judgment, and Plaintiff cross-moved for leave to serve a Third Amended Complaint that sought to add claims for fraud and conversion. The New York Court denied Plaintiff's cross-motion "because the proposed Third Amended Complaint is palpably insufficient as a matter of law" and granted Defendants' motion for summary judgment "because there are no material

3067229.6

issues of [f]act which warrant a trial." Menaker Decl., Ex. F at 1. In granting the motion for summary judgment the New York Court held that, "on the fully developed record, each of these alleged investments [that were named in the 2020 Decision as potential bases for unjust enrichment] is governed by an existing and enforceable contract such that Mr. Kirschenbaum cannot maintain a claim sounding in unjust enrichment." *Id*. at 5.

In November 2023, Plaintiff filed another motion for reargument, renewal, and leave to file a Third Amended Complaint. In denying the motion, the Court explained:

> Plaintiff argues that the existence of several contracts governing the transactions he entered into with Defendants presents an issue of fact warranting reargument and denial of Defendant's motion for summary judgment. But the Court knew of and expressly relied on the existence of these contracts in granting the Defendant's motion seeking summary judgment. Discovery has revealed that ***the parties' relationships were governed by specific agreements and that there are no issues of fact that these agreements were not violated*** and that the Plaintiff is not otherwise entitled to relief based on a claim for unjust enrichment.
>
> \*   \*   \*
>
> Plaintiff's proposed breach of contract claim alleging Defendants owe Plaintiff $1.36 million, apparently pursuant to his investment in Aspen Coin, would nevertheless be unavailing, because Plaintiff's proposed Third Amended Complaint fails to allege Defendants committed any specific breach of the October 2, 2018 Purchase Agreement, or that Defendants have any control or custody over these funds. As to Plaintiff's claim to the one-third portion of an alleged $1 million fee paid out to Defendants, Plaintiff's proposed Third Amended Complaint sues for these funds on the basis of fraud, not breach of contract. The Court dismissed this same fraud claim in its October 16, 2020 decision and order, and denied Plaintiff leave to amend to renew this claim post-discovery in its October 30, 2023 decision and order, finding the claim still subject to the same infirmities that warranted its dismissal. Plaintiff has made no effort to fix these infirmities pursuant to this motion. To the extent Plaintiff seeks leave to amend to bring a breach of contract claim on the purported one-third fee (and it is not clear he does), this too fails because Plaintiff has not produced evidence showing he is even a party to the November 2, 2018 Stock Purchase Agreement or that he contributed any funds to Defendants' investment in Securitize under that Agreement such that he is entitled to any payment pursuant to that Agreement. Thus, this Agreement does not provide Plaintiff and ground for relief and such a claim is palpably insufficient as a matter of law and it does not matter that monies invested in Securitize were returned.

Menaker Decl., Ex. H (emphasis added).

Notably, although New York law permits interlocutory appeals, Plaintiff did not appeal any of these decisions. Menaker Decl, ¶ 19. Defendants submitted a proposed final judgment to the Court on July 11, 2024, and it was signed by the Court on August 9, 2024; it is now awaiting entry by the county clerk, which is a purely ministerial act. *Id*., ¶ 20.

### B. COMMON ALLEGATIONS BETWEEN THIS ACTION AND THE NEW YORK LAWSUIT

Plaintiff filed his Complaint in this action on July 15, 2024. The allegations of the Complaint mirror (largely verbatim) the pleadings in the New York Lawsuit.

#### 1. The "Initial Agreement."

Plaintiff and De Baets and Elevated Returns allegedly entered into an agreement, (termed the "Initial Agreement" in the Complaint) providing for "a compensation structure" for a single asset real estate investment trust ('REIT')" "using the Sunset Tower Hotel in Los Angeles, California and [for] other future deals." Compl. ¶¶ 23, 39; *cf*. Menaker Decl., Ex. E (the proposed Third Amended Complaint, hereinafter "PTAC"), ¶¶ 13, 24.

#### 2. The Sunset Tower Hotel.

The Complaint alleges that, based on the Initial Agreement, "Plaintiff expended significant time and effort" on a series of projects starting with an initial listing of the Sunset Tower Hotel in Los Angeles on the Nasdaq Stock Exchange." Compl. ¶ 50; *cf*. PTAC ¶ 31. The pleading acknowledges that the listing did not occur, with the hotel being sold in a non-public transaction. Compl. ¶ 58; *cf*. PTAC ¶ 39.

3067229.6

8

### 3. "Reaffirmation" of the Initial Agreement for Other Ventures.

The Complaint alleges that Plaintiff contributed to a series of ventures undertaken by De Baets. In each instance, it is averred that "the arrangements and understandings contemplated by the Initial Agreement … were reaffirmed between the parties, both orally and in writing." Compl. ¶ 69; *see also id*., ¶¶ 74, 81, 83; *cf.* PTAC, ¶¶ 50, 55, 63.

**Aspen REIT.** The first venture was an acquisition by Defendant East Dean of the St. Regis Aspen Hotel ("St. Regis") for the purpose of forming a single-asset REIT offering ("Aspen REIT") of the kind that had failed for Sunset Tower. Compl. ¶¶ 65-66; *cf.* PTAC ¶¶ 47-48. Plaintiff alleges "De Baets tanked the listing seemingly for the sole purpose of depriving Plaintiff from any remuneration due him as a member of Aspen REIT, and in an effort to restructure and evade his obligations to Plaintiff." Compl. ¶ 72; *cf.* PTAC ¶ 53.

**Aspen Coin.** The next venture was creation of an alternative to Aspen REIT to permit an offering of equity in St. Regis using "a special securitized coin created specifically for the hotel's sale, known as Aspen Coin." Compl. ¶ 76; *cf.* PTAC ¶ 57. Plaintiff claims that he himself invested in the venture out of concern derived from assertions by De Baets that if the financing were unsuccessful, his "equity interests and monetary as well as non-monetary investments would be worthless." Compl. ¶ 79; *cf.* PTAC ¶ 60. According to the Complaint, $18 million was raised, including Plaintiff's own $1.36 million investment, and Aspen Coin was a success. Compl. ¶¶ 80, 81; *cf.* PTAC ¶¶ 62, 63.

**Securitize.** Plaintiff is alleged to have been "instrumental in the capital raises for the acquisition of certain interests in Securitize, Seamico and [unspecified] other ventures." Compl. ¶ 87; *cf.* PTAC ¶ 64. In exchange for an investment of $1 million, allegedly

"paid collectively by Plaintiff, and his partners, defendant De Baets, TJ, and defendant Elevated Returns, LLC, would receive" stock in Securitize. Compl. ¶ 89; *cf.* PTAC ¶ 66. Plaintiff is alleged to have invested his share of a fee earned "by Plaintiff and his former partners, de Baets and TJ in connection to the raise done on behalf of Aspen Coin." Compl. ¶ 91; *cf.* PTAC ¶ 68. The transaction is alleged to have been terminated, with the $1 million returned to defendant 315 East Dean Associates. Compl. ¶ 95; *cf.* PTAC ¶ 72. According to the Complaint, "Defendants have failed to make any distributions from the money invested in Securitize or provide Plaintiff with any information as to its current value" and have "denied Plaintiff … access to his interests." Compl. ¶ 100; *cf.* PTAC ¶ 77.

    **4. Aspen Coin Buy-Back Program.**

The Complaint alleges that, at some point after the successful offering of Aspen Coin, some or all of the Defendants created a buy-back Program for Aspen Coin. Compl. ¶ 101. Through April 2024, there were six buyback programs; in the sixth program, "some Defendants agreed to buy-back up to $250,000 worth of token in an effort to reduce the supply of Aspen Coin." *Id*. ¶¶ 102, 103. In connection with these buyback programs, "Defendants have consistently maintained . . . that Aspen Digital tokens can be sold back to Defendants through their Buy Back program, and that Defendants agreed to buy back up to $250,000 worth of token." *Id*., ¶ 106. Plaintiff has attempted to sell his tokens, but "only an insignificant number of tokens were ever sold." *Id*., ¶¶ 109, 11-112. Defendant De Baets is alleged to be the sole director and decision-maker for the program, and to have "manipulated the program to create an illusion that there is liquidity, demand, and that the asset is trading above $1, all to benefit himself." *Id*., ¶¶ 110, 115. The program appears

3067229.6

to be successful; its "only result has been a false sense of liquidity, increased value of the token, and increased volume on the trading platform." *Id*., ¶ 116. Defendants are alleged to have also "suspended distributions," preventing Plaintiff from "exit[ing] his investment or receiv[ing] any of the profits he should otherwise be entitled to." *Id*., ¶ 117.

5. **Plaintiff's Claims.**

The Complaint alleges six counts, four of which are plainly duplicative of claims asserted in the New York Lawsuit.

Count I of the Complaint seeks a declaratory judgment to resolve an alleged "justiciable controversy . . . between Plaintiff and defendant De Baets as to their rights, duties, and responsibilities as related to the existence of a partnership, joint venture, or other equity interest in Elevated Returns, 315 East Dean Associates, and Aspen Digital." *Id*., ¶ 121. To resolve this controversy, Plaintiff claims to be "entitled to a declaratory judgment that he holds a 25% equity interest in all ventures in connection with the Initial Agreement and the agreements stemming from it." *Id*., ¶ 125; *cf*., Menaker Decl., Ex. B (Amended Complaint), ¶ 114 ("Plaintiff seeks a declaratory judgment . . . declaring Plaintiff a rightful member of the various entities and joint ventures, as described more fully above.").

Count II asserts a breach of contract claim against all Defendants, alleging that they have "entered lawful and enforceable agreements" with Plaintiff, then "breached the agreements . . . and continue to breach same by inter alia failing to make requisite distributions or provide an accounting," entitling Plaintiff to "damages in an amount to be determined but not less than $1.36m." Compl. ¶¶ 127, 129, 130; *cf*., Menaker Decl., Ex. G (Second Proposed Third Amended Complaint), ¶¶ 87, 89, 90.

Count III asserts a claim for conversion of "the funds transferred to 315 East Dean Associates, Inc. from Securitize" (Compl. ¶ 132; *cf.*, PTAC ¶ 93), and Count IV asserts a Colorado statutory claim for civil theft of the same funds (Compl. ¶ 137), though there is no allegation in the Complaint that the funds ever were or should have been in Colorado.

Count VI asserts claims against all Defendants under Sections 9(a) and 9(f) of the Securities Exchange Act of 1934 for "(1) deceiv[ing] the investing public, including Plaintiff and other Class members [*sic*] . . .; (2) engag[ing] in a scheme to inflate the price of Aspen Digital; and (3) mislead[ing] and caus[ing] Plaintiff to sell securities at artificially manipulated prices." *Id*. ¶ 154. The Defendants are alleged to have "made [unspecified] statements which were at the time and in light of the circumstances under which they were made, false or misleading with respect to the value of securities." *Id*. ¶ 158. Plaintiff alleges he believed "said misrepresentations and omissions . . . to be true," and that, had he "known the truth regarding the true value of the securities and Defendants' price manipulation, which was not disclosed by Defendants, Plaintiff would not have transacted for Defendants' securities, or, if he had, he would not have done so at the artificially inflated prices." *Id*., ¶ 161. Finally, Count V seeks to hold Mr. De Baets liable as a controlling person under Section 20(a) of the Exchange Act for violations set forth in Count VI.

## IV. ARGUMENT

### A. LEGAL STANDARDS

Defendants bring this Motion under Rule 12(b)(6), which allows for early dismissal of a Complaint under the doctrine of claim preclusion. *Stan Lee Media, Inc. v. Walt Disney Co.*, 774 F.3d 1292 (10th Cir. 2014) (affirming dismissal on claim preclusion principles

3067229.6

under Rule 12(b)(6)). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 861 F.3d 1081, 1103 (10th Cir. 2017).

### B. THIS MOTION NEED NOT BE CONVERTED TO A MOTION FOR SUMMARY JUDGMENT

Civil Practice Standard 7.1B(c) requires a Rule 12(b) movant who relies on matters outside the pleadings to address whether the motion should be converted into a motion for summary judgment. In this case, the Motion need not be converted.

On a motion under Rule 12(b)(6), the Court may consider the contents of the complaint, and (1) documents that the complaint incorporates by reference; (2) documents referred to in the Complaint if the documents are central to the plaintiff's claim and the parties do not dispute their authenticity; and (3) matters of which the Court may take judicial notice. *Wasatch Equality v. Alta Ski Lifts Co.*, 820 F.3d 381, 386 (10th Cir. 2016).

Here, the Complaint references the New York Lawsuit, even quoting the court order granting Defendants' Motion for Summary Judgment. Compl. ¶¶ 17-20. As such, Plaintiff has incorporated filings from the New York Lawsuit by reference. Moreover, the filings in the New York Lawsuit are subject to judicial notice. *See* F.R.E. 201; *Bruce v. City and County of Denver*, 57 F.4th 738, 742 fn.3 (10th Cir. 2023) ("In ruling on a motion to dismiss, a federal court may take judicial notice of another court's publicly filed records if they have a direct relation to the matters at issue"). Thus, the Court may consider the New York Lawsuit filings without converting the Motion to one for summary judgment.

3067229.6

13

C.  **PLAINTIFF'S STATE-LAW CLAIMS ARE BARRED BY CLAIM PRECLUSION.**

"Under res judicata, or claim preclusion, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in the prior action." *Satsky v. Paramount Communications, Inc.*, 7 F.3d 1464, 1467 (10th Cir. 1993). When a defendant in federal court seeks dismissal on claim preclusion grounds based upon the prior dismissal of similar litigation in state court, the federal court must, under 28 U.S.C. § 1738, give to the state-court judgment "the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984); *see also Stone v. Dep't of Aviation*, 453 F.3d 1271, 1275 (10th Cir. 2006). Here, New York law applies because that is where Plaintiff filed his original lawsuit.

In New York, as in Colorado, "claim preclusion bars successive litigation based upon the same transaction or series of connected transactions if: (i) there is a judgment on the merits rendered by a court of competent jurisdiction, and (ii) the party against whom the doctrine is invoked was a party to the previous action, or in privity with a party who was." *People ex rel. Spitzer v. Applied Card Systems, Inc.*, 11 N.Y.3d 105, 122 (2008) (internal cites omitted). The preclusion applies not just to the matters that were put in issue in the prior action, "but also as to any that may have been so litigated, when the two causes of action have such a measure of identity that a different judgment in the second would destroy or impair rights or interests established by the first." *Schuykill Fuel Corp. v. B. & C. Nieberg Realty Corp.*, 250 N.Y. 304, 306-07 (1929) (Cardozo Ch. J.). So, "once a claim is brought to a final conclusion, all other claims arising out of the same transaction

or series of transactions are barred, even if based upon different theories or if seeking a different remedy." *Landau v. LaRossa, Mitchell & Ross*, 11 N.Y.3d 8, 12 (2008).

This lawsuit and the New York Lawsuit involve identical relevant parties. The questions before the Court are: (1) was there a final judgment on the merits in the New York Lawsuit; and (2) do the claims in this case arise out of the same transaction or series of transactions as the claims in the New York Lawsuit. The answer to both questions is yes.

First, the rulings dismissing most claims in the New York Lawsuit with prejudice and the sole remaining claim by summary judgment are sufficiently final to satisfy the requirements for claim preclusion. An order dismissing a cause of action with prejudice has full claim preclusion effect as to that claim, as does an order dismissing a complaint by summary judgment. D. Siegel & P. Connors, *New York Practice* (6th ed. 2018) §§ 276, 287. Even if a formal judgment has not been entered, an order that meets the requisites of finality and opportunity to contest "gets full res judicata treatment in an attempted second action." *Id.* § 445, at 855; *see, e.g.*, *QFI, Inc. v. Shirley*, 60 A.D.3d 656 (N.Y. App. Div., 2d Dep't 2009) (grant of uncontested motion for summary judgment).

Second, the claims in the two cases arise out of the same series of transactions. Whether claims arise from the same series of transactions depends on three factors: (1) the relation of the facts in time, space, origin, and motivation; (2) whether the claims form a convenient trial unit; and (3) whether treating the claims as a unit meets the expectation of the parties. *Smith v. Russell Sage College*, 54 N.Y.2d 185, 192-193 (1981). Here, the virtually identical wording of Plaintiff's allegations in his complaints in both cases makes clear that the two cases concern the same series of transactions.

In the complaints in both cases, Plaintiff claims to have invested significant funds and labor into several projects, including (a) the creation of the Sunset Tower REIT; (b) the creation of the Aspen REIT and Aspen Coin; and (c) the acquisition of a certain interest in Securitize. Compl. ¶ 47; *cf.* PTAC ¶ 29. It is Plaintiff's alleged contributions to these ventures that purported to be the basis of his claims in this lawsuit and the New York Lawsuit. *See, e.g.,* Compl. ¶ 3 ("The instant action seeks to recover the significant sums of monies invested by Plaintiff with Defendants…"); *cf.* PTAC ¶ 82 (claiming that "Defendants have been unjustly enriched by the renumeration [*sic*] they retained for themselves, which was due solely to Plaintiff's actions" referring to his alleged assistance with the creation of the above-stated ventures).

Likewise, in both cases, Plaintiff alleges he invested in various ventures he supposedly helped to set up and then was deprived of benefits he should have received from those investments, including alleged investments of 1.36 million dollars in Aspen Coin (Compl. ¶¶ 80, 81; *cf.* PTAC ¶¶ 62 & 63) and a third of a million dollars in Securitize. Compl. ¶ 89; *cf.* PTAC ¶ 66. These two alleged investments, along with a claim to equity "in connection with the Initial Agreement and the agreements stemming from it" (Compl. ¶ 125) are the basis for Counts I-IV here, and of the claims in the New York Lawsuit.

Thus, the factors used to determine if claims arise from the same series of transactions all weigh heavily in favor of finding that the state-law claims here do indeed arise from the same transaction. First, not only do the facts alleged relate in time, space, origin, and motivation—the facts alleged are nearly identical. Further, the claims form a convenient trial unit because they all relate to the same business deals between Plaintiff and

Defendant and Defendants' acts that allegedly affected the value of those deals. *See UBS Sec. LLC v. Highland Capital Mgmt*, 86 A.D.3d 469, 475 (N.Y. App. Div., 1st Dep't 2011) (holding that the claims asserted in two separate actions formed a convenient trial unit because they both related to the same business deal). And, treating the state-law claims as such would not contravene the parties' expectations because the claims were asserted in the previous lawsuit. *Id.* Thus, the state-law claims arise out of the same series of transactions, and so must be dismissed under the doctrine of claim preclusion.

### D. PLAINTIFFS' FEDERAL CLAIMS FAIL TO STATE A CLAIM FOR RELIEF.

Plaintiff's Exchange Act claims fail to state a claim for relief because Plaintiff has not pleaded and cannot plead facts sufficient to establish the elements of those claims. Counts V and VI require Plaintiff to establish Defendants' liability under Section 9(a) of the Exchange Act, 15 U.S.C. § 78i. Though Plaintiff does not state which subsections of Section 9(a) form the basis for his claim, the only subsections that are at all germane are subsections 9(a)(2) and 9(a)(4). "In order to show a violation of subsection 9(a)(2) in a private suit under subsection 9(e), a plaintiff must plead and prove that (1) a series of transactions in a security creating actual or apparent trading in that security or raising or depressing the price of that security, (2) carried out with scienter (3) for the purpose of inducing the security's sale or purchase by others, (4) was relied on by the plaintiff, (5) and affected plaintiff's purchase or selling price." *Chemetron Corp. v. Bus. Funds, Inc.*, 682 F.2d 1149, 1164 (5th Cir. 1982) (footnotes omitted), *vacated and remanded on other grounds*, 460 U.S. 1007 (1983), *initial opinion adhered to on remand*, 718 F.2d 725 (5th Cir.), *cert denied*, 460 U.S. 1013 (1983); *accord*, *Perry v. Eastman Kodak Co.*, 962 F.2d

10 (7th Cir. 1992). Similarly, "Subsection 9(a)(4), as privately enforced through subsection 9(e), requires a (1) misstatement or omission (2) of material fact (3) made with scienter (4) for the purpose of inducing a sale or purchase of a security (5) on which the plaintiff relied (6) that affected plaintiff's purchase or selling price." *Id*. at 1161-62 (footnotes omitted). *Accord*, *Salvani v. InvestorsHub.com, Inc.*, 628 F. App'x 784, 786 (2d Cir. 2015).

Thus, to prevail on his Exchange Act claims, Plaintiff will need to show that he relied on Defendants' statements, acts, or omissions, and that Defendants caused him to experience a loss. *See* Exchange Act § 9(f), 15 U.S.C. 78i(f) (authorizing suit "to recover the damages sustained as a result of any such act or transaction" in violation of Section 9(a)). Plaintiff cannot meet these requirements since he does not allege a loss at all. Rather, he contends that Defendants' acts led to "increased value of the token, and increased volume on the trading platform." Compl, ¶ 116.

Importantly, this is not a case in which Plaintiff purchased his securities at an artificially inflated price, then sold at a loss; Plaintiff purchased his securities during the initial coin offering in 2018, allegedly believing that his investment was necessary for the deal to close. *Id*., ¶¶ 76-81. The buyback program is not alleged to have begun before 2024, and certainly could not have begun before the initial offering closed, so Plaintiff could not have relied on that program in purchasing Aspen Coin securities. Plaintiff does not allege that he sold *any* Aspen Coin securities at a loss, whether because of the buyback program or otherwise, so he cannot establish a loss to recover (let alone causation of that loss by Defendants), and his claims under the Exchange Act must be dismissed.

3067229.6

## V. CONCLUSION

This vexatious lawsuit should be dismissed with prejudice in its entirety. Plaintiff has already sued Defendants over the same alleged conduct and lost on the merits. The Court should uphold the principles of *res judicata* and hold that the resolution in the New York Lawsuit is final, and likewise dismiss the patently deficient Exchange Act claims.

WHEREFORE, Defendants respectfully move this honorable Court, in accordance with Rule 12(b)(6), to grant this Motion and dismiss Plaintiff's Complaint and each claim for relief therein against Defendants with prejudice.

DATED this 2nd day of October, 2024.

Respectfully submitted,

*/s/ Christopher D. Bryan*
Christopher D. Bryan
GARFIELD & HECHT, P.C.
625 East Hyman Ave., Suite 201
Aspen, Colorado 81611
Telephone: (970) 925-1936
Fax: (970) 925-3008
cbryan@garfieldhecht.com
*Attorneys for Defendants Stephane De Baets, Elevated Returns, LLC, 315 East Dean Associates, Inc., and Aspen Digital, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on this 2nd day of October, 2024, a true and correct copy of the foregoing **MOTION TO DISMISS** was filed with the Court via CM/ECF and served via E-mail upon the following:

Benjamin W. Hudgens
RICHARDS CARRINGTON, LLC
1444 Blake Street
Denver, Colorado 80202

                                                */s/Rebekah Ortell*
                                                Rebekah Ortell