IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

**Civil Action No.: 24-cv-01950-CNS**

JASON KIRSCHENBAUM

      Plaintiff,

v.

STEPHANE DE BAETS, ELEVATED RETURNS, LLC, 315 EAST DEAN ASSOCIATES, INC., THOSAPONG JURUTHAVEE, RAVIPAN JURUTHAVEE, ER GLOBAL LLC, ER MERRY WAY LP,and ASPEN DIGITAL, INC.

      Defendants.

---

## DECLARATION OF RICHARD G. MENAKER

---

1.     I am a principal of the law firm Offit Kurman, P.A., in New York City and have been admitted to practice in the state and federal courts (Eastern and Southern Districts) of New York since 1975. I have been admitted to practice before this Court from August 28, 2024. I have also been admitted to practice in the Second, Third, and Ninth United States Circuit Courts of Appeals and before the United States Supreme Court.

2.     I am personally familiar with the matters set forth herein and make this Declaration in support of the Motion of Defendants Stephane De Baets ("De Baets"), Elevated Returns, LLC ("Elevated Returns"), 315 East Dean Associates, Inc. ("East Dean"), ER Merry Way LP ("ER Merry"), and Aspen Digital, Inc. ("Aspen Digital") (collectively "Defendants") to Dismiss the Amended Complaint. Specifically, I am submitting this Declaration to provide background regarding a nearly identical lawsuit brought by Plaintiff Jason

EXHIBIT 1

Kirschenbaum ("Plaintiff") against Defendants in New York in 2019 and subsequently dismissed with prejudice (the "New York Lawsuit"). I represented the Defendants in the New York Lawsuit.

3.      The New York Lawsuit extended over four years and went through multiple iterations, including three complaints and two further proposed amended complaints that were rejected by the New York Court for lack of merit.

4.      Plaintiff filed the original Summons and Complaint ("NY Complaint") in the New York Lawsuit against Defendants in the Supreme Court of the State of New York, County of New York, Commercial Division, on June 6, 2019. A copy of the NY Complaint is attached hereto as **Exhibit A**.

5.      Plaintiff's allegations of underlying facts and transactions in the New York Lawsuit were the same as those asserted here: Plaintiff claimed in New York that he had entered into a "partnership" with one or more of the Defendants to create income-producing entities and was now entitled to millions of dollars from the supposed business relationship, which was said to arise from a letter agreement the terms of which were incorporated into the text of the NY Complaint.

6.      All defendants in the New York Lawsuit moved to dismiss Plaintiff's NY Complaint under the New York procedural counterpart of Federal Rule of Civil Procedure 12(b) based on documentary evidence incorporated in the NY Complaint and for failure to state a cause of action.

7.      Rather than oppose the motion to dismiss, Plaintiff responded by filing an Amended Complaint ("NY Amended Complaint") that changed the characterization of the

alleged business relationship from partnership to a supposed joint venture. He also aban-

doned his breach of contract claim and added causes of action for conversion, declaratory

judgment, and fraud. A copy of the NY Amended Complaint is attached hereto as **Exhibit

B**.

8.      Consistent with New York law, the New York Court added the NY Amended

Complaint to the record of defendants' motion to dismiss and offered Plaintiff the oppor-

tunity to oppose the motion to dismiss or seek leave to amend his Complaint further.

9.      Plaintiff then filed an opposition to the motion to dismiss along with a motion

for permission to file a Second Amended Complaint.

10.     On October 16, 2020, the New York Court issued a Decision and Order (the

"2020 Decision") dismissing both the original NY Complaint and the NY Amended Com-

plaint as to all Defendants. A copy of the 2020 Decision is attached hereto as **Exhibit C.**

11.     The 2020 Decision dismissed all causes of action alleged by Plaintiff except

a single claim for unjust enrichment on the series of transactions he alleged. Pursuant to

the decision, Plaintiff filed his Second Amended Complaint, attached hereto as **Exhibit

D**, and the parties proceeded to discovery.

12.     Discovery was exhaustive. Defendants produced over 30,000 responsive

documents consisting of over 238,000 pages. Plaintiff's productions were similarly sub-

stantial and included documents that were voluntarily produced to Plaintiff without a sub-

poena by Securitize, a nonparty referred to in the Second Amended Complaint. Both

Plaintiff and Defendant De Baets were deposed.

13.      At the conclusion of discovery, Defendants moved for summary judgment,

and Plaintiff cross-moved for leave to serve a Third Amended Complaint adding claims for fraud and conversion. A copy of Plaintiff's proposed Third Amended Complaint is attached hereto as **Exhibit E.**

14.    The New York Court entered its order on the motion for summary judgment and Plaintiff's motion to serve a Third Amended Complaint on October 30, 2023. A copy of that decision is attached hereto as **Exhibit F.**

15.    In granting the motion for summary judgment the New York Court held that, "on the fully developed record, each of these alleged investments [that were identified in the 2020 Decision as potential bases for an unjust enrichment claim] is governed by an existing and enforceable contract such that Mr. Kirschenbaum cannot maintain a claim sounding in unjust enrichment."

16.    The New York Court denied Plaintiff's cross-motion "because the proposed Third Amended Complaint is palpably insufficient as a matter of law" and granted Defendants' motion for summary judgment "because there are no material issues of [f]act which warrant a trial."

17.    In November of 2023, Plaintiff filed another motion for reargument, renewal, and leave to file a modified Third Amended Complaint. A copy of the Second Proposed Third Amended Complaint is attached hereto as **Exhibit G** (in a combined redline and clean version, as it was filed by Plaintiff).

18.    The New York Court denied that motion on February 26, 2024. A copy of that decision is attached hereto as **Exhibit H.**

19.    Although New York law permits interlocutory appeals as of right to the

3149245.1

Appellate Division of the Supreme Court in circumstances such as those described above, Plaintiff did not appeal any of these decisions.

20.     Defendants submitted a proposed final judgment to the Court on July 11, 2024, and it was signed by the Court on August 9, 2024; it is now awaiting entry by the New York County Clerk, which is a purely ministerial act. A copy of the proposed judgment is attached hereto as **Exhibit I**.

21.     I declare under penalty of perjury that the foregoing is true and correct. Executed on the 29th day of January, 2025.

_/s/ Richard G. Menaker_
Richard G. Menaker

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-------------------------------------------------------------------------

JASON KIRSCHENBAUM,

Plaintiff,

Index No.:

-against-

**SUMMONS**

STEPHANE DE BAETS, THOSAPONG
JURUTHAVEE, ELEVATED RETURNS, LLC,
315 EAST DEAN ASSOCIATES, INC.,
ASPEN DIGITAL f/k/a ASPEN REIT INC., ER
MERRY WAY LP, ER GLOBAL, LLC and JOHN DOES
1-10,

Defendants.

-------------------------------------------------------------------------

**TO THE ABOVE-NAMED DEFENDANTS:**

　　**YOU ARE HEREBY SUMMONED** and required to serve upon the plaintiff, at the address stated below, an answer to the complaint within 20 days after the service of this summons, exclusive of the day of service (or 30 days after service is complete if this summons is not personally delivered to you within the State of New York); and in case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded herein.

　　The plaintiff designates New York County based on C.P.L.R. § 501.

Dated: June 5, 2019
　　　New York, New York

**BUCHANAN INGERSOLL & ROONEY PC**

By:　/s/ Stephen J. Riccardulli
　　　Stephen J. Riccardulli
　　　640 5th Avenue, 9th Floor
　　　New York, NY 10019-6102
　　　T: 212-440-4482
　　　E: stephen.riccardulli@bipc.com

1

EXHIBIT A

pg 7of155

**GULKOSCHWED LLP**

Asher C. Gulko, Esq.
44 Wall Street, Second Floor
New York, New York 10005
T: 212.500.1312 l F: 212.678.0405
E: asher@gulkoschwed.com

Case No. 1:24-cv-01950-JMF Document 50-5 Filed 06/10/25 Page 2 of 18
pg 8 of 155
INDEX NO. 654187/2019
RECEIVED NYSCEF: 06/06/2019

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

--------------------------------------------------------------------------

JASON KIRSCHENBAUM,

|  |  |
|---|---|
| Plaintiff, | Index No.: |
| -against- | **COMPLAINT** |
| STEPHANE DE BAETS, THOSAPONG | **JURY TRIAL DEMANDED** |

STEPHANE DE BAETS, THOSAPONG
JURUTHAVEE, ELEVATED RETURNS, LLC,
315 EAST DEAN ASSOCIATES, INC.,
ASPEN DIGITAL f/k/a ASPEN REIT INC., ER
MERRY WAY LP, ER GLOBAL, LLC and JOHN DOES
1-10,

Defendants.

--------------------------------------------------------------------------

### PRELIMINARY STATEMENT

Plaintiff, Jason Kirschenbaum ("Plaintiff") by his attorneys, Buchanan Ingersoll & Rooney, P.C., located at 640 Fifth Avenue, Ninth Floor, New York, New York 10019, as and for his Complaint against defendants Stephane De Baets ("Defendant"), Thosapong Juruthavee ("TJ"), Elevated Returns, LLC ("ER"), 315 East Dean Associates, Inc. ("315 East Dean"), Aspen Digital f/k/a/ Aspen REIT, Inc. ("Aspen REIT"), ER Merry Way LP ("ER Merry"), ER Global, LLC & John Does "1" through "10," being and intended to be those unknown persons and/or entities acting in concert with defendants, alleges as follows:

1. This is a case of a partner, the Plaintiff in this action, who performed extensive and valuable services for his partners, the individual defendants named herein, and was promised equity and a percentage of revenues received from the projects on which he worked; but instead

1

was rewarded by a string of lies and deceptions intended to prevent Plaintiff from pursuing his interests and recouping the dividends owed by defendants.

2.  But for Plaintiff's efforts and ideas, the defendants herein would not have conceptualized and/or profited from the ventures created and executed by Plaintiff. In addition, Plaintiff devoted significant time, resources and his own money into his partnership with defendants. Despite this fact, defendants have refused to acknowledge Plaintiff's interests in their joint ventures, and has failed to compensate him as agreed upon. As detailed herein, Plaintiff duly performed all of the duties and obligations that were required of him under the Agreement (hereinafter defined), and defendants received substantial profits due to Plaintiff's efforts.

3.  Plaintiff has made previous amicable attempts to resolve this dispute, however all such attempts were futile and rejected by defendants. As a result, Plaintiff has been left without any choice but to commence this action to preserve his interests. Plaintiff seeks both money damages and/or declaratory relief in connection with Plaintiff's partnership interests that defendants have denied and continue to and Plaintiff.

## PARTIES

4.  At all times hereinafter mentioned, plaintiff Jason Kirschenbaum ("Plaintiff") was and is a resident of the State of New York.

5.  On information and belief, defendant Stephane De Baets ("De Baets") was and is a resident of the State of New York and the principal and chief executive officer of Elevated Returns, LLC. Defendant De Baets controls and/or maintains interests in other corporate entities, including the other corporate defendants named herein.

6.  On information and belief, defendant Thosapong Juruthavee ("TJ") was and is a resident of the State of New York, and a principal and limited partner of Elevated Returns, LLC. On information and belief, TJ maintains a residence at 56 Leonard Street, New York, New York,

2

Case 1:24-cv-01034-CJN-ZMF Document 50-10 Filed 04/29/25 DC USDC Colorado pg 10 of 155

and spends significant time in Thailand, where he has substantial real estate and financial investments. TJ acts often and primarily through his daughter Ravipan Juruthavee who, on information and belief, resides in the State of New York.

7. On information and belief, defendant Elevated Returns, LLC ("ER") was formed in the State of Delaware, on March 1, 2016 and is a foreign limited liability company licensed to do business in the State of New York, and currently existing under the laws of the State of New York. Defendant Elevated Returns is primarily an asset management company, but also involves itself in investment banking, mergers and acquisitions, debt/equity financing, advisory management and asset recovery.

8. On information and belief, Aspen Digital, Inc. f/k/a/ Aspen REIT, Inc. is a single asset REIT, formed under the laws of the State of Maryland and is externally managed by ER-RE f/k/a ER REITS, a majority owned subsidiary of Elevated Returns, LLC a New York-based real estate management and advisory limited liability company. Aspen Digital maintains an office at 7 St. Paul Street. Suite 820, Baltimore, Maryland 21202. A copy of the organizational chart for Aspen REIT, Inc. is attached hereto as **Exhibit A**.

9. On information and belief, defendant 315 East Dean Associates, Inc. is a Delaware corporation formed on July 8, 2010, and maintains a registered agent at Nationwide Information Services, Inc., located at 3500 South Dupont Highway, Dover, Delaware.

10. On information and belief, defendant ER Merry Way LP ("ER Merry") is a Delaware limited partnership formed on March 13, 2015, and maintains a registered agent at Nationwide Information Services, Inc., located at 3500 South Dupont Highway, Dover, Delaware.

11. On information and belief, ER Global, LLC ("ER Global") is a Delaware limited liability company that was formed on or about July 10, 2018.

3

Case No. 1:24-cv-01111-CNS-KAS Document 50-1 filed 04/29/25 USDC Colorado pg 11 of 155

## JURISDICTION & VENUE

12. This Court has personal jurisdiction over the parties pursuant to C.P.L.R. § 301 and § 302.

13. Venue is proper in New York County pursuant to C.P.L.R. § 501.

## STATEMENT OF RELEVANT FACTS

### Initial Meetings re: Partnership Structure and Single Asset REIT

14. Towards the end of 2015 and beginning of 2016, Plaintiff approached defendant De Baets with the idea, structure and concept of a single asset real estate investment trust ("REIT").

15. Plaintiff and defendant De Baets continued to correspond with respect to setting up a REIT, and eventually began meeting at the Mercer Hotel in New York City to discuss implementing Plaintiff's ideas.

16. During the course of these meetings, the parties discussed potential ventures and opportunities, including the idea, concept and structure, proposed by Plaintiff, for the creation of a single asset REIT.

17. In or around February 2016, Plaintiff met again with defendants De Baets and TJ at the Mercer Hotel to discuss further detail of a single asset REIT, as well as to create a company or companies to be used in connection with other ventures.

18. Plaintiff had prior experience in the REIT space and had significant and diverse relationships that defendants wished to monetize.

19. Between De Baets' and TJ's property holdings, the Plaintiff's experience and resources in the financial and specifically, REIT space, a partnership ensued.

4

pg 12 155

20.     It was understood that defendants De Baets and/or TJ were to provide the initial assets in forming the REIT, which consisted of certain hotels.

21.     Plaintiff agreed to coordinate and supervise day-to-day aspects pertaining to the asset, business development, working with legal counsel on SEC filings, advise on sale and marketing strategy of asset, etc.

22.     Plaintiff and defendant De Baets continued to discuss partnership interests, and after some back and forth, on or about February 26, 2016, defendant De Baets offered in writing via e-mail a 25% equity position stating:

> For the ongoing business, I can offer 25% equity ...my capital
> partner want 50% so I split my 50% with you. I would say take this
> as a starting point. we can always renegotiate later.

23.     Shortly thereafter, Plaintiff and defendant De Baets entered into an oral agreement which also was memorialized in a written agreement, dated March 10, 2016 ("Agreement"). Attached hereto as **Exhibit B** is a true and correct copy of the Agreement.

24.     The Agreement, amongst other things, provided a compensation structure relative to the creation of a single asset REIT using the Sunset Tower Hotel in Los Angeles, California and other future deals.

25.     It was expressly understood between the parties that although the Agreement was centered on the Sunset Tower deal, as that transaction was live at that time, the Agreement applied to future deals, as well.

26.     In fact, the Agreement expressly provides in at least three (3) different provisions that the terms contemplated therein would apply to "future deals".

5

27.     In addition, pursuant to the terms of their Agreement, Plaintiff was entitled to twenty-five

percent (25%) of the founder's equity issued in connection with the formation of the advisory

company.

28.     The Agreement follows that the foregoing arrangement will stay in place with future

successful deals. Agreement at pg. 2.

29.     The Agreement also contemplated other arrangements between the parties, including the

St. Regis Aspen Hotel in the State of Colorado.  Specifically, the Agreement provides:

> "...the terms of this Agreement should mimic those of the St Regis
> Aspen Hotel listing in Colorado."

30.     For more than three (3) years, Plaintiff provided services as agreed upon in the

Agreement.  Plaintiff contributed significantly to a number of projects, including but not limited

to the following:

   a.  the creation of the Sunset Tower REIT;

   b.  the creation of the Aspen REIT and creating Aspen Coin;

   c.  the acquisition of a certain interest in Securitize;

   d.  the development of Elevated Returns/ER Global; and

   e.  the capital raise for the acquisition of 21% of Seamico Securities.

31.     As described more fully below, Plaintiff also utilized his relationships to facilitate

revenue, opportunities and dealings for defendants De Baets, TJ and their related affiliates.

## Sunset Tower Hotel

32.     For close to one year, Plaintiff expended significant time and effort on the Sunset Tower

deal.

33.     Through a close contact, Plaintiff brought in the law firm of Clifford Chance, LLP to act

as counsel in connection with the Sunset Tower REIT.

6

34.     Plaintiff coordinated and assisted in drafting, compiling and coordinating with legal

counsel at Clifford Chance with respect to the S-11 filings.

35.     Plaintiff interfaced with the partners, legal counsel and other senior executive personnel;

performed due diligence; drafted offering memoranda; created and evaluated term sheets;

evaluated acquisition candidates and deal structures; worked with investment bankers and

commercial bankers; created different financial models and scenarios; drafted board

presentations; and evaluated offers and financing options; and supervised due diligence by

prospective investors in the company.

36.     Plaintiff worked without salary from April 2016 to April 2018.

37.     In August 2016, Clifford Chance introduced Plaintiff and defendant, De Baets to an

individual named Mike Wirth, who in short order was hired part time position as the chief

financial officer.

38.     In order to assemble an attractive compensation package for Wirth, at the defendant De

Baets, with the  approval of TJ, requested that Plaintiff relinquish 5% of his 25% equity stake so

that it could be included in the compensation package that was offered to Mike Wirth.

39.     Defendant De Baets also agreed to reduce his equity interests by 5% to 20%;equal to that

of Plaintiff.

40.     Defendant TJ agreed to relinquish or free up 10% of his equity interests from 50% to

40%.

41.     Consistent with this reduction of equity, on or around October 11, 2016, Mayer Brown

circulated an e-mail concerning ER-REITS with a breakdown of the following equity interests:

ER 20%, Jason [Kirschenbaum] 20% and Mike [Wirth] 20%.

7

42. Upon Wirth's departure from ER, consistent with the Agreement, Plaintiff's equity stake reverted to 25%.

43. As a result of Plaintiff's efforts, the Sunset Tower project was proceeding as planned. However, in January 2017, Jeff Klein, majority owner of the Sunset Tower Hotel decided not to go public and thus did not file the S-11. Klein's unexpected decision prevented the project from closing.

44. Although the Sunset Deal did not close as initially planned, in March 2017, the Sunset Tower Hotel sold for approximately $95 million (USD) (ER Hollywood purchased an 80 percent stake for $60 million in 2015, when the entire hotel was valued at $75 million).

44. Defendants agreed to pay Plaintiff $20,000 of all fee revenue received from the Sunset Tower Deal and indicated that Plaintiff would be paid well on their other dealings, such as Aspen REIT.

### St. Regis Aspen REIT (Aspen REIT)

45. In or around September 2010, defendant De Baets, via an entity under his direction and control (315 East Dean), acquired the 179 room St. Regis Aspen Hotel ("Aspen Hotel") for $70 million (USD), which is currently managed by ER-RE, the asset management arm of Elevated Returns, LLC.

46. In the middle of November 2017, Aspen REIT, a single asset real estate investment trust filed with the Securities and Exchange Commission to launch a Regulation A+ initial public offering to raise approximately $33.5 million in gross proceeds.

47. At around the same time, Plaintiff contributed approximately $1,000,000 to ensure the deal could get done.

8

48.     After working through several regulatory hurdles, in January 2018, and after re-filing, the Securities and Exchange Commission fully approved Aspen REIT as a Single Asset REIT.

49.     As of February 2018, the IPO appeared set to proceed by the end of that month, but Elevated Returns abruptly canceled the sale on February 26, apparently in an effort to retool.

50.     Clifford Chance continued to work on the St. Regis Aspen REIT, and the St. Regis Aspen Coin projects.

51.     Over the next several months, Plaintiff continued to devote significant time to this project, including creating a whitepaper, private placement memorandum and deck for Aspen Coin – i.e., shares in the St. Regis -- that were to be denominated not in bitcoin but in a special securitized token created specifically for the hotel's sale, known as Aspen Coin.

52.     In July of 2018 the private placement memorandum for Aspen Coin was completed, and the partners sought to raise $18 million (USD) for a 19% of the St. Regis Aspen hotel.

53.     In early August 2018, Templum – a registered alternative trading system (ATS) targeting digital assets, was working with Aspen Digital to tokenize a security based off of common stock in the St. Regis Aspen Resort. Templum Markets, is a blockchain-enabled, regulated marketplace for the primary sale and secondary trading of digital assets.

54.     Using the Reg D (506c) exemption, the tokenized security had been described as the first of its kind.

55.     Soon after, Indiegogo, a crowd funding site revealed it would be listing the Aspen Coin on its ICO marketing platform.

56.     According to Indiegogo, it would be "presenting purchasers with a unique opportunity to gain an indirect fragmented equity ownership stake in the St. Regis Aspen Resort in Aspen Colorado, an iconic trophy property …[T]he 'tokenized asset offering,' or TAO, has a per token

9

price of $1.00 with a minimum investment hurdle of $10,000. The total offering is for $18 million representing an 18.9% non-voting equity stake in the firm."

57.     In October 2018, Aspen Coin closed at the full $18 million (USD). Plaintiff contributed over $1,000,000 (USD) to ensure the deal getting closed.

58.     Defendant shook Plaintiff's hands and affirmed their partnership.

## Securitize and Seamico and Other Ventures

59.     Not too long after the successful raise for Aspen Coin, the parties were introduced to a company known as Securitize, which provided a compliance platform and protocol for digitizing securities in the blockchain.

60.     Plaintiff was instrumental in the capital raises for the acquisition of a certain interests in Securitize and Seamico, which are both considered under the ER umbrella, as well as other ventures.

61.     Plaintiff also personally invested significant monies in both Securitize and Aspen Coin; the latter of which guaranteed the success of the Aspen Coin venture. Plaintiff's contributions were material to the creation and success of the St. Regis Aspen REIT and Aspen Coin.

62.     Plaintiff, via and/or together with ER, invested a sum of $1 million (USD) into Securitize.

63.     On information and belief, the investment in Securitize was made by Elevated Returns and is currently held by ER Global.

64.     Defendants have failed to make any distributions to Plaintiff from the monies invested with Securitize or his other investments with defendants, and has denied Plaintiff the ability to liquidate or redeem his interests in same.

10

pg 18 155

65.     Defendants continue to exercise exclusive dominion and control over property belonging to Plaintiff.

66.     Moreover, defendants have denied Plaintiff the access to his interests, and even more incredulously have taken steps that have impeded on Plaintiff's ability to perform under the Agreement.

67.     Notwithstanding the foregoing, Plaintiff did not cease to perform and comply with his obligations under the Agreement, and continued to develop business for his partners, including making introductions to other capital and financial funds, as well as other resources related to the Chef's Club venture.

68.     Plaintiff personally and professionally committed to the success of the various business ventures involving defendants, his partners.

<div align="center">

**Current Status**

</div>

69.     Plaintiff's efforts and ideas caused defendants to realize significant profits.

70.     Based on defendants' estimation, ER Global has a current pre-money valuation of $40 million (USD).

71.     As such, Plaintiff's 25% share equates to (at the very least) $10 million (USD).

72.     Plaintiff has attempted to resolve this dispute without the need for litigation, however, to date, defendants have refused to make any substantial attempt to settle the disputes outlined herein.

<div align="center">

11

</div>

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### (Breach of Contract)
-Against All Defendants-

73.     Plaintiff repeats and realleges each of the allegations contained in paragraphs 1 through 72 above as if more fully set forth at length herein.

74.     Plaintiff and defendants entered into a lawful and enforceable agreement.

75.     Plaintiff has fully performed all of the obligations required to be performed by him.

76.     By reason of the foregoing, Defendants have breached the Agreement with Plaintiff, and continue to breach same by *inter alia* failing to make requisite distributions or provide an accounting.

77.     By reason of the foregoing, Plaintiff is entitled to damages in an amount to be determined at trial of this matter.

### SECOND CAUSE OF ACTION
### (Breach of Fiduciary Duties)

78.     Plaintiff repeats and realleges each of the allegations contained in paragraphs 1 through 77 above as if more fully set forth at length herein.

79.     As partners, defendants were obligated to act in the highest standards of the law with respect to Plaintiff.

80.     Defendants breached their fiduciary duties to Plaintiff by *inter alia* wrongfully withholding revenues received from projects he worked on and is entitled to, given his certain equity interests and failing to accurately inform Plaintiff of the revenues received for the projects he worked on and actively deceiving and misleading Plaintiff by furnishing him with false information concerning said revenues in order to deprive Plaintiff of the compensation to which he was entitled.

12

pg 20 155

81.    By reason of the foregoing, Plaintiff is entitled to damages in an amount to be determined at trial of this matter.

### THIRD CAUSE OF ACTION
### (Breach of the Covenant of Good Faith and Fair Dealing)
### -Against Defendant De Baets -
(Pled in the Alternative)

82.    Plaintiff repeats and realleges each of the allegations contained in paragraphs 1 through 81 above as if more fully set forth at length herein.

83.    Defendants were obligated to act in accordance with the covenant of good faith and fair dealing implied in every contract under New York law.

84.    Defendants breached the covenant of good faith and fair dealing implied in their contract with Plaintiff, by which he was a partner paid a percentage of revenues received from projects he worked on and entitled to certain equity interests.

85.    Defendants' breach of the covenant of good faith and fair dealing consisted, *inter alia,* of failing to accurately inform Plaintiff of the revenues received for the projects he worked on and actively deceiving and misleading Plaintiff by furnishing him with false information concerning said revenues in order to deprive Plaintiff of the compensation to which he was entitled.

86.    By reason of the foregoing, Plaintiff is entitled to damages in an amount to be determined at trial of this matter.

### FOURTH CAUSE OF ACTION
### (Unjust Enrichment)
### -Against All Defendants-
(Pled in the Alternative)

87.    Plaintiff repeats and realleges each of the allegations contained in paragraphs 1 through 86 above as if more fully set forth at length herein.

13

Case No. 1:24-cv-01303-CNS-KAS   Document 50-10   filed 04/29/25   USDC Colorado   pg 21 of 155

88.     Defendants have been unjustly enriched by the amount of compensation they retained for themselves and which was due to Plaintiff.

89.     To date the Defendants have failed and refused to pay Plaintiff any part of the outstanding balance to which Plaintiff is entitled.

90.     By reason of the foregoing, Plaintiff is entitled to damages in an amount to be determined at trial of this matter.

### FIFTH CAUSE OF ACTION
### (Quantum Meruit)
### -Against All Defendants-
(Plead in the Alternative)

91.     Plaintiff repeats and realleges each of the allegations contained in paragraphs 1 through 90 above as if more fully set forth at length herein.

92.     Plaintiff provided extensive time, resources and services for Defendants.

93.     Defendants have failed and refused to pay the reasonable value of said services, despite numerous demands therefor.

94.     Plaintiff is therefore entitled to compensation representing the reasonable value of the services he rendered on these projects.

95.     By reason of the foregoing, Plaintiff is entitled to damages in an amount to be determined at trial of this matter.

### SIXTH CAUSE OF ACTION
### (Accounting)
### -Against All Defendants-

96.     Plaintiff repeats and realleges each of the allegations contained in paragraphs 1 through 95 above as if more fully set forth at length herein.

14

97.     Defendants have failed and refused to account for and pay to Plaintiff his share of the revenues received for the various projects on which Plaintiff performed services.

98.     Plaintiff has no adequate remedy at law.

99.     By reason of the foregoing, Defendants should account for all fees realized by Defendants.

## CONCLUSION

**WHEREFORE**, Plaintiff, Jason Kirschenbaum, demands judgment against the Defendants named hereinabove jointly and severally, as follows:

(a) On the first cause of action for breach of contract, damages in an amount to be determined at trial of this matter;

(b) On the second cause of action for breach of fiduciary duties, damages an amount to be determined at trial of this matter;

(c) On the third cause of action for breach of the covenant of good faith and fair dealing, damages in an amount to be determined at trial of this matter;

(d) On the fourth cause of action for unjust enrichment, damages in an amount to be determined at trial of this matter;

(e) On the fifth cause of action for quantum meruit, damages in an amount to be determined at trial of this matter;

(f) On the sixth cause of action, an accounting for all fees received by Defendants in connection with the deals described herein and any other transactions that involved Plaintiff in the same or similar capacity; and

15

(g) On all causes of action, reasonable attorney's fees, the costs and disbursements of this action and such other, further and different relief as to the Court seems just and proper.

Dated: New York, New York
June 5, 2019

**BUCHANAN INGERSOLL & ROONEY PC**

By:    _s/s Stephen J. Riccardulli_____
Stephen J. Riccardulli
640 5th Avenue, 9th Floor
New York, NY 10019-6102
T: 212-440-4482
E: stephen.riccardulli@bipc.com

**GULKOSCHWED LLP**

Asher C. Gulko, Esq.
44 Wall Street, Second Floor
New York, New York 10005
T: 212.500.1312 l F: 212.678.0405
E: asher@gulkoschwed.com

16

Case No. 1:24-cv-01465-CNS-KAS   Document 50-1   filed 04/29/25   USDC Colorado   pg 24 of 155
pg 24 of 155

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK                                    Index No.: 653287/2019
-----------------------------------------------------------------------------
JASON KIRSCHENBAUM,

                              Plaintiff,

           -against-                                  **AMENDED COMPLAINT**

STEPHANE DE BAETS, THOSAPONG
JURUTHAVEE, ELEVATED RETURNS, LLC,
315 EAST DEAN ASSOCIATES, INC.,
ASPEN DIGITAL INC. f/k/a ASPEN REIT INC., ER
MERRY WAY LP, ER GLOBAL, LLC and JOHN DOES
1-10,

                              Defendants.
-----------------------------------------------------------------------------

Plaintiff, Jason Kirschenbaum ("Plaintiff") by his undersigned attorneys, as and for

his Amended Complaint against defendants Stephane De Baets ("Defendant"), Thosapong

Juruthavee ("TJ"), Elevated Returns, LLC ("ER"), 315 East Dean Associates, Inc. ("315 East

Dean"), Aspen Digital f/k/a/ Aspen REIT, Inc. ("Aspen REIT"), ER Merry Way LP ("ER Merry"),

ER Global, LLC & John Does "1" through "10," being and intended to be those unknown persons

and/or entities acting in concert with defendants, hereby states as follows:

### PRELIMINARY STATEMENT

1.       This is a case of defendants who organized a furtive scheme to deprive Plaintiff

from his ownership interest in a venture that he was the driving force behind. However, defendants

not only misappropriated his ideas and resources, they converted millions of dollars and breached

their fiduciary duties to Plaintiff. Plaintiff provided extensive and valuable services for his

partners, the individual defendants named herein, and was promised equity and a percentage of

revenues received from the projects on which he worked; but instead was rewarded by a string

EXHIBIT B

Case 1:24-cv-01405-CNS-KAS   Document 50-1   filed 04/29/25   USDC Colorado   pg 25 of 155

of lies and deceptions intended to prevent Plaintiff from pursuing his interests and recouping the dividends owed by defendants.

2.      But for Plaintiff's efforts and ideas, the defendants herein would not have conceptualized and/or profited from the ventures created and executed by Plaintiff.  In addition, Plaintiff devoted significant time, resources and his own money into his partnership with defendants. Despite this fact, defendants have refused to acknowledge Plaintiff's interests in their joint ventures, and has failed to compensate him as agreed upon. As detailed herein, Plaintiff duly performed and defendants received substantial profits due to Plaintiff's efforts.

3.      Plaintiff has made previous amicable attempts to resolve this dispute, however all such attempts were futile and rejected by defendants. As a result, Plaintiff has been left without any choice but to commence this action to preserve his interests. Plaintiff seeks both money damages and/or declaratory relief in connection with Plaintiff's partnership interests that defendants have denied and continue to deny.

**PARTIES**

4.      At all times hereinafter mentioned, plaintiff Jason Kirschenbaum ("Plaintiff") was and is a resident of the state of New York.

5.      On information and belief, defendant Stephane De Baets ("De Baets") was and is a resident of the State of New York and the principal and chief executive officer of Elevated Returns, LLC. Defendant De Baets controls and/or maintains interests in other corporate entities, including the other corporate defendants named herein.

6.      On information and belief, defendant Thosapong Juruthavee ("TJ") was and is a resident of the State of New York, and a principal and limited partner of Elevated Returns, LLC. On information and belief, TJ maintains a residence at 56 Leonard Street, New York, New York,

INDEX NO. 655287/2019
RECEIVED NYSCEF: 09/27/2019

and spends significant time in Thailand, where he has substantial real estate and financial investments. TJ acts often and primarily through his daughter Ravipan Jaruthavee who, on information and belief, resides in the Stated of New York.

7.     On information and belief, defendant Elevated Returns, LLC ("ER") was formed in the State of Delaware, on March 1, 2016 and is a foreign limited liability company licensed to do business in the State of New York, and currently existing under the laws of the State of New York. Defendant Elevated Returns is primarily an asset management company, but also involves itself in investment banking, mergers and acquisitions, debt/equity financing, advisory management and asset recovery.

8.     On information and belief, Aspen Digital, Inc. f/k/a/ Aspen REIT, Inc. is a single asset REIT, formed under the laws of the State of Maryland and is externally managed by ER-RE f/k/a ER REITS, a majority owned subsidiary of Elevated Returns, LLC a New York-based real estate management and advisory limited liability company. Aspen Digital maintains an office at 7 St. Paul Street. Suite 820, Baltimore, Maryland 21202.

9.     On information and belief, defendant 315 East Dean Associates, Inc. is a Delaware corporation formed on July 8, 2010, and maintains a registered agent at Nationwide Information Services, Inc., located at 3500 South Dupont Highway, Dover, Delaware.

10.     On information and belief, defendant ER Merry Way LP ("ER Merry") is a Delaware limited partnership formed on March 13, 2015, and maintains a registered agent at Nationwide Information Services, Inc., located at 3500 South Dupont Highway, Dover, Delaware.

11.     On information and belief, ER Global, LLC ("ER Global") is a Delaware limited liability company that was formed on or about July 10, 2018.

## JURISDICTION & VENUE

Case No. 1:24-cv-01859-CNS-KAS   Document 50-1   filed 04/29/25   USDC Colorado   pg 27 of 155

12.     This Court has personal jurisdiction over the parties pursuant to C.P.L.R. § 301 and § 302.

13.     Venue is proper in New York County pursuant to C.P.L.R. § 501.

## STATEMENT OF RELEVANT FACTS
### Initial Meetings re: Partnership Structure and Single Asset REIT

14.     Plaintiff is a sophisticated entrepreneur with unique knowledge in the REIT and real estate arena.

15.     Towards the end of 2015 and beginning of 2016, Plaintiff approached defendant De Baets with the idea, structure and concept of a single asset real estate investment trust ("REIT").

16.     Plaintiff and defendant De Baets continued to correspond with respect to setting up a REIT, and eventually began meeting at the Mercer Hotel in New York City to discuss implementing Plaintiff's ideas.

17.     During the course of these meetings, the parties discussed potential ventures and opportunities, including the idea, concept and structure, proposed by Plaintiff, for the creation of a single asset REIT.

18.     In or around February 2016, Plaintiff met again with defendants De Baets and TJ at the Mercer Hotel to discuss further detail of a single asset REIT, as well as to create a company or companies to be used in connection with other ventures.

19.     Plaintiff had prior experience in the REIT space and had significant and diverse relationships that defendants wished to monetize.

20.     Between De Baets' and TJ's property holdings, the Plaintiff's experience and resources in the financial and specifically, REIT space, a joint venture ensued.

Case No. 1:24-cv-01860-CNS-KAS Document 50-4 filed 04/29/25 USDC Colorado pg 28 of 155

21.    It was understood that defendants De Baets and/or TJ were to provide the initial assets in forming the REIT, which consisted of certain hotels.

22.    Plaintiff agreed to coordinate and supervise day-to-day aspects pertaining to the asset, business development, working with legal counsel on SEC filings, advise on sale and marketing strategy of asset, etc.

23.    Plaintiff and defendant De Baets continued to discuss joint venture interests, and after some back and forth, on or about February 26, 2016, defendant De Baets offered in writing via e-mail a 25% equity position.

24.    The intention of the joint venture was to, amongst other things, provide a compensation structure relative to the creation of a single asset REIT using the Sunset Tower Hotel in Los Angeles, California and other future deals, which Plaintiff had unique knowledge and resources with respect to same.

25.    Plaintiff was instrumental and contributed significantly, including but not limited to the following:

a.  the creation of the Sunset Tower REIT;

b.  the creation of the Aspen REIT and creating Aspen Coin;

c.  the acquisition of a certain interest in Securitize;

d.  the development of Elevated Returns/ER Global; and

e.  the capital raise for the acquisition of 21% of Seamico Securities.

26.    As described more fully below, Plaintiff also utilized his relationships to facilitate revenue, opportunities and dealings for defendant De Baets, TJ and their related affiliates.

Case No. 1:24-cv-08156-GHW-KHP    Document 50-1    Filed 04/29/25    USDC Colorado    pg 29
pg 29 of 155

### Sunset Tower Hotel

27.     For close to one year, Plaintiff expended significant time and effort on the Sunset Tower deal.

28.     Through a close contact, Plaintiff brought in the law firm of Clifford Chance, LLP to act as counsel in connection with the Sunset Tower REIT.

29.     Plaintiff coordinated and assisted in drafting, compiling and coordinating with legal counsel at Clifford Chance with respect to the S-11.

30.     Plaintiff interfaced with the partners, legal counsel and other senior executive personnel; performing due diligence; writing offering memoranda; creating and evaluating term sheets; evaluating acquisition candidates and deal structures; working with investment bankers and commercial bankers; creating different financial models and scenarios; writing board presentations; and evaluating offers and financing options; and supervising due diligence by prospective investors in the company.

31.     In August 2016, Clifford Chance introduced the parties to an individual named Mike Wirth ("Wirth"), who in short order was hired in a part time position as the chief financial officer.

32.     In order to assemble an attractive compensation package to secure Wirth, at the request of defendant De Baets and approval of TJ, defendant De Baets requested that Plaintiff relinquish 5% of his 25% equity stake so that it could be included in a compensation package to a certain individual, Mike Wirth.

33.     Defendant De Baets also agreed to reduce his equity interests by 5% so that he would remain at 20% and equal to Plaintiff.

Case No. 1:24-cv-01069-CNS-KAS Document 50-1 filed 06/29/25 USDC Colorado
pg 30 of 155

34.     Defendant TJ agreed to relinquish or free up 10% of his equity interests from 50% to 40%.

35.     On or around October 11, 2016, the law firm of Mayer Brown, LLP circulated an e-mail concerning ER-REITS breakdown of the following equity interests: ER 20%, Jason [Kirschenbaum] 20% and Mike [Wirth] 20%.

36.     Upon Wirth's departure from ER, consistent with the parties' understanding, Plaintiff's equity stake reverted to 25%.

38. The Sunset Tower Hotel sold for approximately $95 million (USD) (ER Hollywood purchased an 80 percent stake for $60 million in 2015, when the entire hotel was valued at $75 million).

39.     Defendants agreed to pay Plaintiff $20,000 of all fee revenue received from the Sunset Tower Deal and indicated that Plaintiff would be paid well on their other dealings, such as Aspen REIT and continued their joint venture(s).

## St. Regis Aspen REIT (Aspen REIT)

40.     In or around September 2010, defendant De Baets, via an entity under his direction and control, 315 East Dean, acquired the 179 room St. Regis Aspen Hotel ("Aspen Hotel") for $70 million (USD), which is currently managed by ER-RE, the asset management arm of Elevated Returns, LLC.

41.     In the middle of November 2017, Aspen REIT, a single asset real estate investment trust filed with the Securities and Exchange Commission to launch a Regulation A+ initial public offering to raise approximately $33.5 million in gross proceeds.

42.     Plaintiff was and still is a member of Aspen REIT. In fact, on page 15 of The Aspen REIT LLC preliminary offering filed with the SEC it provides as follows:

Case No. 1:24-cv-01859-CNS-KAS    Document 50-1    filed 04/29/25    USDC Colorado
pg 31 of 155

Our chief financial officer, secretary and treasurer, Michael Wirth, joined Elevated Returns in 2016 and has over 30 years of experience in the real estate and financial services sectors and over 12 years of experience in the REIT industry. Mr. Wirth has also been a top executive at private and public real estate and financial services companies (taking five such companies through the initial public offering ("IPO") process) for over 16 years and holds independent board positions with private companies. In addition, Alex Ho, Elevated Returns' comptroller, has worked with Mr. De Baets for over 20 years, **and Jason Kirschenbaum, our Manager's managing director, joined Elevated Returns in 2016 and has over 10 years of experience in the real estate business, including real estate investment, financing and development** ...[1]

43.     At around the same time, Plaintiff contributed approximately $1,000,000 to ensure the deal could get done.

44.     After working through several regulatory hurdles, in January 2018, and after re-filing, the Securities and Exchange Commission fully approved Aspen REIT as a Single Asset REIT.

45.     As of February 2018, the IPO appeared set to proceed by the end of that month, but Elevated Returns abruptly canceled the sale on February 26, ostensibly in an effort to retool, but it became apparent that it was done for the purpose of removing plaintiff as a member of ASPEN REIT LLC.

46.     Clifford Chance continued to work on the St. Regis Aspen REIT, and the St. Regis Aspen Coin projects.

47.     In April 2018, De Baets confirmed Plaintiff as a partner in the Aspen Coin digital. In an email regarding the presentation of Aspen digital, Da Baets writes "**[P]lease add jason as co-founder too. Lets also pin down a call about who gets what. The sooner the better**." *See* email dated 4/17/2018 annexed hereto as **Exhibit A**.

---

[1]*See*:https://www.sec.gov/Archives/edgar/data/1694997/000110465917067675/a1717001 _5partiiandiii.htm#dw40101_management 1

Case No. 1:24-cv-01987-CNS-KAS   Document 50-1   filed 04/29/25   USDC Colorado   pg 32
pg 32 of 155

48.     However, over the next several months, due to Defendants' purposeful conduct, it continued to prove difficult financially for Aspen REIT, and Plaintiff divided his time amongst other projects under the ER umbrella, but still continued to work and create whitepaper, private placement memorandum and deck for Aspen Coin - shares in the St. Regis -- that were to be denominated not in bitcoin but in a special securitized token created specifically for the hotel's sale, known as Aspen Coin.

49.     In July of 2018, the private placement memorandum for Aspen Coin was completed, and the partners sought to raise $18 million (USD) for a 19% of the St. Regis Aspen hotel.

50.     In early August 2018, Templum – a registered alternative trading system (ATS) targeting digital assets, was working with Aspen Digital to tokenize a security based off of common stock in the St. Regis Aspen Resort. Templum Markets, is a blockchain-enabled, regulated marketplace for the primary sale and secondary trading of digital assets.

51.     Using the Reg D (506c) exemption, the tokenized security had been described as the first of its kind.

52.     Soon after, Indiegogo, a crowd-funding site revealed it would be listing the Aspen Coin on its ICO marketing platform.

53.     According to Indiegogo, it would be "presenting purchasers with a unique opportunity to gain an indirect fragmented equity ownership stake in the St. Regis Aspen Resort in Aspen Colorado, an iconic trophy property …[T]he 'tokenized asset offering,' or TAO, has a per token price of $1.00 with a minimum investment hurdle of $10,000. The total offering is for $18 million representing an 18.9% non-voting equity stake in the firm."

Case No. 1:24-cv-01823-CNS-KAS   Document 50-1   filed 04/29/25   USDC Colorado   pg 33
pg 33 of 155

54.     In October 2018, Aspen Coin closed at the full $18 million (USD). Defendants TJ and East Dean contributed $9 million dollars; De Baets contributed $1.36 million (USD), and Plaintiff contributed over $1.36 million (USD).

55.     De Baets did not want the Aspen Coin deal to fail. Plaintiff's contribution of over $1.36 million (USD) was essential to TJ and East Dean contributions of said amount to form Aspen Coin. De Baets represented to Plaintiff that they could not close the Aspen Coin deal if Plaintiff didn't contribute to the deal as TJ and East Dean would not contribute to this venture if Plaintiff did not believe in its viability.

56.     Apparently, Defendants valued Plaintiff's input to the extent that they would not have invested but for Plaintiff's own contribution.

### Securitize and Seamico and Other Ventures

57.     Not too long after the successful raise for Aspen Coin, the parties were introduced to a company known as Securitize, which provided a compliance platform and protocol for digitizing securities in the blockchain.

58.     On or about November 2018, Plaintiff, TJ and De Baets each contributed equally in Securitize. Plaintiff and De Baets used the fee from the Aspen Coin raise which was 4% of the 18 million equity raise, which Plaintiff and De Baets split.

59.     In order to facilitate the removal of Plaintiff, on February 22, 2018 Stephane De Baets filed with the SEC an initial statement of beneficial ownership of in which he states that he is a 10 percent owner, Director, the President and CEO & Chairman of Aspen REIT, Inc. *See* attached **Exhibit B**.

60.     In 2019, De Baets filed a certain SEC FORM D for Aspen Digital, Inc. Said form omits Plaintiff as a co-founder and member of Aspen Digital.

INDEX NO. 654287/2019

61.     The omission of Plaintiff from Defendant De Baets' filing constitutes a fraud upon the SEC by fraudulently omitting Plaintiffs status, and by which he usurps Plaintiff's ownership in Aspen Digital, Inc. .

62.     The last page of Form D is signed by De Baets.

63.     Plaintiff was instrumental in the capital raises for the acquisition of a certain interests in Securitize and Seamico, which are both considered under the ER umbrella, as well as other ventures.

64.     As described hereinabove, Plaintiff also personally invested significant monies in both Securitize and Aspen Coin; the latter of which guaranteed the success of the Aspen Coin venture.

65.     Plaintiff's contributions were material to the creation and success of the St. Regis Aspen REIT and Aspen Coin.

66.     Plaintiff, via and/or together with ER, invested a sum of $1 million (USD) into Securitize.

67.     On information and belief, the investment in Securitize was made by Elevated Returns and is currently held by ER Global.

68.     Defendants have failed to make any distributions from the monies invested with Securitize or his other investments with his partners, and has denied Plaintiff the ability to liquidate or redeem his interests in same.

69.     Defendants continue to exercise exclusive dominion and control over property belonging to Plaintiff.

Case No. 1:24-cv-01850-CNS-KAS Document 50-4 filed 04/29/25 USDC Colorado pg 35
pg 35 of 155

70.     Moreover, Defendants have denied Plaintiff his rightful ownership interests in his joint ventures with Defendants, and even more incredulously, Defendants have done everything possible to squeeze Plaintiff out from his lawful position within their collective ventures.

71.     Plaintiff personally and professionally committed to the success of the various business ventures involving defendants, his partners.

### **Current Status**

72.     Plaintiff's efforts and ideas caused Defendants to realize significant profits.

73.     Based on defendants' estimation, ER Global has a current pre-money valuation of $40 million (USD).

74.     As such, Plaintiff's 25% share equates to (at the very least) $10 million (USD).

75.     Plaintiff has attempted to resolve this dispute without the need for litigation, however, to date, Defendants have refused to make any substantial attempt to settle the disputes outlined herein.

### **FIRST CAUSE OF ACTION**
### **(Fraud)**
-Against De Baets-

76.     Plaintiff repeats and realleges each of the foregoing allegations as if fully set forth at length herein.

77.     De Baet's representation to Plaintiff that the contribution from Plaintiff from the fee derived from the Aspen Coin raise would be for the purpose of investing in Securitize was false.

78.     De Baet's knew the representation was false when he made it to Plaintiff.

Case No. 1:24-cv-01306-CNS-KAS Document 50-1 filed 04/29/25 USDC Colorado
pg 36 of 155

79.    De Beats made the representation with the intention of defrauding Plaintiff; instead of using the money as an investment, De Baets converted Plaintiff's contribution into his own contribution.

80.    Plaintiff reasonably relied on De Baets' representation that the contribution from Plaintiff would be for the purpose of investing in Securitize. All of which resulted in damages to Plaintiff.

81.    Plaintiff investment was diverted by De Baets.

82.    By reason of the foregoing, Plaintiff is entitled to damages in an amount to be determined at trial of this matter.

<u>**SECOND CAUSE OF ACTION**</u>
**(Conversion)**

83.    Plaintiff repeats and re-alleges each of the foregoing allegations as if fully stated herein.

84.    In October 2018, Aspen Coin closed at the full $18 million (USD). Plaintiff contributed over $1.36 million (USD).

85.    Plaintiff's contribution of over $1.36 million (USD) was essential to TJ and East Dean contributions of said amount to form Aspen Coin.

86.    Defendants have failed to make any distributions from the monies invested with Securitize or his other investments with his partners, and has denied Plaintiff the ability to liquidate or redeem his interests in same.

87.    Defendants continue to exercise exclusive dominion and control over property belonging to Plaintiff.

Case No. 1:24-cv-01030-CNS-KAS   Document 50-1   filed 04/29/25   USDC Colorado
pg 37 of 155

88.     Moreover, Defendants have denied Plaintiff his rightful ownership interests in his joint ventures with Defendants, and even more incredulously, Defendants have done everything possible to squeeze Plaintiff out from his lawful position within their collective ventures.

## THIRD CAUSE OF ACTION
### (Breach of Fiduciary Duties)

89.     Plaintiff repeats and realleges each of the allegations as if more fully set forth at length herein.

90.     As more fully described hereinabove, Plaintiff as a member of the ventures together with Defendants, Defendants' owed Plaintiff an undivided and unqualified duty of loyalty, truthfulness and complete disclosure, and were required to refrain from any action contrary to the interests of Plaintiff.

91.     Defendants breached their fiduciary duties to Plaintiff by *inter alia* wrongfully withholding revenues received from projects he worked on and is entitled to, given his certain equity interests and failing to accurately inform Plaintiff of the revenues received.

92.     As a proximate and direct result of the foregoing breaches of fiduciary duty, Plaintiff seeks an award of money damages.

## FOURTH CAUSE OF ACTION
### (Breach of the Covenant of Good Faith and Fair Dealing)
### -Against Defendant De Baets -

93.     Plaintiff repeats and realleges each of the allegations as if more fully set forth at length herein.

94.     Defendants were obligated to act in accordance with the covenant of good faith and fair dealing implied in every contract under New York law.

Case No. 1:24-cv-01553-CNS-KAS   Document 56-1   filed 04/29/25   USDC Colorado   pg 38
pg 38 of 155

95.     Defendants breached the covenant of good faith and fair dealing implied in their contract with Plaintiff, by which he was a partner paid a percentage of revenues received from projects he worked on and entitled to certain equity interests.

96.     Defendants' breach of the covenant of good faith and fair dealing consisted, *inter alia,* of failing to accurately inform Plaintiff of the revenues received for the projects he worked on and actively deceiving and misleading Plaintiff by furnishing him with false information concerning said revenues in order to deprive Plaintiff of the compensation to which he was entitled.

97.     By reason of the foregoing, Plaintiff is entitled to damages in an amount to be determined at trial of this matter.

### FIFTH CAUSE OF ACTION
### (Unjust Enrichment)

98.     Plaintiff repeats and realleges each of the allegations as if more fully set forth at length herein.

99.     Defendants have been unjustly enriched by the amount of compensation they retained for themselves and which was due to Plaintiff.

100.    To date the Defendants have failed and refused to pay Plaintiff any part of the outstanding balance to which Plaintiff is entitled.

101.    By reason of the foregoing, Plaintiff is entitled to damages in an amount to be determined at trial of this matter.

### SIXTH CAUSE OF ACTION
### (Quantum Meruit)

102.    Plaintiff repeats and realleges each of the allegations as if more fully set forth at length herein.

103.    Plaintiff provided extensive time, resources and services for Defendants.

Case No. 1:24-cv-00650-GHW-KHP  Document 50-4  Filed 06/29/25  USDC Colorado  pg 39

pg 39 of 155

104.    Defendants have failed and refused to pay the reasonable value of said services, despite numerous demands therefor.

105.    Plaintiff is therefore entitled to compensation representing the reasonable value of the services he rendered on these projects.

106.    By reason of the foregoing, Plaintiff is entitled to damages in an amount to be determined at trial of this matter.

## SEVENTH CAUSE OF ACTION
### (Accounting)

107.    Plaintiff repeats and re-alleges each of the allegations as if more fully set forth at length herein.

108.    Defendants have failed and refused to account for and pay to Plaintiff his share of the revenues received for the various projects on which Plaintiff performed services.

109.    Plaintiff has no adequate remedy at law. Plaintiff is entitled as an investor of Securitize to his rightful share of equity in said investment.

110.    By reason of the foregoing, Defendants should account for all fees realized by Defendants

## EIGHTH CAUSE OF ACTION
### (Declaratory Judgment)

111.    Plaintiff repeats and re-alleges each of the allegations as if more fully set forth at length herein.

112.    A real and justiciable controversy exists between Plaintiff and Defendants concerning the equity interests in various joint ventures, as described hereinabove.

113.    There is no adequate remedy at law.

Case No. 1:24-cv-01424-CNS-KAS   Document 50-14   filed 04/29/25   USDC Colorado   pg 40
of 155

114.    By reason of the foregoing, Plaintiff seeks a declaratory judgment from this Court declaring Plaintiff a rightful member of the various entities and joint ventures, as described more fully above.

## **CONCLUSION**

**WHEREFORE**, Plaintiff, Jason Kirschenbaum, demands judgment against the Defendants named hereinabove jointly and severally, as follows:

(a) On the First cause of action for Fraud, damages in an amount to be determined at trial of this matter;

(b) On the Second cause of action for Conversion, damages an amount to be determined at trial of this matter;

(c) On the Third cause of action for Breach of Fiduciary Duties, damages in an amount to be determined at trial of this matter;

(d) On the Fourth cause of action for Breach of the Covenant of Good Faith and Fair Dealing, damages in an amount to be determined at trial of this matter;

(e) On the Fifth cause of action for Unjust Enrichment, damages in an amount to be determined at trial of this matter;

(f) On the Sixth cause of action for Quantum Meruit, damages in an amount to be determined at trial of this matter;

(g) On the Seventh cause of action for an Accounting for all fees received by Defendants in connection with the deals described herein and any other transactions that involved Plaintiff in the same or similar capacity;

FILED: NEW YORK COUNTY CLERK 09/24/2019 11:21 PM    INDEX NO. 654287/2019
NYSCEF DOC. NO. 30                                    RECEIVED NYSCEF: 09/27/2019

(h) On the Eighth cause of action for Declaratory Judgment, a declaratory judgment from this Court declaring Plaintiff a rightful member of the various entities and joint ventures, as described more fully above;

(i) On all causes of action, reasonable attorney's fees, the costs and disbursements of this action and such other, further and different relief as the Court deems just and proper.

Dated: New York, New York
       September 24, 2019

GULKO SCHWED LLP

By:    /s Asher Gulko
       Asher C. Gulko, Esq.
       44 Wall Street, 2nd Floor
       New York, New York 10005
       212.500.1312

Case 1:21-cv-11059-GHW Document 230-3 Filed 04/29/25 Page 2 of 42
pg 42 155

# SUPREME COURT OF THE STATE OF NEW YORK
# NEW YORK COUNTY

| | | | |
|---|---|---|---|
| **PRESENT:** | **HON. ANDREW BORROK** | **PART** | **IAS MOTION 53EFM** |
| | *Justice* | | |

-------------------------------------------------------------------------------X

| | |
|---|---|
| JASON KIRSCHENBAUM, | **INDEX NO.** 653287/2019 |
| Plaintiff, | **MOTION DATE** 08/12/2019, 08/12/2019 |
| - v - | **MOTION SEQ. NO.** 001 002 |
| STEPHANE DE BAETS, THOSAPONG JURUTHAVEE, ELEVATED RETURNS, LLC, 315 EAST DEAN ASSOCIATES, INC., ASPEN DIGITAL, INC., ER MERRY WAY LP, ER GLOBAL, LLC, JOHN DOES 1-10, | **DECISION + ORDER ON MOTION** |
| Defendant. | |

-------------------------------------------------------------------------------X

The following e-filed documents, listed by NYSCEF document number (Motion 001) 13, 14, 15, 16, 17, 18, 19, 28, 33, 35, 36, 37, 41, 52, 53, 54, 55, 56, 57, 58, 59, 60, 61, 62, 64, 65, 66

were read on this motion to/for _____ DISMISS _____.

The following e-filed documents, listed by NYSCEF document number (Motion 002) 20, 21, 22, 23, 24, 25, 29, 34, 38, 39, 40, 43, 44, 45, 46, 47, 48, 49, 63, 67

were read on this motion to/for _____ DISMISS _____.

Motion sequence nos. 001 and 002 are consolidated for disposition. Upon the foregoing

documents, (i) Stephane De Baets, Elevated Returns, LLC, 315 East Dean Associates, Inc.,

Aspen Digital, Inc. f/k/a Aspen REIT Inc., ER Merry Way LP, and ER Global, LLC's

(collectively, the **Moving Defendants**) motion to dismiss (Mtn. Seq. No. 001) the Amended

Complaint pursuant to CPLR §§ 3211(a)(1) and (a)(7) is granted in part as set forth below, (ii)

Jason Kirschenbaum's cross motion for leave to file a Second Amended Complaint is granted

solely to the extent of the sixth cause of action for unjust enrichment, and (iii) Thosapong

Jaruthavee's motion to dismiss (Mtn. Seq. No. 002) the Amended Complaint pursuant to CPLR

§§ 301 and 302 for lack of personal jurisdiction is granted.

653287/2019   KIRSCHENBAUM, JASON vs. DE BAETS, STEPHANE                    Page 1 of 23
Motion No.  001 002

1 of 23

EXHIBIT C

Case No. 1:24-cv-08156-GHW-KS Document 50-16 Filed 04/29/25 Page 43 of 43
pg 43 of 155
INDEX NO. 653287/2019

**The Relevant Facts and Circumstances**

The plaintiff Jason Kirschenbaum seeks compensation for his involvement in certain business ventures with the defendants.  The Amended Complaint alleges that towards the end of 2015, Mr. Kirschenbaum began to discuss the formation of a Real Estate Investment Trust (**REIT**) with Mr. De Baets (NYSCEF Doc. No. 30, ¶ 15).  On or around February 2016, Mr. Kirschenbaum allegedly met with Mr. De Baets and Mr. Jaruthavee at the Mercer Hotel in New York City to further discuss the creation of a single asset REIT and a joint venture allegedly ensued whereby Mr. De Baets and Mr. Jaruthavee would provide the initial assets in forming the REIT and Mr. Kirschenbaum would manage the assets (*id.*, ¶¶ 18-22).

On or about February 26, 2016, Mr. De Baets allegedly offered Mr. Kirschenbaum a 25% equity position in the joint venture, which would provide a compensation structure for the creation of a single asset REIT using the Sunset Tower Hotel in Los Angeles, California, in addition to other deals (*id.*, ¶¶ 23-24).  Although Mr. Kirschenbaum does not expressly identify the joint venture that was allegedly formed in 2016, the pleadings suggest that the joint venture alleged is the entity Elevated Returns, LLC (**ER**) and/or ER Global, LLC (**ER Global**), of which Mr. Kirschenbaum ultimately seeks a 25% share (*id.*, ¶¶ 36, 73-74).  Mr. Kirschenbaum alleges that Mr. De Baets is the Chief Executive Officer of ER and that Mr. Jaruthavee is its limited partner (*id.*, ¶¶ 5-6).

In sum, Mr. Kirschenbaum claims that he contributed significantly to the following projects with the defendants: (i) the formation of the Sunset Tower REIT, (ii) formation of Aspen Digital, Inc. (the **Aspen REIT**) and Aspen Coin, (iii) the acquisition of a certain interest in a company called

**653287/2019   KIRSCHENBAUM, JASON vs. DE BAETS, STEPHANE**                    **Page 2 of 23**
**Motion No.  001 002**

2 of 23

Case 1:21-cv-01110-GHW-KS Document 50-2 Filed 04/29/25 DC USDC Colorado pg 44 of 155
INDEX NO. 653287/2019

Securitize, (iv) the development of ER and ER Global, and (v) the capital raise for the acquisition of 21% of an entity called Seamico Securities (*id.*, ¶ 25).

With respect to the Sunset Tower Hotel, Mr. Kirschenbaum alleges that he spent nearly one year facilitating the creation of a related REIT by bringing in a law firm to act as counsel for the REIT formation, coordinating with legal counsel, and performing other due diligence (*id.*, ¶¶ 27-30). Although a Sunset Tower REIT was ultimately never formed, the Sunset Tower Hotel was sold for approximately $95 million and the defendants allegedly "agreed to pay [Mr. Kirschenbaum] $20,000 of all fee revenue received from the Sunset Tower Deal and indicated that [Mr. Kirschenbaum] would be paid well on their other dealings" (*id.*, ¶ 39).

Mr. Kirschenbaum also asserts that Mr. De Baets acquired the St. Regis Aspen Hotel (the **Hotel**) through the entity 315 East Dean Associates, Inc. (**East Dean**) and that the Aspen REIT was filed with the Securities and Exchange Commission in November 2017 to launch an initial public offering in connection with the Hotel (*id.*, ¶¶ 40-41). According to Mr. Kirschenbaum, he was and still is a member of the Aspen REIT (*id.*, ¶ 42). Although Mr. Kirschenbaum claims that he contributed $1 million to the Aspen REIT preliminary offering, he alleges that ER cancelled the public offering in February 2018 in order to remove him as a member of the Aspen REIT (*id.*, ¶¶ 43-45).

He further alleges that he was involved in the Aspen Coin project, whereby shares in the Hotel would be denominated in Aspen Coin, a special securitized token created for the Hotel's sale (*id.*, ¶ 48). Mr. Kirschenbaum claims that he was confirmed as a partner in the Aspen Coin

**653287/2019  KIRSCHENBAUM, JASON vs. DE BAETS, STEPHANE**          **Page 3 of 23**
**Motion No.  001 002**

3 of 23

FILED: NEW YORK COUNTY CLERK 10/16/2020 02:27 PM
NYSCEF DOC. NO. 68
INDEX NO. 653287/2019
RECEIVED NYSCEF: 10/16/2020

project in April 2018 and he attaches a supporting email with the subject line "Re: Updated

Deck," dated April 17, 2018, wherein Mr. De Baets writes, "Please add jason [sic] as co-founder

too [sic] Lets also pin down a call about who gets what . the [sic] sooner the better" (*id.*, ¶ 47;

NYSCEF Doc. No. 31).  The partners in Aspen Coin sought to raise $18 million for 19% of the

Hotel, which was completed in October 2018 with Mr. Kirschenbaum's alleged contribution of

over $1.36 million (NYSCEF Doc. No. 30, ¶¶ 49-54).  Mr. Kirschenbaum asserts that Mr.

Jaruthavee and East Dean would not have contributed $9 million to the Aspen Coin project but

for his initial contribution (*id.*, ¶¶ 54-56).

Mr. Kirschenbaum also alleges that in November 2018, he, Mr. Jaruthavee, and Mr. De Baets

made equal contributions to the company Securitize by using the fee from the Aspen Coin raise,

which was 4% of the $18 million equity for Aspen Coin (*id.*, ¶ 58).  Mr. Kirschenbaum claims he

invested $1 million in Securitize either through or together with ER (*id.*, ¶ 66).  Ultimately, as

Mr. Kirschenbaum claims, the defendants: (i) failed to make any distributions from the monies

invested with Securitize or his other investments, (ii) denied him the ability to liquidate or

redeem his interests in the same, and (iii) denied his rightful ownership interest in unspecified

joint ventures with the defendants (*id.*, ¶¶ 68-70).

On June 5, 2019, Mr. Kirschenbaum filed his Complaint asserting claims for (1) breach of

contract, (2) breach of fiduciary duty, (3) breach of the covenant of good faith and fair dealing

against Mr. De Baets, (4) unjust enrichment, (5) quantum meruit, and (6) an accounting

(NYSCEF Doc. No. 1).  On August 12, 2019, the Moving Defendants and Mr. Jaruthavee filed

their respective motions to dismiss (NYSCEF Doc. Nos. 13, 20).

**653287/2019   KIRSCHENBAUM, JASON vs. DE BAETS, STEPHANE**
**Motion No.  001 002**

**Page 4 of 23**

4 of 23

Case No. 1:24-cv-03280-GHW-KHP   Document 150   Filed 06/29/25   US Disk Chorago
pg 46 of 155

Thereafter, on September 24, 2019, Mr. Kirschenbaum filed an Amended Complaint alleging claims for (1) fraud against Mr. De Baets, (2) conversion, (3) breach of fiduciary duty, (4) breach of the covenant of good faith and fair dealing against Mr. De Baets, (5) unjust enrichment, (6) quantum meruit, (7) an accounting, and (8) a declaratory judgment (NYSCEF Doc. No. 30).

The court heard oral argument on the two motions to dismiss on February 26, 2020 and determined that the Mr. Kirschenbaum's Amended Complaint did not moot the defendants' motions because the motions to dismiss extended the time in which Mr. Kirschenbaum could amend his complaint as of right, which he did (CPLR § 3025 [a]; *STS Mgt. Dev. v NY State Dept. of Taxation & Fin.*, 254 AD2d 409 [2d Dept 1998]). As Mr. Kirschenbaum had only filed an Amended Complaint in opposition to the two motions to dismiss, the court permitted him to file supplemental opposition papers pursuant to a so-ordered stipulation, dated February 26, 2020 (the **Stipulation**; NYSCEF Doc. No. 42).

Mr. Jaruthavee was also granted permission to file supplemental materials pursuant to the Stipulation. Mr. Jaruthavee's motion to dismiss is based on, *inter alia*, the court's alleged lack of jurisdiction over him because he is a Thai national living in Bankgok, Thailand, and has never resided at 56 Leonard Street, New York, New York, the address where he was served (NYSCEF Doc. No. 22, ¶¶ 4-8). Mr. Kirschenbaum then filed his opposition to the instant motions and cross-moved for leave to file a Second Amended Complaint.

In his Second Amended Complaint, Mr. Kirschenbaum seeks to add a claim for breach of a certain letter agreement (the **Agreement**), dated March 22, 2016, by and between Mr.

653287/2019  KIRSCHENBAUM, JASON vs. DE BAETS, STEPHANE                    Page 5 of 23
Motion No. 001 002

5 of 23

Case 1:24-cv-01823-CM-RFT Document 50-6 Filed 08/29/25 Page 47 of 155

Kirschenbaum and Mr. De Baets, pursuant to which both individuals, ER and any affiliate of ER, would form an advisory company to generate advisory fee income related to the creation of a single asset REIT to be listed on the NASDAQ, the underlying real estate being the Sunset Tower Hotel (NYSCEF Doc. No. 3 at 1).[1]

The Agreement provides that Mr. Kirschenbaum would be entitled to 50% of any advisory fee paid to the advisory company if a successful listing occurred and that the arrangement would remain in place for future successful deals (*id.*). The advisory company would be formed simultaneously with the Sunset Tower deal and Mr. Kirschenbaum would be entitled to 25% of the founders' equity issued in connection with the formation of the advisory company (*id.* at 2).

Significantly, the Agreement also provides that:

> … ***if we are not successful on the first try/deal I will terminate/dissolve this Advisory Company (that we formed) due to unsuccessful results and the Advisory Company and the listing of additional single asset REITs, will no longer exist you [sic] and there will be no such partnership or agreements in connection with the formation of the Advisor Company*** … Other than agreeing to form the new Advisory Company and its stated fees as well as the equity percentages defined herein, ***nothing in this letter is intended to create a partnership or joint venture between the parties hereto*** nor is it intended to make either party the agent of the other for any purpose whatsoever … Your and our participation in the proposed Initial Listing is voluntary and either you or we may terminate our respective participation at any time.

(*id.* [emphasis added]).

---

[1] Although the Agreement was attached to the Complaint, then removed when Mr. Kirschenbaum filed his Amended Complaint, and also omitted as an attachment to the Second Amended Complaint, this document nevertheless constitutes documentary evidence that forms part of the record on these motions to dismiss.

**653287/2019 KIRSCHENBAUM, JASON vs. DE BAETS, STEPHANE**
**Motion No. 001 002**

**Page 6 of 23**

6 of 23

Case No. 124-cv-01662-CM-KS Document 50-61 filed 04/29/25 USDC Colorado pg 48 of 155
pg 48 of 155

**Discussion**

I.     **Motion Sequence 001 (the Moving Defendants' Motion to Dismiss the Amended Complaint and Mr. Kirschenbaum's Cross Motion for Leave to File a Second Amended Complaint)**

The Moving Defendants initially sought to dismiss the original Complaint pursuant to CPLR § 3211 (a)(1) and (7). As the Amended Complaint was filed in response to the defendants' motions, the court will incorporate the Amended Complaint into the record and analyze the sufficiency of the amended pleading on the instant motions to dismiss (*Uptown Healthcare Mgt. Inc. v Allstate Ins. Co.*, 117 AD3d 542 [1st Dept 2014] [when amended pleading submitted in response to pre-answer motion to dismiss, provident course of action is to incorporate amended pleading into the record and analyze the sufficiency of the amended pleading on the motion]).

On a motion to dismiss, the pleadings are to be afforded a liberal construction and the facts as alleged in the complaint are accepted as true (*Leon v Martinez*, 84 NY2d 83, 87 [1994]). Under CPLR § 3211 (a)(1), the court may dismiss a cause of action where the documentary evidence conclusively establishes a defense to the claims as a matter of law (*id.*, 88). Dismissal under CPLR § 3211 (a)(7) requires the court to assess whether the proponent of the pleading has a cause of action and not whether he has stated one (*id.*).

As concerns leave to amend, pursuant to CPLR § 3025 (b), a party may move to amend its pleadings at any time by leave of court, which shall be freely given absent prejudice or surprise upon such terms as may be just, so long as the proffered amendment is not palpably insufficient or clearly devoid of merit (*Cruz v Brown*, 129 AD3d 455, 456 [1st Dept 2015]).

653287/2019   KIRSCHENBAUM, JASON vs. DE BAETS, STEPHANE           Page 7 of 23
Motion No. 001 002

7 of 23

Case No. 1:24-cv-01190-GHW-KHP    Document 50-6    Filed 04/29/25    Page 9 of 49
pg 49 of 155
INDEX NO. 653287/2019

## A.  The First Cause of Action (Fraud Against Mr. De Baets)

A claim for fraud requires a material misrepresentation of a fact, knowledge of its falsity, an intent to induce reliance, justifiable reliance by the plaintiff, and damages (*Eurycleia Partners, LP v Seward & Kissel, LLP*, 12 NY3d 553, 559 [2009]).  A claim for fraud is also subject to the heightened pleading standard under CPLR § 3016 (b).

Here, Mr. Kirschenbaum alleges that Mr. De Baets knowingly made a false representation that Mr. Kirschenbaum's portion of the 4% fee from the Aspen Coin raise would be invested in Securitize, when instead, Mr. De Baets converted Mr. Kirschenbaum's contribution into his own (NYSCEF Doc. No. 30, ¶¶ 77-80).  However, earlier in the Amended Complaint, Mr. Kirschenbaum simply asserts that he and Mr. De Baets contributed equally to Securitize by splitting 4% of the Aspen Coin raise (*id.*, ¶ 58).  In light of these contradictory pleadings, Mr. Kirschenbaum fails to plead with particularity facts that permit a reasonable inference of fraudulent misconduct by Mr. De Baets (*see Eurycleai Partners,* 12 NY3d at 559).  Nor does Mr. Kirschenbaum allege any facts to show that he reasonably relied on any of Mr. De Baets' alleged misrepresentations.  Rather, Mr. Kirschenbaum only asserts bare and conclusory allegations of fraud, without any supporting details, which cannot satisfy the requirements of CPLR § 3016 (b) (*see Stein v Doukas*, 98 AD3d 1024, 1025-1026 [2d Dept 2012] [dismissing fraud claim for bare and conclusory allegations of the same]).  Accordingly, Mr. Kirschebaum's first cause of action for fraud as alleged in the Amended Complaint must be dismissed.

To the extent that in the Second Amended Complaint, Mr. Kirschenbaum also alleges that Mr. De Baets made three additional misrepresentations: (i) that Mr. Kirschenbaum would continue to

653287/2019   KIRSCHENBAUM, JASON vs. DE BAETS, STEPHANE                    Page 8 of 23
Motion No. 001 002

8 of 23

Case No. 1:24-cv-01580-CNS-KAS   Document 36-6   filed 04/29/25   USDC Colorado   pg 60 of 155

receive his equity interests in the advisory company to the REIT, (ii) that the parties' partnership

structure continued to be intact after each "apparent downturn," and (iii) that Mr.

Kirschenbaum's contribution of $1,360,000 to the Aspen Coin raise was necessary for Mr.

Kirschenbaum to maintain his equity interests and for other defendants to contribute capital to

the raise, this is still insufficient (NYSCEF Doc. No. 55, ¶ 92). These additional allegations do

not state a claim for fraud because the sum and substance of the new misrepresentations are

impermissibly predicated upon the continued performance of the Agreement, namely that Mr.

Kirschenbaum was entitled to equity in the advisory company (*see HSH Nordbank AG v UBS

AG*, 95 AD3d 185, 206 [1st Dept 2012] [fraudulent inducement claim can only be premised on

insincere promise of future performance when alleged false promise is collateral to existing

contract]).

In fact, the overlapping nature of the fraud and contract claims become apparent as Mr.

Kirschenbaum acknowledges that he relied upon Mr. De Baets' misrepresentations "to enter into

the [Agreement] and subsequently affirm their partnership terms throughout the term of their

relationship" (*id.*, ¶ 98). As Mr. De Baets' purported misrepresentations are not collateral to the

Agreement, Mr. Kirschenbaum fails to state a claim for fraudulent inducement in either the

Amended Complaint or the Proposed Second Amended Complaint and this branch of his cross

motion to amend this claim is also denied.

### B. The Second Cause of Action (Conversion)

The elements of conversion are (1) the plaintiff's possessory right or interest in the property and

(2) the defendant's dominion over the property or interference with it, in derogation of the

**653287/2019   KIRSCHENBAUM, JASON vs. DE BAETS, STEPHANE**                                    **Page 9 of 23**
**Motion No. 001 002**

9 of 23

FILED: NEW YORK COUNTY CLERK 10/16/2020 02:27 PM

NYSCEF DOC. NO. 68

RECEIVED NYSCEF: 10/16/2020

plaintiff's rights (*Colavito v NY Organ Donor Network, Inc.*, 8 NY3d 43, 49-50 [2006]). When a

claim for conversion is asserted for money only, the funds must be specifically identifiable and

subject to an obligation to be returned or treated in a particular manner (*Matter of Clark*, 146

AD3d 495, 496 [1st Dept 2017]) [citations omitted]).

Mr. Kirschenbaum alleges that he contributed over $1.36 million to Aspen Coin, and that the fee

from the Aspen Coin raise was put towards a contribution in Securitize (NYSCEF Doc. No. 30,

¶¶ 40, 54-57). Mr. Kirschenbaum further alleges that the defendants were obliged to return his

funds by way of a distribution or an opportunity to liquidate or redeem his interests in either

Aspen Coin or Securitize (*id.*, ¶ 86). However, Mr. Kirschenbaum does not explain how his

invested funds were subject to any obligation to be returned and whether such obligation was

conferred by contract or another manner (*see also Lindgrove v. Schluter & Co., Inc.*, 256 NY

439, 444 [1931] [defendants are not obliged to issue dividends as a matter of law because the

directors of a corporation owe a duty to shareholders to declare dividends when it is in the best

interests of the corporation to do so]). In addition, Mr. Kirschenbaum does not identify the funds

he seeks to have returned as required to state a claim for conversion (*Manufacturers Hanover

Trust Co. v Chemical Bank,* 160 AD2d 113, 124 [1st Dept 1990] [money can be subject of

conversion claim only if "specifically identifiable and segregated"]). An alleged breach of

contract is insufficient to serve as a predicate for a claim of conversion (*Markov v Spectrum

Group Intl., Inc.*, 136 AD 3d 413, 413 [1st Dept 2016]). Accordingly, the second cause of action

for conversion must be dismissed.

**653287/2019  KIRSCHENBAUM, JASON vs. DE BAETS, STEPHANE**
**Motion No.  001 002**

**Page 10 of 23**

10 of 23

Case 1:24-cv-00367-LJL Document 50-8 Filed 04/29/25 DC INDEX NO. 653287/2019
pg 52 of 155

Nothing alleged in the Second Amended Complaint remedies the foregoing defects (NYSCEF Doc. No. 55, ¶¶ 100-105) and the branch of the Mr. Kirschnebaum's cross motion to amend his conversion claim is therefore denied.

### C. The Third Cause of Action (Breach of Fiduciary Duty)

It is well settled that a corporation does not owe a fiduciary duty to its members or shareholders (*Stalker v Stewart Tenants Corp.*, 93 AD3d 550, 552 [1st Dept 2012]). However, members of a joint venture owe fiduciary duties to each other for the duration of the joint venture (*Blue Chip Emerald LLC v Allied Partners Inc.*, 299 AD2d 278, 279 [1st Dept 2002]).

Here, however, Mr. Kirschenbaum cannot sustain any claim for breach of fiduciary duty by the Moving Defendants (*Stalker, supra*). Inasmuch as the Mr. Kirschenbaum alleges that he formed a joint venture with the defendants which forms the basis for a breach of fiduciary duty by the individual defendants, the claim fails because the parties' Agreement expressly provides that, "nothing [therein]… is intended to create a partnership or joint venture between the parties hereto nor is it intended to make either party the agent of the other for any purpose whatsoever" (NYSCEF Doc. No. 3, at 2).

In any event, a joint venture requires a mutual promise by the parties to share in the profits and losses of a business, and Mr. Kirschenbaum does not allege that he and Mr. De Baets agreed to share in both the profits and losses of any potential joint venture (*Slabakis v Schik*, 164 AD3d 454, 455 [1st Dept 2018] [indispensable element of joint venture is mutual promise of parties to

**653287/2019   KIRSCHENBAUM, JASON vs. DE BAETS, STEPHANE**                    **Page 11 of 23**
**Motion No.  001 002**

11 of 23

share in profits and losses of business]).  Accordingly, the third cause of action for breach of

fiduciary duty is dismissed.

There are no additional allegations in the Second Amended Complaint in support of the fiduciary

duty claim to remedy the foregoing issues and, therefore, the branch of the cross motion to

amend the breach of fiduciary claim is denied.

### D.  The Fourth Cause of Action (Breach of the Covenant of Good Faith and Fair Dealing against Mr. De Baets)

The obligation of good faith and fair dealing implied in every contract requires that "neither

party shall do anything which will have the effect of destroying or injuring the right of the other

party to receive the fruits of the contract" (*Dalton v Education Testing Serv.*, 87 NY2d 384, 389

[1995], citing *Kirke La Shelle Co. v Paul Armstrong Co.*, 263 NY 79, 87 [1933]).  The existence

of a contract is axiomatic to any claim for breach of the covenant of good faith and fair dealing.

In the Amended Complaint, Mr. Kirschenbaum does not reference any agreement between the

parties that would establish the existence of any contract upon which to ground a claim for

breach of the implied covenant of good faith and fair dealing.

In the Second Amended Complaint, Mr. Kirschenbaum does incorporate the Agreement into his

pleadings and, as further discussed below, sufficiently alleges a valid contract to form the basis

for breach of its implied covenant.  He also alleges that Mr. De Baets breached the implied

covenant by "failing to accurately inform Plaintiff of the revenues received for the projects he

worked on and actively deceiving and misleading Plaintiff by furnishing him with false

653287/2019  KIRSCHENBAUM, JASON vs. DE BAETS, STEPHANE
Motion No.  001 002

Page 12 of 23

12 of 23

Case No. 1:24-cv-03188-CM-SDA    Document 50-1    Filed 04/29/25    Page 54 of 155
pg 64 of 155

information concerning said revenues in order to deprive Plaintiff of the compensation to which

he was entitled" (NYSCEF Doc. No. 55, ¶ 105).

However, Mr. De Baets' purported failure to advise Mr. Kirschenbaum of revenues generated

from projects did not injure any of his rights under the Agreement because, as discussed, the

Agreement did not provide for any payment based upon revenue.  Instead, under the Agreement,

Mr. Kirschenbaum was to be compensated in two ways: (i) 25% equity in an advisory company

and (ii) 50% of any advisory fee paid to the advisory company (NYSCEF Doc. No. 3 at 1).  In

any event, as discussed in connection with the proposed new breach of contract claim, *infra,* the

allegations in support of this proposed new claim are palpably insufficient.  Accordingly, Mr.

Kirschenbaum fails to state a claim for breach of the implied covenant of good faith and fair

dealing and this claim is dismissed.

### E.  The Fifth Cause of Action (Unjust Enrichment)

The elements of unjust enrichment are "(1) the other party was enriched, (2) at that party's

expense, and (3) that it is against equity and good conscience to permit the other party to retain

what is sought to be recovered" (*Georgia Malone & Co., Inc. v Rieder*, 19 NY3d 511, 516

[2012]).

In sum and substance, Mr. Kirschenbaum alleges that he contributed significantly to a number of

projects: the Sunset Tower deal, creation of the Aspen REIT and Aspen Coin, the acquisition of a

certain interest in Securitize, development of ER/ER Global, and a capital raise for the

acquisition of Seamico Securities (NYSCEF Doc. No. 30, ¶ 25).  More specifically, Mr.

**653287/2019  KIRSCHENBAUM, JASON vs. DE BAETS, STEPHANE**                    **Page 13 of 23**
**Motion No.  001 002**

13 of 23

Case No. 1:24-cv-01069-CNS-KAS   Document 50-3   filed 04/29/25   USDC Colorado   pg 55
pg 66 of 155

Kirschenbaum asserts that he contributed $1 million to the Aspen REIT, $1.36 million to Aspen Coin, and invested $1 million in Securitize, and that the defendants have denied him any ability to liquidate or redeem his interests in the same (*id.*, ¶¶ 43, 54-55, 66). According every favorable inference to Mr. Kirschenbaum, as the court must on a motion to dismiss, Mr. Kirschenbaum has sufficiently alleged that the defendants were unjustly enriched through his monetary contributions to the Aspen REIT, Aspen Coin, and Securitize and, thus, states a claim for unjust enrichment.

Although the Moving Defendants assert that the unjust enrichment claim is duplicative of the Mr. Kirchenbaum's breach of contract claim, the parties' Agreement does not apply to any projects other than the Sunset Tower REIT and the unjust enrichment claim may be sustained insofar as Mr. Kirschenbaum seeks damages for projects other than the Sunset Tower REIT. Accordingly, the fifth cause of action for unjust enrichment is sustained and to the extent that the Second Amended Complaint pleads a cause of action for unjust enrichment, the claim as alleged therein survives.

### F. The Sixth Cause of Action (Quantum Meruit)

A claim for quantum meruit requires (i) the performance of services in good faith by the plaintiff, (ii) acceptance of those services by the defendant, (iii) with an expectation of compensation for the services, and (iv) the reasonable value of the services (*Freedman v Pearlman*, 271 AD2d 301, 304 [1st Dept 2000]).

653287/2019   KIRSCHENBAUM, JASON vs. DE BAETS, STEPHANE          Page 14 of 23
Motion No. 001 002

14 of 23

Case No. 1:24-cv-00367-GHW-KHP Document 50-8 Filed 04/29/25 USDC Colorado pg 56 of 155

Mr. Kirschenbaum fails to state a claim for quantum meruit with respect to the Sunset Tower REIT because he could not expect compensation for the same when the Agreement specifically provided for payment upon a successful listing of the REIT which did not occur (NYSCEF Doc. No. 30, ¶¶ 27-30, 38).

To the extent that Mr. Kirschenbaum allegedly performed services in connection with the Aspen REIT and Aspen Coin, these assertions also fail to support a claim in quasi-contract as the Statute of Frauds requires that any agreement, promise or undertaking to "negotiat[e] the purchase, sale, exchange, renting or leasing of any real estate or … of a business opportunity" is void unless it is in writing and Mr. Kirschenbaum fails to allege the existence of any valid written agreement regarding his services related to these projects (General Obligations Law § 5-701 [a] [10]).

Finally, Mr. Kirschenbaum fails to allege what, if any, services he provided to the defendants in relation to Securitize and Seamico projects, other than his alleged personal investments and he also fails to identify the reasonable value any such services might be worth (*see* NYSCEF Doc. No. 30, ¶¶ 57-66). Accordingly, the sixth cause of action for quantum meruit is dismissed. The Second Amended Complaint does not contain any additional allegations as to what services Mr. Kirschenbaum rendered to the defendants or their value and his cross motion to amend the quantum meruit claim is, therefore, denied.

653287/2019  KIRSCHENBAUM, JASON vs. DE BAETS, STEPHANE          Page 15 of 23
Motion No.  001 002

15 of 23

Case 1:24-cv-08156-CM-KHP Document 50-1 Filed 04/29/25 Page 57 of 155
pg 57 of 155

### G. The Seventh Cause of Action (Accounting)

An accounting is an action at equity, which requires that a trust or fiduciary relationship exist between the parties (*Terner v Glickstein & Terner, Inc.*, 283 NY 299, 301 [1940]).  For the reasons set forth above, Mr. Kirschenbaum failed to plead any factual basis for finding a fiduciary relationship between the parties such that his seventh cause of action for an accounting must be dismissed and his cross motion to amend this claim is also denied.

### H. The Eighth Cause of Action (Declaratory Judgment)

Pursuant to CPLR § 3001, a declaratory judgment renders a final judgment as to the rights of the parties regarding a justiciable controversy.  When a party brings a motion to dismiss a declaratory judgment, the only issue to determine is whether a proper case has been presented to invoke the court's jurisdiction to make a declaratory judgment, and not whether the movant is entitled to a declaration in its favor (*Hallock v State*, 32 NY2d 599, 603 [1973]).

Mr. Kirschenbaum's declaratory judgment cause of action seeks a declaration that he is a "rightful member of the various entities and joint ventures" as described in the Amended Complaint (NYSCEF Doc. No. 30,  ¶¶ 111-114).  However, this claim is barred by the documentary evidence – i.e., the Agreement – which specifies that (i) the Agreement would terminate if the parties were unsuccessful in listing the Sunset Tower REIT (i.e., "if we are not successful on the first try/deal") and (ii) that nothing therein was "intended to create a partnership or joint venture between parties" (NYSCEF Doc. No. 3 at 2).  Stated differently, Mr. Kirschenbaum's ultimate claim to a 25% equity interest in the formation of an advisory company, either ER or ER Global, is resolved by the express terms of the Agreement and there is

653287/2019  KIRSCHENBAUM, JASON vs. DE BAETS, STEPHANE                    Page 16 of 23
Motion No.  001 002

16 of 23

no basis to maintain a declaratory judgment under these circumstances (*Walsh v Andorn*, 33

NY2d 503, 507-508 [1974] [declaratory judgment serves practical end to stabilize a dispute over

present or prospective obligations and a declaratory judgment should not be employed where

there is no necessity to do so]).  Likewise, Mr. Kirschenbaum fails to identify a justiciable

controversy over his claim to a share in any other purported projects with the defendants.

Accordingly, the eighth cause of action for a declaratory judgment is dismissed and his cross

motion to amend this claim is denied.

### A.  Plaintiff's Cross Motion to Add a Claim for Breach of Contract

The well-settled elements of a claim for breach of contract are (1) the existence of a contract, (2)

the plaintiff's performance, (3) the defendant's breach and (4) resulting damages (*Harris v

Seward Park Hous. Corp.*, 79 AD3d 425, 426 [1st Dept 2010]).

In the Second Amended Complaint, Mr. Kirschenbaum alleges that he entered into several

enforceable agreements with Mr. De Baets and ER, including the Agreement, but fails to identify

any specific breach of said agreements by the two defendants (NYSCEF Doc. No. 55, ¶¶ 83-88).

In addition, the purported breach of contract claim is flatly contradicted by the documentary

evidence, namely the Agreement itself.  As discussed above, the Agreement provides that Mr.

Kirschenbaum would be compensated with 50% of any advisory fee paid to the advisory

company and 25% equity in the advisory equity, but only upon a successful listing of the REIT

on the NASDAQ, which did not occur (*id.*, ¶ 44; NYSCEF Doc. No. 3, at 1-2).  Furthermore, the

Agreement specifies that an unsuccessful first listing would result in dissolution of the advisory

company and that no further partnership or agreements would exist in relation to the advisory

**653287/2019   KIRSCHENBAUM, JASON vs. DE BAETS, STEPHANE**
**Motion No.  001 002**

Page 17 of 23

17 of 23

Case No. 1:24-cv-00780-GHW-KHP   Document 250-6   Filed 04/29/25   US Dist. Court page 59
pg 59 of 155

company (NYSCEF Doc. No. 3 at 2). In other words, the failure to list the Sunset Tower REIT on the NASDAQ automatically resulted in dissipation of the contemplated advisory company and any rights conferred under the Agreement in relation to the advisory company.

To the extent that Mr. Kirschenbaum also submits emails that purportedly indicate that the Agreement applies to other business ventures with the defendants, the court cannot consider evidence that lies outside the four corners of the Agreement because the Agreement is unambiguous on its face (*Greenfield v Philles Records, Inc.*, 98 NY2d 562, 569 [2002] [unambiguous agreement "must be enforced according to the plain meaning of its terms"]). Put simply, the Agreement by its terms cannot apply beyond the failed Sunset Tower REIT listing.

In addition, Mr. Kirschenbaum's conclusory allegations that he entered into multiple enforceable agreements with Mr. De Baets and ER rings hollow because Mr. Kirschenbaum does not specify any other contracts that the parties entered into or the specific provisions that were allegedly breached (*see Sud v Sud*, 211 AD2d 423, 424 [1st Dept 1995] [dismissing breach of contract claim for plaintiff's failure to allege, in a non-conclusory manner, essential terms of purported contract, specific provisions that were breached, and whether contract was oral or written]). Accordingly, that branch of the cross motion for leave to add a claim for breach of contract is denied.

## II. Motion Sequence 002 (Mr. Jaruthavee's Motion to Dismiss the Amended Complaint)

Mr. Jaruthavee brings a separate motion to dismiss the Amended Complaint under CPLR §§ 3211 (a)(1), (7), and (8). Pursuant to CPLR § 3211 (a)(8), a court may dismiss an action if it

653287/2019  KIRSCHENBAUM, JASON vs. DE BAETS, STEPHANE          Page 18 of 23
Motion No. 001 002

18 of 23

Case No. 1:24-cv-03110-CNS-KAS Document 50-1 filed 04/29/25 USDC Colorado
pg 60 of 155

lacks jurisdiction over the defendant and it is the plaintiff's burden to present sufficient evidence to demonstrate jurisdiction (*Coast to Coast Energy, Inc. v Gasarch*, 149 AD3d 485, 486 [1st Dept 2017] [citations omitted]).

Mr. Jaruthavee argues that the Amended Complaint should be dismissed for lack of jurisdiction because (i) the court lacks personal jurisdiction over him under either CPLR § 301 or § 302, and (ii) personal service was improper as Mr. Kirschenbaum did not deliver the service papers to Mr. Jaruthavee at his actual place of business, dwelling place, or usual place of abode.  Service on Mr. Jurathavee was made by leaving a copy of the summons and complaint in this action with the doorman of 56 Leonard Street, New York, NY (NYSCEF Doc. No. 24).  According to Mr. Jurathavee, he has never resided at this address, but that it is condominium owned by his daughter through a limited liability company in which she is the sole member (NYSCEF Doc. No. 22, ¶ 8).  In fact, Mr. Jurathavee claims he has never lived in New York, does not own any real estate in New York, directly or otherwise, and has never leased any property in New York (*id.*, ¶¶ 5-8).

### A.  Personal Jurisdiction Under CPLR § 301

Under CPLR§ 301, a court may exercise general jurisdiction over a defendant where the defendant's ties to New York "are so 'continuous and systematic' as to render them essentially at home in the forum state" (*Goodyear Dunlop Tires Operations, S.A. v Brown*, 564 US 915, 919 [2011], quoting *International Shoe Co. v Washington*, 326 U.S. 310, 317 [1945]). "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's

**653287/2019   KIRSCHENBAUM, JASON vs. DE BAETS, STEPHANE**
**Motion No.  001 002**

**Page 19 of 23**

19 of 23

Case No. 1:24-cv-01066-CKK-SAO Document 30-1 filed 04/29/25 USDC Colorado pg 61 of 155

pg 61 of 155

domicile" (*Goodyear*, 654 US at 924). The burden of establishing jurisdiction over a defendant

lies with the plaintiff (*Ying Jun Chen v Lei Shi*, 19 AD3d 407 [2d Dept 2005]).

Here, Mr. Kirschenbaum fails to establish general jurisdiction over Mr. Jaruthavee pursuant to

CPLR § 301 because Mr. Jaruthavee is a Thai national who is not – and has never been --

domiciled in New York (NYSCEF Doc. No. 47, ¶ 2; NYSCEF Doc. 48; *see IMAX Corp. v Essel

Group*, 154 AD3d 464, 465-466 [1st Dept 2017] [explaining that "New York courts may not

exercise general jurisdiction against a defendant under the United States Constitution or under

CPLR 301 unless the defendant is domiciled in the state"]).

### B. Personal Jurisdiction Under CPLR § 302

CPLR § 302 allows a court to exercise personal jurisdiction over a defendant where it transacts

business within the state, commits a tortious act in the state, or commits a tortious act without the

state causing injury to person or property within the state. Unlike general jurisdiction under

CPLR § 301, specific jurisdiction under section § 302 "is confined to adjudication of issues

deriving from, or connected with, the very controversy that establishes jurisdiction" (*Goodyear*,

564 US at 919). In other words, "the suit must aris[e] out of or relat[e] to the defendant's

contacts with the forum" (*Bristol-Myers Squibb Co. v. Superior Court of California, San

Francisco Cty.*, 137 S Ct 1773, 1780 [2017] [internal quotation marks and citation omitted])

All Mr. Kirschenbaum alleges with respect to Mr. Jaruthavee's transaction of business in New

York in the Amended Complaint is that Mr. Jaruthavee invested in the Aspen Coin project and in

Securitize, but it is unclear whether these projects were conducted from or enter into in New

653287/2019  KIRSCHENBAUM, JASON vs. DE BAETS, STEPHANE                    Page 20 of 23
Motion No.  001 002

20 of 23

Case No. 1:24-cv-00488-GHW-KHP Document 50-62 filed 04/29/25 USDC Colorado pg 62 of 155

York and whether Mr. Jaruthavee actively participated in any business transactions related to these investments in New York (NYSCEF Doc. No. 30, ¶¶ 54-58). Mr. Kirschenbaum also alleges that Mr. Jaruthavee is a limited partner in ER, but Mr. Jaruthavee attests that he has never held any type of ownership interest in ER (*compare* NYSCEF Doc. No. 30, ¶ 6 *with* NYSCEF Doc. No. 22, ¶ 9). In any event, even if ER somehow submitted to jurisdiction of a New York court, this does not mean that Mr. Jaruthavee is equally subject to this court's jurisdiction simply by virtue of his membership in that entity (*SNS Bank, N.V. v Citibank, N.A.*, 7 AD3d 352, 354 [1st Dept 2004], citing *Baran Computer Servs., Ltd. v First Bank of Maury County*, 143 AD2d 63, 64 [2d Dept 1988] [a party's status as officer of a corporate defendant that might be subject to jurisdiction in New York did not render the party personally subject to such jurisdiction]).

To the extent that Mr. Kirschenbaum argues that Mr. Jaruthavee committed a tortious act in New York by attending one meeting in which he allegedly discussed the creation of a REIT, a single meeting is insufficient to establish personal jurisdiction because there lacks a substantial relationship between the meeting and Mr. Kirschenbaum's surviving claim for unjust enrichment (*Fischbarg v Doucet*, 9 NY3d 375, 380 [2007] [a court may exercise long arm jurisdiction over a defendant only where its activities are purposeful and there is a substantial nexus between the transaction and the claim asserted]).

As Mr. Kirschenbaum fails to establish personal jurisdiction over Mr. Jaruthavee under CPLR §§ 301 and 302, the court declines to address whether Mr. Kirschenbaum also lacks jurisdiction over Mr. Jaruthavee for improper service under CPLR § 308 (2). Accordingly, the Amended Complaint is dismissed as against Mr. Jaruthavee for lack of personal jurisdiction pursuant to

653287/2019   KIRSCHENBAUM, JASON vs. DE BAETS, STEPHANE        Page 21 of 23
Motion No.  001 002

21 of 23

Case 1:24-cv-03583-CM-KHP Document 50-1 Filed 04/29/25 Page 63 of 155
pg 63 155

CPLR §§ 301 and 302 and the allegations in the Second Amended Complaint do nothing to cure this jurisdictional deficiency.

For the avoidance of doubt, inasmuch as Mr. Kirschenbaum seeks leave in his memorandum of law (NYSCEF Doc. No. 53 at 9) to add Mr. Jaruthavee's daughter, Ravipan Jaruthavee, to the pleadings in this action, this request is denied because Mr. Kirschenbaum did not properly seek such relief in his cross-motion or include Ms. Jaruthavee in the proposed Second Amended Complaint.

Accordingly, it is

ORDERED that the Moving Defendants' motion to dismiss (Mtn. Seq. 001) is granted solely to the extent that the first cause of action for fraud, second cause of action for conversion, third cause of action for breach of fiduciary duty, fourth cause of action for breach of the covenant of good faith and fair dealing, sixth cause of action for quantum meruit, seventh cause of action for an accounting, and eighth cause of action for a declaratory judgment are dismissed without prejudice; and it is further

ORDERED that the plaintiff's cross motion (Mtn. Seq. 001) for leave to file a Second Amended Complaint is granted solely to the extent of the sixth cause of action for unjust enrichment; and it is further

**653287/2019 KIRSCHENBAUM, JASON vs. DE BAETS, STEPHANE** Page 22 of 23
**Motion No. 001 002**

22 of 23

Case 1:24-cv-01193-CNS-KAS    Document 30-7    filed 04/29/25    USDC Colorado    pg 64 of 155

ORDERED that the plaintiff is directed to serve his proposed Second Amended Complaint, with

respect to the sixth cause of action only and excluding defendant Mr. Jaruthavee, within 10 days

of this decision and order; and it is further


ORDERED that Mr. Jaruthavee's motion to dismiss (Mtn. Seq. 002) the Amended Complaint for

lack of personal jurisdiction is granted pursuant to CPLR §§ 301 and 302.

20201016142712ABORROK30917B603CA54E2C82FB0E16706B6438

__10/16/2020__
DATE

ANDREW BORROK, J.S.C.

CHECK ONE:      ☐ CASE DISPOSED     ☒ NON-FINAL DISPOSITION

            ☐ GRANTED   ☐ DENIED   ☒ GRANTED IN PART     ☐ OTHER

APPLICATION:      ☐ SETTLE ORDER     ☐ SUBMIT ORDER

CHECK IF APPROPRIATE:      ☐ INCLUDES TRANSFER/REASSIGN     ☐ FIDUCIARY APPOINTMENT     ☐ REFERENCE

**653287/2019   KIRSCHENBAUM, JASON vs. DE BAETS, STEPHANE**
**Motion No.  001 002**

Page 23 of 23

23 of 23

Case No. 1:24-cv-01746-CNS-KAS Document 50-4 filed 04/29/25 USDC Colorado pg 65 pg 66 of 155

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

_____

JASON KIRSCHENBAUM,

                                    Plaintiff,

            -against-

STEPHANE DE BAETS, THOSAPONG
JURUTHAVEE, ELEVATED RETURNS, LLC, 315
EAST DEAN ASSOCIATES, INC., ASPEN DIGITAL
INC. f/k/a ASPEN REIT INC., ER MERRY WAY
LP, ER GLOBAL, LLC and JOHN DOES 1-10,

                                    Defendants.

_____

Index No. 653287/2019

**SECOND AMENDED
COMPLAINT**

Plaintiff, Jason Kirschenbaum ("Plaintiff") by his undersigned attorneys, Gulko Schwed LLP, as and for his Second Amended Complaint against defendants Stephane De Baets ("De Baets"), Elevated Returns, LLC ("ER"), 315 East Dean Associates, Inc. ("315 East Dean"), Aspen Digital f/k/a/ Aspen REIT, Inc. ("Aspen REIT"), ER Merry Way LP ("ER Merry"), ER Global, LLC ("ER Global") & John Does "1" through "10," being and intended to be those unknown persons and/or entities acting in concert with defendants, hereby states as follows:

**PRELIMINARY STATEMENT**

1.     This action stems from the fraud, deception and breaches of agreements that certain defendants have committed against and in connection to Plaintiff. Plaintiff was solicited by defendants to provide his experience and relationships for certain joint business ventures and facilitate the launch of their real estate investment trust (REIT). Despite the dynamics that shifted over the course of the relationship between the parties, and the evolution of the joint ventures between those involved, the agreements between the parties stayed intact.

EXHIBIT D

Case No. 1:24-cv-01867-CNS-KAS Document 50-14 filed 04/29/25 USDC Colorado pg 66
pg 66 of 155
INDEX NO. 656287/2019

2.      As described more fully herein, Plaintiff entered into an agreement, dated March 22, 2016 ("Initial Agreement") with defendant De Baets, which provided that Plaintiff would be entitled to 25% of founder's equity in connection to a certain "Initial Listing". The Initial Listing changed names several times, but continued the same mission and objective. Moreover, at each turn, Plaintiff trusted defendant De Baets; he relied on and his continued (false) assurances, and as a result, expended time, resources and significant money into these ventures.

3.      While defendants have contended that the Initial Listing failed and thus the Agreement terminated - this is far from true; the Initial Listing succeeded, and as a result, Plaintiff has sought to be compensated for his efforts. Plaintiff has sought to resolve the instant dispute without the need for judicial intervention, but all such efforts by Plaintiff have been futile. As such, Plaintiff is compelled to bring the instant action seek relief for monetary as well as other relief, in connection to claims for *inter alia* breaches of agreement, fraud, and others.

## PARTIES

4.      At all times hereinafter mentioned, plaintiff Jason Kirschenbaum ("Plaintiff") was and is a resident of the state of New York.

5.      On information and belief, defendant Stephane De Baets ("De Baets") was and is a resident of the State of New York and the principal and chief executive officer of Elevated Returns, LLC. Defendant De Baets controls and/or maintains interests in other corporate entities, including the other corporate defendants named herein.

6.      On information and belief, defendant Elevated Returns, LLC was formed in the State of Delaware, on March 1, 2016 and is a foreign limited liability company licensed to do business in the State of New York, and currently existing under the laws of the State of New York. Defendant Elevated Returns is primarily an asset management company, but also involves itself

Case No. 1:24-cv-01850-GHW-KHP   Document 58-4   filed 04/29/25   USDC Colorado
pg 67 of 155

in investment banking, mergers and acquisitions, debt/equity financing, advisory management and asset recovery.

7.      On information and belief, Aspen Digital, Inc. f/k/a/ Sunset Tower REIT, Inc. is a single asset REIT, formed under the laws of the State of Maryland and is externally managed by ER-RE f/k/a ER REITS, a majority owned subsidiary of Elevated Returns, LLC a New York-based real estate management and advisory limited liability company. Aspen Digital maintains an office at 7 St. Paul Street. Suite 820, Baltimore, Maryland 21202.

8.      On information and belief, 315 East Dean Associates, Inc. ("315 East Dean") is a Delaware corporation formed on July 8, 2010, and maintains a registered agent at Nationwide Information Services, Inc., located at 3500 South Dupont Highway, Dover, Delaware.

9.      On information and belief, ER Merry Way LP is a Delaware limited partnership formed on March 13, 2015, and maintains a registered agent at Nationwide Information Services, Inc., located at 3500 South Dupont Highway, Dover, Delaware. On information and belief, ER Merry Way LP is an entity owned and operated by an individual known as Thosapong Juruthavee ("TJ"), but under the direction and control of Ravipan Jurathavee, TJ's daughter. A copy of the Amended and Restated Agreement of Limited Partnership of ER Merry Way LP, dated April 1, 2015, is annexed hereto as Exhibit A.  Aspen ER Properties LP changed its name to ER Merry Way LP. *See* Exhibit B. The General Partner of ER Merry Way is Elevated Returns LLC. *Id.* On information and belief, Merry Way Investments Limited is an entity set up under the laws of the British Virgin Islands and owned and controlled by TJ. It is a limited partner of ER Merry Way.

10.     On information and belief, ER Global, LLC is a Delaware limited liability company that was formed on or about July 10, 2018.

11. The parties named as John Does 1-12 are those persons or entities that assisted or were involved in the claims provided herein, and whose identities cannot be determined at this time.

## JURISDICTION & VENUE

12. This Court has personal jurisdiction over the parties pursuant to C.P.L.R. § 301 and § 302.

13. Venue is proper in New York County pursuant to C.P.L.R. § 501.

## STATEMENT OF RELEVANT FACTS

### *Organizational Structure*

14. Elevated Returns, LLC is a limited liability company set and currently operating under the laws of the State of Delaware. Pursuant to the limited liability company agreement ("LLC Agreement") of Elevated Returns, LLC, dated October 6, 2014, defendant De Baets is its sole members and holds 100% of its membership interests. A copy of the limited liability company agreement for Elevated Returns, LLC is annexed hereto as Exhibit C.

15. TJ acts often and primarily through defendant De Baets, his attorneys or his daughter Ravipan Jaruthavee who, on information and belief, resides in the State of New York. *See* e-mail from defendant De Baets to Plaintiff, dated September 24, 2018, annexed hereto as Exhibit D, wherein defendant De Baets states that TJ owns 60% of Elevated Returns. *See also* a copy of the organizational chart prepared by or at the direction of, defendant De Baets annexed hereto as Exhibit D.

16. The individual defendants held their interests in the REIT (defined herein), its external asset manager/advisor, ER REITS, LLC a/k/a ER-RE, LLC, and its interests in the St. Regis Aspen Hotel, through a spider web of entities and other wholly owned subsidiaries. *See* the organizational chart attached as Exhibit F.

Case No. 1:24-cv-01465-CNS-KAS   Document 50-1   filed 04/29/25   USDC Colorado
pg 69 of 155

*Initial Meetings re: Partnership Structure and Single Asset REIT*

17.    Towards the end of 2015 and beginning of 2016, Plaintiff approached defendant De Baets with the idea, structure and concept of a single asset real estate investment trust ("REIT").

18.    Plaintiff and defendant De Baets continued to correspond with respect to setting up a REIT, and eventually began meeting at the Mercer Hotel in New York City to discuss implementing Plaintiff's ideas.

19.    During the course of these meetings, Plaintiff and defendant De Baets discussed potential ventures and opportunities, including the idea, concept and structure, proposed by Plaintiff, for the creation of a single asset REIT.

20.    In or around February 2016, Plaintiff met again with defendant De Baets and TJ at the Mercer Hotel to discuss further detail of a single asset REIT, as well as to create a company or companies to be used in connection with other ventures.

21.    Plaintiff had prior experience in the REIT space and had significant and diverse relationships that defendant De Baets and TJ wished to monetize.

22.    Between the property holdings of defendant De Baets and TJ, together with Plaintiff's experience and resources in the financial sector and REIT space, a joint venture ensued.

23.    It was understood that  defendant De Baets and TJ were to provide the initial assets in forming the REIT, which consisted of certain hotels.

24.    Plaintiff agreed to coordinate and supervise day-to-day aspects pertaining to the asset, business development, working with legal counsel on SEC filings, advise on sale and marketing strategy of asset, etc.

Case 1:24-cv-01823-CM-KAS Document 50-6 filed 04/29/25 US DC Colorado pg 70 of 155

25.     Plaintiff and defendant De Baets continued to discuss joint venture interests, and after some back and forth, on or about February 26, 2016, defendant De Baets offered in writing via e-mail a 25% equity position stating:

> For the ongoing business, I can offer 25% equity …my capital partner want 50% so I split my 50% with you. I would say take this as a starting point. we can always renegotiate later.

26.     This resulted in TJ having a 50% equity interest in their joint venture, and defendant De Baets having the remaining 25% equity interests.

27.     Shortly thereafter, Plaintiff and defendant De Baets entered into an oral agreement which also was memorialized in a written agreement, dated March 22, 2016 ("Initial Agreement") and attached hereto as Exhibit G.

28.     The Initial Agreement, amongst other things, provided a compensation structure relative to the creation of a single asset REIT using the Sunset Tower Hotel in Los Angeles, California and other future deals.

29.     It was expressly understood between the parties hereto that the Initial Agreement was centered around the Sunset Tower deal, as that transaction was live at that time, but the Initial Agreement encompassed the terms for future deals, as well.

30.     In fact, the Agreement expressly provides in at least three (3) different provisions that the terms contemplated therein would apply to "future deals".

31.     Pursuant to the terms of their Agreement, Plaintiff was entitled to twenty-five percent (25%) of the founder's equity issued in connection with the formation of an advisor company.

32.     The Agreement follows that the foregoing arrangement will stay in place with future successful deals. Agreement at p. 2.

Case No. 1:24-cv-01465-CNS-KAS Document 50-8 filed 04/29/25 USDC Colorado
pg 71 of 155

33. Plaintiff was instrumental and contributed significantly, including but not limited to the following:

    a.     the creation of the Sunset Tower REIT;

    b.     the creation of the Aspen REIT and creating Aspen Coin;

    c.     the acquisition of a certain interest in Securitize;

    d.     the development of Elevated Returns/ER Global; and

    e.     the capital raise for the acquisition of 21% of Seamico Securities.

34. As described more fully below, Plaintiff also utilized his relationships to facilitate revenue, opportunities and dealings for defendant De Baets and TJ and their related affiliates.

### *Sunset Tower Hotel*

35. For close to one year, Plaintiff expended significant time and effort on the Sunset Tower deal in connection with the formation and listing on the Nasdaq Stock Exchange of a single asset REIT. The initial listing was "*expected*" to be the Sunset Tower Hotel in Los Angeles, California. *See* Initial Agreement (annexed hereto as Exhibit G at ¶ 1.

36. Through a close contact, Plaintiff brought in the law firm of Clifford Chance, LLP to act as counsel in connection with the Sunset Tower REIT and coordinated and assisted in drafting, compiling and coordinating with legal counsel at Clifford Chance with respect to the S-11.

37. Plaintiff interfaced with the partners, legal counsel and other senior executive personnel; performing due diligence; writing offering memoranda; creating and evaluating term sheets; evaluating acquisition candidates and deal structures; working with investment bankers and commercial bankers; creating different financial models and scenarios; writing board

Case No. 1:24-cv-01743-CNS-KAS    Document 50-10    filed 04/29/25    USDC Colorado    pg 72 of 155
INDEX NO. 657287/2019

presentations; and evaluating offers and financing options; and supervising due diligence by prospective investors in the company.

38.     In August 2016, Clifford Chance introduced the parties to an individual named Mike Wirth ("Wirth"), who in short order was hired in a part time position as the chief financial officer.

39.     In order to assemble an attractive compensation package to secure Wirth, at the request of defendant De Baets and with the approval of TJ, defendant De Baets requested that Plaintiff relinquish 5% of his 25% equity stake so that it could be included in a compensation package to Wirth.

40.     Defendant De Baets also agreed to reduce his own equity interests by 5% so that he would remain at 20% and equal to Plaintiff.

41.     TJ agreed to relinquish or free up 10% of his equity interests from 50% to 40%.

42.     On or around October 11, 2016, the law firm of Mayer Brown, LLP circulated an e-mail concerning ER-REITS breakdown of the following equity interests: ER 20%, Jason [Kirschenbaum] 20% and Mike [Wirth] 20%. In addition, on September 28, 2017, defendant De Baets confirmed Plaintiff's 20% interests in an email to Plaintiff. See e-mail, dated September 28, 2017, annexed hereto as Exhibit H. Upon Wirth's departure from ER, consistent with the parties' understanding, Plaintiff's equity stake reverted to 25%.

43.     In January 2017, Jeff Klein, owner of Sunset Tower Hotel in West Hollywood, California decided not to go public and list on an exchange. Although the Sunset Deal did not close as initially planned in March 2017, the Sunset Tower Hotel sold for approximately $95 million (USD).

44.     Despite TJ's representations to the Court to the contrary with respect to jurisdiction and his business activities, defendant TJ had purchased an 80% stake in the Sunset Tower Hotel, which he sold for roughly $100 million. *See* LA Business Journal Article, dated June 2, 2017 attached hereto as Exhibit I.

45.     Defendant De Baets paid Plaintiff $20,000 from the closing of the Sunset Tower Deal and stated to Plaintiff in an e-mail, dated May 24, 2017, that he [Plaintiff] would be paid well on their other future dealings, such as Aspen REIT.

46.     As seen in his email to Plaintiff, defendant De Baets made clear that Plaintiff would be entitled and should expect to receive significantly more money once the REIT is launched. **In fact, defendant De Baets states that the payment in the amount of $20,000 was simply "play money".** The real money would come in from the REIT. **As such, he instructed Plaintiff "[A]ll eyes on Aspen now"** and to keep working on the launch of the Aspen REIT.

47.     Plaintiff relied on defendant De Baet's assurances and clear message that their partnership was very much intact and continued to expend time, efforts and money towards the original objective: the listing of a single asset REIT.

48.     Plaintiff continued to expend his resources on their joint venture and defendant De Baets and TJ knew that he continued to do so, but did not inform Plaintiff that any of the terms of their Initial Agreement had changed or that it was terminated. To the contrary, defendant De Baets and TJ, but certainly defendant De Baets, deliberately led Plaintiff to believe that their partnership or fee structure as contemplated under the Initial Agreement was fully intact.

### *St. Regis Aspen REIT (Aspen REIT)*

Case No. 1:24-cv-01859-CNS-KAS Document 50-14 filed 04/29/25 USDC Colorado pg 74 of 155

INDEX NO. 654287/2019

pg 74 of 155

49.     In or around September 2010, defendant De Baets, via an entity under his direction and control, 315 East Dean acquired the 179 room St. Regis Aspen Hotel ("Aspen Hotel") for $70 million (USD). The Aspen Hotel is currently managed by ER-RE, LLC f/k/a ER REITS, LLC, the asset management arm of Elevated Returns, LLC.

50.     After the Sunset Tower deal changed direction and TJ opted to sell his interests in the Sunset Tower Hotel instead of listing as an IPO on an exchange, defendant De Baets chose to refocus his efforts and use the Aspen Hotel instead as the underlying real estate for the single asset REIT.

51.     Because the Sunset Tower REIT simply changed names, Defendants had the unique advantage and ability to move quickly in their efforts and launch the single-asset REIT. The whitepaper and the filings with the Security and Exchange Commission (SEC) for Aspen REIT were essentially the same whitepaper and SEC filings in connection to Sunset Tower REIT, Inc.

52.     Notably, **Aspen REIT, Inc., as well as Aspen Digital, Inc. were one of the same; they were the simple evolution of Sunset Tower REIT, Inc.** Aspen REIT, Inc. and Aspen Digital, Inc. were formerly known as Sunset Tower REIT, Inc. *See* Form D filed with the SEC, annexed hereto as <u>Exhibit J</u>, wherein defendant De Baets changed the name from Sunset Tower REIT, Inc. to Aspen REIT, Inc. to Aspen Digital, Inc.

53.     In middle of November 2017, Aspen REIT, a single asset real estate investment trust, filed with the SEC a Regulation A+ initial public offering to raise approximately $33.5 million in gross proceeds.

54.     There was no reason to think that the arrangements and understandings contemplated under the Initial Agreement and that were subsequently reaffirmed between the parties, both orally and in writing, continued between the parties.

Case No. 1:24-cv-01193-CNS-KAS Document 50-1 filed 04/29/25 USDC Colorado pg 75
pg 75 of 155

55. As far as the parties were concerned, and as evidenced by the filings with the SEC, the Sunset Tower Hotel REIT simply changed its name and morphed into other single-asset REIT without any materials changes in the whitepaper or security submissions.

56. In January 2018, and after re-filing, the SEC fully approved Aspen REIT as a Single Asset REIT.

57. The IPO appeared set to proceed by the end of February 2018, but Elevated Returns abruptly canceled the sale on February 26, ostensibly in an effort to retool. It became apparent that defendant De Baets tanked the listing seemingly for the sole purpose of depriving Plaintiff from any renumeration due him as a member of Aspen REIT, and in an effort to restructure and evade his obligations to Plaintiff.

58. Despite the IPO being shelved, the law firm of Clifford Chance continued to work on the St. Regis Aspen REIT and the related St. Regis Aspen Coin projects (collectively "Aspen Digital"). Plaintiff also continued to work on the REIT and Aspen Digital and continued to rely on the representations by defendant De Baets.

59. Throughout this process, defendant De Baets constantly reaffirmed his promises to Plaintiff both verbally and in writing to assure him that their structure was still intact and he (Plaintiff) would remain a partner in their ventures.

60. For example, in April 2018, defendant De Baets confirmed Plaintiff as a partner ER Global and writes in an e-mail "[**P**]**lease add jason as co-founder too.** Lets also pin down a call about who gets what. The sooner the better." *See* e-mail sent by defendant De Baets, dated April 17, 2018, annexed hereto as <u>Exhibit K</u>.

61. During this time Plaintiff divided his time amongst other projects under the ER umbrella, but still continued to work and create whitepaper, private placement memorandum and

Case 1:24-cv-01841-CNS-KAS Document 50-1 Filed 04/29/25 USDC Colorado pg 76 of 155

a deck for Aspen Coin - shares in the St. Regis -- that were to be denominated not in bitcoin but in a special securitized token created specifically for the hotel's sale, known as Aspen Coin.

62.     In July of 2018, the private placement memorandum for Aspen Coin was completed, and the parties sought to raise $18 million (USD) for a 19% interest of the St. Regis Aspen hotel.

63.     In or around October of 2018, defendant De Baets led Plaintiff to believe that (i) they could not close the Aspen Coin deal if Plaintiff didn't contribute to the deal, and (ii) defendants TJ and East Dean would not contribute to this venture if Plaintiff did not believe in its viability and contribute as well. *See* e-mail ("Very disappointing") from defendant De Baets to Plaintiff, dated September 24, 2018, annexed hereto as <u>Exhibit D</u>.

64.     Plaintiff also understood clearly from defendant De Baets' representations that in the event they were unable to successfully complete the raise, Plaintiff's equity interests and monetary as well as non-monetary investments would be worthless and he would lose his interests in their venture.

65.     As such, Plaintiff relied on the foregoing representations made to him by defendant De Baets, and on or around October 4, 2018, Plaintiff wired a total amount of approximately $1,360,000 in an effort to launch the REIT.

66.     In October 2018, Aspen Coin closed at the full $18 million (USD). TJ and defendant East Dean contributed $9 million dollars; defendant De Baets contributed $1.27 million (USD), and Plaintiff contributed over $1.36 million (USD).

67.     Defendant De Baets shook Plaintiff's hands and re-affirmed their partnership.

### *Securitize and Seamico and Other Ventures*

Case No. 1:24-cv-01659-CNS-KAS Document 50-17 filed 06/29/25 USDC Colorado pg 77
of 155

68.     Not too long after the successful raise for Aspen Coin, the parties were introduced to a company known as Securitize, which provided a compliance platform and protocol for digitizing securities in the blockchain.

69.     Plaintiff was instrumental in the capital raises for the acquisition of a certain interests in Securitize and Seamico, which are both considered under the ER umbrella, as well as other ventures.

70.     Plaintiff also personally invested significant monies in both Securitize and Aspen Coin; the latter of which guaranteed the success of the Aspen Coin venture. Plaintiff's contributions were material to the creation and success of the St. Regis Aspen REIT and Aspen Coin.

71.     Plaintiff, via and/or together with ER, invested a sum of $1 million (USD) into Securitize.

72.     On information and belief, the investment in Securitize was made by Elevated Returns and is currently held by ER Global.

73.     Defendants have failed to make any distributions from the monies invested with Securitize or his other investments with his partners, and has denied Plaintiff the ability to liquidate or redeem his interests in same.

74.     Moreover, defendant De Baets has failed to acknowledge Plaintiff's investment in Securitize or provide Plaintiff with any information as to its current value.

75.     Defendant De Baets and others unknown to Plaintiff and whom Plaintiff has listed as John Does 1-10 in the instant action, continue to exercise exclusive dominion and control over property belonging to Plaintiff.

76.     Moreover, said defendants have denied Plaintiff the access to his interests.

Case No. 1:24-cv-01546-CNS-KAS    Document 50-16    filed 04/29/25    USDC Colorado    pg 78 of 155

77.    Plaintiff has personally and professionally committed and contributed significant resources to the success of the various business ventures of defendant De Baets and TJ.

*Current Status*

78.    Plaintiff's efforts and ideas caused defendant De Baets and TJ to realize significant profits and caused defendant De Baets and TJ to successfully launch a single asset REIT, ultimately known as Aspen Digital Token, using the St. Regis Aspen Hotel.

79.    Based on a recent estimation, ER Global has a current pre-money valuation of $40 million (USD).

80.    As such, Plaintiff's 25% share equates to (at the very least) $10 million (USD).

81.    Plaintiff has attempted to resolve this dispute without the need for litigation, however, to date, Defendants have refused to make any substantial attempt to settle the disputes outlined herein.

**FIRST CAUSE OF ACTION**
**(Unjust Enrichment)**

107.    Plaintiff repeats and realleges each of the allegations as if more fully set forth at length herein.

108.    Defendants have been unjustly enriched by the renumeration they retained for themselves, which was due solely to Plaintiff's actions.

109.    To date, Defendants have failed and refused to compensate Plaintiff any part of the outstanding balance to which Plaintiff is entitled, but have nevertheless retained and continue to enjoy the benefit bestowed upon them by Plaintiff's actions.

110.    By reason of the foregoing, Plaintiff is entitled to damages in an amount to be determined at trial of this matter.

FILED: NEW YORK COUNTY CLERK 10/26/2020 07:41 PM
NYSCEF DOC. NO. 70

INDEX NO. 153287/2019
RECEIVED NYSCEF: 11/24/2020

## CONCLUSION

**WHEREFORE**, Plaintiff, Jason Kirschenbaum, demands judgment against the defendants named hereinabove for damages in an amount to be determined at trial of this matter, together with reasonable attorney's fees, the costs and disbursements of this action and such other, further and/or different relief as the Court deems just and proper.

Dated: New York, New York
October 26, 2020

GULKO SCHWED LLP

By:     /s Asher Gulko
Asher C. Gulko, Esq.
525 Chestnut Street, Suite 207
Cedarhurst, New York 11516
T: 212.500.1312
F: 212.678.0495
E: asher@gulkoschwed.com

INDEX NO. 653287/2019

Case No. 1:24-cv-01039-CNS-KAS Document 30-1 filed 04/29/25 USDC Colorado pg 80
pg 80 of 155

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

---

JASON KIRSCHENBAUM,

                              Plaintiff,

              -against-

STEPHANE DE BAETS, THOSAPONG
JURUTHAVEE, ELEVATED RETURNS, LLC, & 315
EAST DEAN ASSOCIATES, INC.

                              Defendants.

---

Index No. 653287/2019

**THIRD AMENDED
COMPLAINT**

Plaintiff, Jason Kirschenbaum ("Plaintiff") by his undersigned attorneys, Gulko Schwed LLP, as and for his Third Amended Complaint against defendants Stephane De Baets ("De Baets"), Elevated Returns, LLC ("ER"), and 315 East Dean Associates, Inc. ("315 East Dean"), hereby states as follows:

## PRELIMINARY STATEMENT

1.      This action stems from the unjust enrichment, fraud, and conversion that certain defendants have committed against and in connection to Plaintiff. Plaintiff was solicited by defendants to provide his experience and relationships for certain joint business ventures and facilitate the launch of their real estate investment trust (REIT). Despite the dynamics that shifted over the course of the relationship between the parties, and the evolution of the joint ventures between those involved, the agreements between the parties stayed intact.

2.      As described more fully herein, Plaintiff entered into an agreement, dated March 22, 2016 ("Initial Agreement") with defendant De Baets, which provided that Plaintiff would be entitled to 25% of founder's equity in connection to a certain "Initial Listing". The Initial Listing changed names several times, but continued the same mission and objective. Moreover, at each

<div align="right">

EXHIBIT E

</div>

Case No. 1:24-cv-01386-CNS-KAS Document 30-1 filed 04/29/25 USDC Colorado
pg 81 of 155

turn, Plaintiff trusted defendant De Baets; he relied on and his continued (false) assurances, and as a result, expended time, resources and significant money into these ventures.

3.      While defendants have contended that the Initial Listing failed and thus the Agreement terminated - this is far from true; the Initial Listing succeeded, and as a result, Plaintiff has sought to be compensated for his efforts. Plaintiff has sought to resolve the instant dispute without the need for judicial intervention, but all such efforts by Plaintiff have been futile. As such, Plaintiff is compelled to bring the instant action seek relief for monetary as well as other relief, in connection to claims for *inter alia* breaches of agreement, fraud, and others.

## PARTIES

4.      At all times hereinafter mentioned, plaintiff Jason Kirschenbaum ("Plaintiff") was and is a resident of the state of New York.

5.      On information and belief, defendant Stephane De Baets ("De Baets") was and is a resident of the State of New York and the principal and chief executive officer of Elevated Returns, LLC. Defendant De Baets controls and/or maintains interests in other corporate entities, including the other corporate defendants named herein.

6.      On information and belief, defendant Elevated Returns, LLC was formed in the State of Delaware, on March 1, 2016 and is a foreign limited liability company licensed to do business in the State of New York, and currently existing under the laws of the State of New York. Defendant Elevated Returns is primarily an asset management company, but also involves itself in investment banking, mergers and acquisitions, debt/equity financing, advisory management and asset recovery.

Case No. 1:24-cv-01023-CNS-KAS   Document 130-1   filed 04/29/25   USDC Colorado   pg 82 of 155

7.      On information and belief, 315 East Dean Associates, Inc. ("315 East Dean") is a Delaware corporation formed on July 8, 2010, and maintains a registered agent at Nationwide Information Services, Inc., located at 3500 South Dupont Highway, Dover, Delaware.

## JURISDICTION & VENUE

8.      This Court has personal jurisdiction over the parties pursuant to C.P.L.R. § 301 and § 302.

9.      Venue is proper in New York County pursuant to C.P.L.R. § 501.

## STATEMENT OF RELEVANT FACTS

### *Organizational Structure*

10.     Elevated Returns, LLC is a limited liability company set and currently operating under the laws of the State of Delaware. Pursuant to the limited liability company agreement ("LLC Agreement") of Elevated Returns, LLC, dated October 6, 2014, defendant De Baets is its sole members and holds 100% of its membership interests. A copy of the limited liability company agreement for Elevated Returns, LLC is annexed hereto as <u>Exhibit C</u>.

11.     Mr. Thosapong Jurathavee ("TJ"), a current partner of defendant De Baets and former parter of Plaintiff, acts often and primarily through defendant De Baets, his attorneys or his daughter Ravipan Jaruthavee who, on information and belief, resides in the State of New York. *See* e-mail from defendant De Baets to Plaintiff, dated September 24, 2018, annexed hereto as <u>Exhibit D</u>, wherein defendant De Baets states that TJ owns 60% of Elevated Returns. *See also* a copy of the organizational chart prepared by or at the direction of, defendant De Baets annexed hereto as Exhibit D.

12.     The individual defendants held their interests in the REIT (defined herein), its external asset manager/advisor, ER REITS, LLC a/k/a ER-RE, LLC, and its interests in the St.

Case No. 1:24-cv-01465-CNS-KAS Document 50-1 filed 04/29/25 USDC Colorado pg 83 of 155

Regis Aspen Hotel, through a spider web of entities and other wholly owned subsidiaries. *See* the organizational chart attached as <u>Exhibit F</u>.

<p style="text-align:center"><em><u>Initial Meetings re: Partnership Structure and Single Asset REIT</u></em></p>

13. Towards the end of 2015 and beginning of 2016, Plaintiff approached defendant De Baets with the idea, structure and concept of a single asset real estate investment trust ("REIT").

14. Plaintiff and defendant De Baets continued to correspond with respect to setting up a REIT, and eventually began meeting at the Mercer Hotel in New York City to discuss implementing Plaintiff's ideas.

15. During the course of these meetings, Plaintiff and defendant De Baets discussed potential ventures and opportunities, including the idea, concept and structure, proposed by Plaintiff, for the creation of a single asset REIT.

16. In or around February 2016, Plaintiff met again with defendant De Baets and TJ at the Mercer Hotel to discuss further detail of a single asset REIT, as well as to create a company or companies to be used in connection with other ventures.

17. Plaintiff had prior experience in the REIT space and had significant and diverse relationships that defendant De Baets and TJ wished to monetize.

18. Between the property holdings of defendant De Baets and TJ, together with Plaintiff's experience and resources in the financial sector and REIT space, a joint venture ensued.

19. It was understood that defendant De Baets and TJ were to provide the initial assets in forming the REIT, which consisted of certain hotels.

20. Plaintiff agreed to coordinate and supervise day-to-day aspects pertaining to the asset, business development, working with legal counsel on SEC filings, advise on sale and marketing strategy of asset, etc.

Case No. 1:24-cv-03563-CNS-KAS Document 230-1 filed 04/29/25 USDC Colorado pg 84 of 155

21.     Plaintiff and defendant De Baets continued to discuss joint venture interests, and after some back and forth, on or about February 26, 2016, defendant De Baets offered in writing via e-mail a 25% equity position stating:

> For the ongoing business, I can offer 25% equity …my capital partner want 50% so I split my 50% with you. I would say take this as a starting point. we can always renegotiate later.

22.     This resulted in TJ having a 50% equity interest in their joint venture, and defendant De Baets having the remaining 25% equity interests.

23.     Shortly thereafter, Plaintiff and defendant De Baets entered into an oral agreement which also was memorialized in a written agreement, dated March 22, 2016 ("Initial Agreement") and attached hereto as Exhibit G.

24.     The Initial Agreement, amongst other things, provided a compensation structure relative to the creation of a single asset REIT using the Sunset Tower Hotel in Los Angeles, California and other future deals.

25.     It was expressly understood between the parties hereto that the Initial Agreement was centered around the Sunset Tower deal, as that transaction was live at that time, but the Initial Agreement encompassed the terms for future deals, as well.

26.     In fact, the Agreement expressly provides in at least three (3) different provisions that the terms contemplated therein would apply to "future deals".

27.     Pursuant to the terms of their Agreement, Plaintiff was entitled to twenty-five percent (25%) of the founder's equity issued in connection with the formation of an advisor company.

28.     The Agreement follows that the foregoing arrangement will stay in place with future successful deals. Agreement at p. 2.

Case No. 1:24-cv-01363-GPG-KAS   Document 30-1   filed 04/29/25   USDC Colorado   pg 85
pg 85 of 155

29.     Plaintiff was instrumental and contributed significantly, including but not limited to the following:

    a.      the creation of the Sunset Tower REIT;

    b.      the creation of the Aspen REIT and creating Aspen Coin;

    c.      the acquisition of a certain interest in Securitize;

    d.      the development of Elevated Returns/ER Global; and

    e.      the capital raise for the acquisition of 21% of Seamico Securities.

30.     As described more fully below, Plaintiff also utilized his relationships to facilitate revenue, opportunities and dealings for defendant De Baets and TJ and their related affiliates.

### *Sunset Tower Hotel*

31.     For close to one year, Plaintiff expended significant time and effort on the Sunset Tower deal in connection with the formation and listing on the Nasdaq Stock Exchange of a single asset REIT. The initial listing was "*expected*" to be the Sunset Tower Hotel in Los Angeles, California. *See* Initial Agreement (annexed hereto as Exhibit G at ¶ 1.

32.     Through a close contact, Plaintiff brought in the law firm of Clifford Chance, LLP to act as counsel in connection with the Sunset Tower REIT and coordinated and assisted in drafting, compiling and coordinating with legal counsel at Clifford Chance with respect to the S-11.

33.     Plaintiff interfaced with the partners, legal counsel and other senior executive personnel; performing due diligence; writing offering memoranda; creating and evaluating term sheets; evaluating acquisition candidates and deal structures; working with investment bankers and commercial bankers; creating different financial models and scenarios; writing board

Case No. 1:24-cv-01465-CNS-KAS Document 30-1 filed 04/29/25 USDC Colorado pg 86 of 155

presentations; and evaluating offers and financing options; and supervising due diligence by prospective investors in the company.

34.     In August 2016, Clifford Chance introduced the parties to an individual named Mike Wirth ("Wirth"), who in short order was hired in a part time position as the chief financial officer.

35.     In order to assemble an attractive compensation package to secure Wirth, at the request of defendant De Baets and with the approval of TJ, defendant De Baets requested that Plaintiff relinquish 5% of his 25% equity stake so that it could be included in a compensation package to Wirth.

36.     Defendant De Baets also agreed to reduce his own equity interests by 5% so that he would remain at 20% and equal to Plaintiff.

37.     TJ agreed to relinquish or free up 10% of his equity interests from 50% to 40%.

38.     On or around October 11, 2016, the law firm of Mayer Brown, LLP circulated an e-mail concerning ER-REITS breakdown of the following equity interests: ER 20%, Jason [Kirschenbaum] 20% and Mike [Wirth] 20%. In addition, on September 28, 2017, defendant De Baets confirmed Plaintiff's 20% interests in an email to Plaintiff. See e-mail, dated September 28, 2017, annexed hereto as Exhibit H. Upon Wirth's departure from ER, consistent with the parties' understanding, Plaintiff's equity stake reverted to 25%.

39.     In January 2017, Jeff Klein, owner of Sunset Tower Hotel in West Hollywood, California decided not to go public and list on an exchange. Although the Sunset Deal did not close as initially planned in March 2017, the Sunset Tower Hotel sold for approximately $95 million (USD).

Case No. 1:24-cv-01956-CNS-KAS Document 30-1 filed 04/29/25 USDC Colorado pg 87 of 155

40.     Despite TJ's representations to the Court to the contrary with respect to jurisdiction and his business activities, defendant TJ had purchased an 80% stake in the Sunset Tower Hotel, which he sold for roughly $100 million. *See* LA Business Journal Article, dated June 2, 2017 attached hereto as <u>Exhibit I</u>.

41.     Defendant De Baets paid Plaintiff $20,000 from the closing of the Sunset Tower Deal and stated to Plaintiff in an e-mail, dated May 24, 2017, that he [Plaintiff] would be paid well on their other future dealings, such as Aspen REIT.

42.     As seen in his email to Plaintiff, defendant De Baets made clear that Plaintiff would be entitled and should expect to receive significantly more money once the REIT is launched. **In fact, defendant De Baets states that the payment in the amount of $20,000 was simply "play money".** The real money would come in from the REIT. **As such, he instructed Plaintiff "[A]ll eyes on Aspen now"** and to keep working on the launch of the Aspen REIT.

43.     Plaintiff relied on defendant De Baet's assurances and clear message that their partnership was very much intact and continued to expend time, efforts and money towards the original objective: the listing of a single asset REIT.

44.     Plaintiff continued to expend his resources on their joint venture and defendant De Baets and TJ knew that he continued to do so, but did not inform Plaintiff that any of the terms of their Initial Agreement had changed or that it was terminated. To the contrary, defendant De Baets and TJ, but certainly defendant De Baets, deliberately led Plaintiff to believe that their partnership or fee structure as contemplated under the Initial Agreement was fully intact.

### *St. Regis Aspen REIT (Aspen REIT)*

Case No. 1:24-cv-01806-CNS-KAS Document 130-1 filed 04/29/25 USDC Colorado
pg 88 of 155

45.	In or around September 2010, defendant De Baets, via an entity under his direction and control, 315 East Dean acquired the 179 room St. Regis Aspen Hotel ("Aspen Hotel") for $70 million (USD). The Aspen Hotel is currently managed by ER-RE, LLC f/k/a ER REITS, LLC, the asset management arm of Elevated Returns, LLC.

46.	After the Sunset Tower deal changed direction and TJ opted to sell his interests in the Sunset Tower Hotel instead of listing as an IPO on an exchange, defendant De Baets chose to refocus his efforts and use the Aspen Hotel instead as the underlying real estate for the single asset REIT.

47.	Because the Sunset Tower REIT simply changed names, Defendants had the unique advantage and ability to move quickly in their efforts and launch a single-asset REIT. The whitepaper and the filings with the Security and Exchange Commission (SEC) for Aspen Coin were essentially the same whitepaper and SEC filings in connection to Aspen REIT.

48.	Notably, **Aspen REIT, Inc., as well as Aspen Digital, Inc. were one of the same; they were the simple evolution of Sunset Tower REIT, Inc.** Aspen REIT, Inc. and Aspen Digital, Inc. were formerly known as Sunset Tower REIT, Inc. *See* Form D filed with the SEC, annexed hereto as <u>Exhibit J</u>, wherein defendant De Baets changed the name from Sunset Tower REIT, Inc. to Aspen REIT, Inc. to Aspen Digital, Inc.

49.	In middle of November 2017, Aspen REIT, a single asset real estate investment trust, filed with the SEC a Regulation A+ initial public offering to raise approximately $33.5 million in gross proceeds.

50.	There was no reason to think that the arrangements and understandings contemplated under the Initial Agreement and that were subsequently reaffirmed between the parties, both orally and in writing, continued between the parties.

Case No. 1:24-cv-01465-CNS-KAS   Document 150-1 filed 04/29/25   USDC Colorado   pg 89 of 155

51.     As far as the parties were concerned, and as evidenced by the filings with the SEC, the Sunset Tower Hotel REIT simply changed its name and morphed into other single-asset REIT without any materials changes in the whitepaper or security submissions.

52.     In January 2018, and after re-filing, the SEC fully approved Aspen REIT as a Single Asset REIT.

53.     The IPO appeared set to proceed by the end of February 2018, but Elevated Returns abruptly canceled the sale on February 26, ostensibly in an effort to retool. It became apparent that defendant De Baets tanked the listing seemingly for the sole purpose of depriving Plaintiff from any renumeration due him as a member of Aspen REIT, and in an effort to restructure and evade his obligations to Plaintiff.

54.     Despite the IPO being shelved, the law firm of Clifford Chance continued to work on the St. Regis Aspen REIT and the related St. Regis Aspen Coin projects (collectively "Aspen Digital"). Plaintiff also continued to work on the REIT and Aspen Digital and continued to rely on the representations by defendant De Baets.

55.     Throughout this process, defendant De Baets constantly reaffirmed his promises to Plaintiff both verbally and in writing to assure him that their structure was still intact and he (Plaintiff) would remain a partner in their ventures.

56.     For example, in April 2018, defendant De Baets confirmed Plaintiff as a partner ER Global and writes in an e-mail "[**P**]**lease add jason as co-founder too.** Lets also pin down a call about who gets what. The sooner the better." *See* e-mail sent by defendant De Baets, dated April 17, 2018, annexed hereto as <u>Exhibit K</u>.

57.     During this time Plaintiff divided his time amongst other projects under the ER umbrella, but still continued to work and create whitepaper, private placement memorandum and

Case No. 1:24-cv-01815-CNS-KAS Document 50-1 filed 04/29/25 USDC Colorado
pg 90 of 155

a deck for Aspen Coin - shares in the St. Regis -- that were to be denominated not in bitcoin but in a special securitized token created specifically for the hotel's sale, known as Aspen Coin.

58.    In July of 2018, the private placement memorandum for Aspen Coin was completed, and the parties sought to raise $18 million (USD) for a 19% interest of the St. Regis Aspen hotel.

59.    In or around October of 2018, defendant De Baets led Plaintiff to believe that (i) they could not close the Aspen Coin deal if Plaintiff didn't contribute to the deal, and (ii) defendants TJ and East Dean would not contribute to this venture if Plaintiff did not believe in its viability and contribute as well. *See* e-mail ("Very disappointing") from defendant De Baets to Plaintiff, dated September 24, 2018, annexed hereto as Exhibit D.

60.    Plaintiff also understood clearly from defendant De Baets' representations that in the event they were unable to successfully complete the raise, Plaintiff's equity interests and monetary as well as non-monetary investments would be worthless and he would lose his interests in their venture.

61.    As such, Plaintiff relied on the foregoing representations made to him by defendant De Baets, and on or around October 4, 2018, Plaintiff wired a total amount of approximately $1,360,000 in an effort to launch the REIT.

62.    In October 2018, Aspen Coin closed at the full $18 million (USD). TJ and defendant East Dean contributed $9 million dollars; defendant De Baets contributed $1.27 million (USD), and Plaintiff contributed over $1.36 million (USD).

63.    Defendant De Baets shook Plaintiff's hands and re-affirmed their partnership.

<u>*Securitize and Seamico and Other Ventures*</u>

Case No. 1:24-cv-01823-RCL-SDC Document 30-4 filed 04/29/25 USDC Colorado
pg 91 of 155

64.     Plaintiff was instrumental in the capital raises for the acquisition of a certain

interests in Securitize and Seamico, which are both considered under the ER umbrella, as well as

other ventures.

65.     Subsequent to the successful raise for Aspen Coin, the parties were introduced to

a company known as Securitize, which provided a compliance platform and protocol for

digitizing securities in the blockchain.

66.     In November 2018, Securitize, a company led by Jaimie Finn and Carlos

Domingo, entered into a Series A Preferred Stock Purchase Agreement ("Transaction"), whereby

in exchange for One Million Dollars ($1,000,000) paid collectively by Plaintiff, and his former

partners, defendant Stephane De Baets and Mr. Thosapong Jurathavee, defendant Elevated

Returns, LLC received in exchange Series A Preferred Stock at a par value of $.00001 per share

interests in Securitize.

67.     On November 8, 2018, defendant De Baets sent Plaintiff a text message informing

him that he needed to pay for his investment in Securitize with his digital currency in the form of

Aspen Coin.

68.     Plaintiff's investment, the sum of Three Hundred and Thirty-Three Thousand

Dollars ($333,000) ("Investment") was his 1/3 share of the total One Million Dollar ($1,000,000)

fee ("Fee") that was earned by Plaintiff and his former partners, Stephane De Baets and

Thosapong Jurathavee in connection to raise done on behalf of Aspen Coin.

69.     Instead of Plaintiff being paid out his share of the Fee, Plaintiff agreed to invest

his share of the Fee in the form of digital currency (Aspen Coin), together with his former

partners investment in the same form of digital currency, into Securitize.

Case No. 1:24-cv-01315-CNS-KAS Document 50-1 filed 04/29/25 USDC Colorado pg 92 of 155

70.     Plaintiff's investment of significant monies in both Securitize and Aspen Coin guaranteed the success of the Aspen Coin venture. Plaintiff's contributions were material to the creation and success of the St. Regis Aspen REIT and Aspen Coin.

71.     On information and belief, the investment in Securitize was made by Elevated Returns.

72.     However, unbeknownst to Plaintiff, in or around July 2020, Securitize elected to terminate the Transaction and returned the sum of One Million Dollars ($1,000,000) to defendant, via an entity known as 315 East Dean Associates, Inc. Attached hereto as <u>Exhibit L</u> is a copy of the executed Transfer Request Form.

73.     315 East Dean Associates, Inc., is an entity believed to be under the direction and control of defendant and Mr. Thosapong Jurathavee.

74.     The redemption of shares in Securitize and return of funds in connection therewith, included Plaintiff's Investment.

75.     While Plaintiff has made demands for the return of his Investment, to date, he has not received his Investment or any portion thereof.

76.     Moreover, despite counsel for Defendants assurances that Plaintiff "retains his investments" in Securitize, Plaintiff recently discovered that his Investment was in fact not retained by Securitize, as his Investment was redeemed by defendant, and Plaintiff's monies were sent to defendant StephaneDe Baets via his entity known as 315 East Dean Associates, LLC. See letter dated March 26, 2019 annexed hereto as <u>Exhibit M</u>.

77.     To date, Defendants have failed to make any distributions from the monies invested with Securitize or his other investments with his partners, and has denied Plaintiff the ability to liquidate or redeem his interests in same.

Case No. 1:24-cv-01350-CNS-KAS   Document 50-1   filed 04/29/25   USDC Colorado
pg 93 of 155

### *Current Status*

78.     Plaintiff's efforts and ideas caused defendant De Baets and TJ to realize significant profits and caused defendant De Baets and TJ to successfully launch a single asset REIT, ultimately known as Aspen Digital Token, using the St. Regis Aspen Hotel.

79.     Based on a recent estimation, ER Global has a current pre-money valuation of $40 million (USD).

80.     As such, Plaintiff's 25% share equates to (at the very least) $10 million (USD).

81.     Plaintiff has attempted to resolve this dispute without the need for litigation, however, to date, Defendants have refused to make any substantial attempt to settle the disputes outlined herein.

## FIRST CAUSE OF ACTION

### Unjust Enrichment

81.     Plaintiff repeats and realleges each of the allegations as if more fully set forth at length herein.

82.     Defendants have been unjustly enriched by the renumeration they retained for themselves, which was due solely to Plaintiff's actions.

83.     To date, Defendants have failed and refused to compensate Plaintiff any part of the outstanding balance to which Plaintiff is entitled, but have nevertheless retained and continue to enjoy the benefit bestowed upon them by Plaintiff's actions.

84.     By reason of the foregoing, Plaintiff is entitled to damages in an amount to be determined at trial of this matter.

## SECOND CAUSE OF ACTION

### Fraud

85.     Plaintiff repeats and realleges each of the allegations as if more fully set forth at length herein.

86.     In or around September 2018, Defendant De Baets represented to Plaintiff that he needed certain funds for the Securitize transaction, as he "had no choice, but to monetize this deal, one way or another".

87.     Plaintiff relied on Defendant De Baets' representations and invested a sum of $333,000 into Securitize alongside his former partners.

88.     On information and belief, despite the representations made by defendant De Baets and assurances made by counsel for defendant De Baets Plaintiff's funds were never invested into Securitize on his behalf.

89.     Plaintiff's recently discovered that the funds invested by him were returned to defendant De Baets.

90.     Defendant De Baets and/or his counsel knowingly omitted making such disclosures to Plaintiff, and misrepresented certain material facts, including the whereabout of Plaintiff's Investment to Plaintiff.

91. Plaintiff relied on defendant's misrepresentations and as a result has been damaged in an amount to be determined at trial, but no event in an amount of less than Three Hundred and Thirty Three Thousand Dollars ($333,000).


### THIRD CAUSE OF ACTION

#### Conversion
#### -Pled In The Alternative-

92.     Plaintiff repeats and realleges each of the allegations as if more fully set forth at length herein.

Case No. 1:24-cv-01386-CNS-KAS   Document 50-1   filed 04/29/25   USDC Colorado   pg 95
pg 95 of 155

93.     A portion of the funds transferred to 315 East Dean Associates, LLC, from Securitize, did not belong to Defendants, but, rather, belonged to Plaintiff.

94.     Defendants committed the wrongful acts described herein without authority to do so.

95.     Defendants committed these acts intentionally and without Plaintiffs' knowledge and has interfered with Plaintiffs' rights to possess the converted funds.

96.     By reason of the foregoing, Plaintiff has been damaged in an amount to be determined at trial.

## CONCLUSION

**WHEREFORE**, Plaintiff, Jason Kirschenbaum, demands judgment against the defendants named hereinabove for damages in an amount to be determined at trial of this matter, together with reasonable attorney's fees, the costs and disbursements of this action and such other, further and/or different relief as the Court deems just and proper.

Dated:  Cedarhurst, New York
        February 28, 2023

**GULKO SCHWED LLP**

By:     _/s Asher Gulko_____
        Asher C. Gulko, Esq.
        525 Chestnut Street, Suite 207
        Cedarhurst, New York 11516
        T: 212.500.1312
        F: 212.678.0495
        E: asher@gulkoschwed.com

Case 1:24-cv-01823-CNS-KAS Document 30-7 filed 04/29/25 USDC Colorado pg 96
pg 96 of 155

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK: COMMERCIAL DIVISION PART 53

-----------------------------------------------------------------------------------X

JASON KIRSCHENBAUM,

| | |
|---|---|
| **INDEX NO.** | 653287/2019 |

Plaintiff,

| | |
|---|---|
| **MOTION DATE** | 03/08/2023, 07/21/2023, 09/21/2023 |

- v -

STEPHANE DE BAETS, THOSAPONG JURUTHAVEE,
ELEVATED RETURNS, LLC,315 EAST DEAN
ASSOCIATES, INC.,ASPEN DIGITAL, INC.,ER MERRY
WAY LP, ER GLOBAL, LLC,JOHN DOES 1-10,

| | |
|---|---|
| **MOTION SEQ. NO.** | 006 007 008 |

Defendant.

**DECISION + ORDER ON MOTION**

-----------------------------------------------------------------------------------X

HON. ANDREW BORROK:

The following e-filed documents, listed by NYSCEF document number (Motion 006) 154, 155, 156, 157, 158, 160, 183, 184, 185, 186, 187, 188, 189, 190, 193

were read on this motion to/for _____ AMEND CAPTION/PLEADINGS _____ .

The following e-filed documents, listed by NYSCEF document number (Motion 007) 162, 163, 164, 165, 166, 167, 168, 169, 170, 171, 172, 173, 174, 175, 176, 177, 178, 179, 180, 181, 182, 191, 192, 194, 195, 196, 198, 199, 200, 201, 202, 203, 204, 205, 206, 207, 208, 209, 210, 211, 212, 217, 218, 219, 220, 221, 222, 223, 224

were read on this motion to/for _____ JUDGMENT - SUMMARY _____ .

The following e-filed documents, listed by NYSCEF document number (Motion 008) 214, 215, 216, 225, 226

were read on this motion to/for _____ SEAL _____ .

Upon the foregoing documents, (i) the plaintiff's motion to amend (Mot. Seq. No. 006) is denied

because the proposed Third Amended Complaint (**TAC**; NYSCEF Doc. No. 157) is palpably

insufficient as a matter of law (*McGhee v Odell*, 96 AD3d 449, 450 [1st Dept 2012]), and (ii) the

defendants' motion for summary judgment (Mot. Seq. No. 007) is granted because there are no

material issues of act which warrant a trial (*Alvarez v Prospect Hosp.*, 68 NY2d 320, 324

[1986]).

### I. *Plaintiff's motion to amend*

EXHIBIT F

Reference is made to a Decision and Order dated October 16, 2020 (the **Prior Decision**; NYSCEF Doc. No. 69) in which the Court dismissed the plaintiff's claims for (i) fraud and (ii) in the alternative, conversion without prejudice. In the TAC, the plaintiff wishes to renew these claims based on facts it alleges it uncovered during discovery.

A claim for fraud requires a material misrepresentation of a fact, knowledge of its falsity, an intent to induce reliance, justifiable reliance by the plaintiff, and damages (*Eurycleia Partners, LP v Seward & Kissel, LLP*, 12 NY3d 553, 559 [2009]). In the Prior Decision, this Court dismissed the claim sounding in fraud because the plaintiff failed to (i) plead with particularly facts that permit a reasonable inference of fraudulent misconduct and (ii) allege any facts to show that he reasonably relied on any of the alleged misrepresentations (NYSCEF Doc. No. 69, at 8). The TAC suffers from the same infirmities. The additional representation provided as a predicate for this claim is that the plaintiff was told to pay for his investment in Securitize using his digital currency (NYSCEF Doc. No. 157 ¶ 67). The TAC does not allege that this representation was false or that the plaintiff relied on this representation *in making his investment in Securitize* or how this caused damage. Thus, the claim sounding in fraud fails.

A claim for conversion requires (i) the plaintiff's possessory right or interest in the property and (ii) the defendant's dominion over the property or interference with it, in derogation of the plaintiff's rights (*Colavito v NY Organ Donor Network, Inc.*, 8 NY3d 43, 49-50 [2006]). In the Prior Decision, the Court dismissed this claim because the plaintiff failed to "explain how his invested funds were subject to any obligation to be returned and whether such obligation was

conferred by contract or another manner" (NYSCEF Doc. No. 69 at 10). The TAC also does not

allege any obligation on behalf of the defendants to return the funds that were invested in

Securitize, i.e., a possessory interest in the alleged converted property. Thus, this claim also fails.

Inasmuch as the TAC proposes claims that fail as a matter of law, it is palpably insufficient and

the motion for leave to amend is denied (*McGhee*, 96 AD3d at 450).

## II.    *Defendants' motion for summary judgment*

On a motion for summary judgment, the movant must make a *prima facie* showing of entitlement

to judgment, tendering sufficient evidence to demonstrate the absence of any material issues of

fact (*Alvarez,* 68 NY2d 320 at 324). Failure to make such a showing requires denial of the

motion regardless of the sufficiency of the opposition papers (*id.*). Once such a showing has

been made, the burden shifts to the party opposing the motion to produce evidentiary proof in

admissible form to establish the existence of material issues of fact requiring trial (*id.*).

Reference is made to a Decision and Order dated October 16, 2020 (the **Prior Dismissal**;

NYSCEF Doc. No. 69) pursuant to which this Court dismissed all claims except for the claim

sounding in unjust enrichment. Familiarity is presumed.

The elements of unjust enrichment are "(1) the other party was enriched, (2) at the plaintiff's

expense, and (3) that it is against equity and good conscience to permit the other party to retain

**653287/2019   KIRSCHENBAUM, JASON vs. DE BAETS, STEPHANE**
**Motion No.  006 007 008**

Page 3 of 8

3 of 8

FILED: NEW YORK COUNTY CLERK 10/30/2023 01:02 PM
NYSCEF DOC. NO. 227
Case 1:24-cv-01436-GHW-KHP Document 50-1 Filed 04/29/25 Page 99 of 155
pg 99 b155

what is sought to be recovered" (*Georgia Malone & Co., Inc. v Rieder*, 19 NY3d 511, 516

[2012]). The existence of a valid and enforceable written contract governing the particular

subject matter precludes recovery under a theory of unjust enrichment (*Goldman v Metropolitan*

*Life Ins. Co.*, 5 NY3d 561, 572 [2005]).

In the Prior Dismissal, the Court held that the plaintiff had sufficiently alleged that the

defendants were unjustly enriched through his monetary contributions to Aspen REIT, Aspen

Coin, and Securitize:

> In sum and substance, Mr. Kirschenbaum alleges that he contributed significantly
> to a number of projects: the Sunset Tower deal, creation of the Aspen REIT and
> Aspen Coin, the acquisition of a certain interest in Securitize, development of
> ER/ER Global, and a capital raise for the acquisition of Seamico Securities
> (NYSCEF Doc. No. 30, ¶ 25). More specifically, Mr. Kirschenbaum asserts that
> he contributed $1 million to the Aspen REIT, $1.36 million to Aspen Coin, and
> invested $1 million in Securitize, and that the defendants have denied him any
> ability to liquidate or redeem his interests in the same (id., ¶¶ 43, 54-55, 66).
> According every favorable inference to Mr. Kirschenbaum, as the court must on a
> motion to dismiss, Mr. Kirschenbaum has sufficiently alleged that the defendants
> were unjustly enriched through his monetary contributions to the Aspen REIT,
> Aspen Coin, and Securitize and, thus, states a claim for unjust enrichment.
>
> Although the Moving Defendants assert that the unjust enrichment claim is
> duplicative of the Mr. Kirchenbaum's breach of contract claim, the parties'
> Agreement does not apply to any projects other than the Sunset Tower REIT and
> the unjust enrichment claim may be sustained insofar as Mr. Kirschenbaum seeks
> damages for projects other than the Sunset Tower REIT. Accordingly, the fifth
> cause of action for unjust enrichment is sustained and to the extent that the
> Second Amended Complaint pleads a cause of action for unjust enrichment, the
> claim as alleged therein survives

(NYSCEF Doc. No. 69, at 13-14).

653287/2019   KIRSCHENBAUM, JASON vs. DE BAETS, STEPHANE                    Page 4 of 8
Motion No.  006 007 008

4 of 8

FILED: NEW YORK COUNTY CLERK 10/30/2023 01:02 PM
NYSCEF DOC. NO. 227
RECEIVED NYSCEF: 10/30/2023

Following the completion of discovery and on the fully developed record, each of these alleged

investments is governed by an existing and enforceable contract such that Mr. Kirschenbaum

cannot maintain a claim sounding in unjust enrichment.

As to the investment in Aspen REIT, the parties agreed that Mr. Kirschenbaum's investment in

the Sunset Tower REIT was governed by the March 22, 2016 Letter Agreement (the **Agreement**;

NYSCEF Doc. No. 164). Pursuant to the Agreement, the parties agreed that following the sale of

the Sunset Tower REIT, the Agreement would remain in place and cover future investments. In

his moving papers, Mr. Kirschenbaum acknowledged and confirmed that, following the sale of

the Sunset Tower Hotel, the Agreement remained in place and covered his investment in the

Aspen REIT:

> 36. We simply replaced the Sunset Tower Hotel with the St. Regis Aspen Hotel
> and pursued the Aspen REIT. Defendant DeBaets sent an e-mail confirming
> same. See e-mail from Defendant DeBaets confirming same dated 5/24/2017 at
> hereto as Exhibit 59. Defendant DeBaets testified, "I sold the hotel and in order to
> bring the experiment to a tangible outcome we decided to replace the underlying
> asset from the Sunset Tower to the St. Regis Aspen." EBT of Defendant DeBaets,
> Exhibit @, at 113:10-14.
>
> 37. Moreover, there was no question that my role and equity was unaltered as I
> continued with the new asset Aspen REIT. Defendant DeBaets testified:
>
>> Q When the Sunset Tower deal did not go through did you notify
>> Mr. Kirschenbaum that your agreement with him was terminated?
>> A No.
>> Q Was it terminated?
>> A No. Id., 133:12-18

(NYSCEF Doc. No. 198 ¶¶ 36-37). Thus, an unjust enrichment claim predicated on his Aspen

investment fails as it is governed by the Sunset agreement.

653287/2019  KIRSCHENBAUM, JASON vs. DE BAETS, STEPHANE                    Page 5 of 8
Motion No. 006 007 008

5 of 8

Case No. 1:24-cv-04990-GHW-OTW Document 155-11 Filed 03/28/25 Page 6 of 8
pg 101 of 155
653287/2019

As to Aspen Coin, that investment was covered by a Purchase Agreement dated October 2, 2018 (NYSCEF Doc. No. 167) pursuant to which Mr. Kirschenbaum agreed to purchase $1,360,000 worth of Aspen Digital Inc.

As to Securitize, that investment was covered by a Series A Preferred Stock Purchase Agreement dated November 2, 2018 (NYSCEF Doc. No. 216) pursuant to which purchased $999,998.29 of Series A Preferred Stock of Securitize, Inc.

Because Mr. Kirschenbaum's investments in each of the Aspen REIT, Aspen Coin, and Securitize are governed by valid and enforceable contract, they are precluded from being the predicate of a cause of action for unjust enrichment (*Goldman*, 5 NY3d at 572). Thus, the motion for summary judgment is granted.

### III. *Defendants' motion to seal*

The defendants' motion (Mot. Seq. No. 008) to seal NYSCEF Doc. Nos. 216 is granted to the extent that Exhibit A contains sensitive non-party financial information and the public's interest in such information is far outweighed by the need for sealing (*Danco Lab., Ltd. V Chemical Works of Gedeon Richter, Ltd.*, 274 AD2d 1, 8 [1st Dept 2000]; 22 NYCRR § 216.1[a]). The parties are hereby ordered to upload a copy of the sealed document with only the signatures pages of non-parties and Exhibit A of the document redacted to the NYSCEF system.

It is hereby ORDERED that plaintiff's motion to amend the complaint is denied; and it is further

**653287/2019  KIRSCHENBAUM, JASON vs. DE BAETS, STEPHANE**
**Motion No.  006 007 008**
Page 6 of 8

6 of 8

Case No. 1:24-cv-01950-AKH-KHP    Document 53-6    Filed 07/18/25    Page 102 of 102
pg 102 of 155

ORDERED that the defendants' motion for summary judgment is granted; and it is further

ORDERED that the Clerk of the Court is directed, upon service on him of a copy of this order with notice of entry, to seal NYSCEF Doc. Nos. 216 and to separate this document and to keep them separate from the balance of the file in this action; and it is further

ORDERED that thereafter, or until further order of the court, the Clerk of the Court shall deny access to the said sealed documents to anyone (other than the staff of the Clerk or the court) except for counsel of record for any party to this case and any party; and it is further

ORDERED that service upon the Clerk of the Court shall be made in accordance with the procedures set forth in the *Protocol on Courthouse and County Clerk Procedures for Electronically Filed Cases* (accessible at the "E-Filing" page on the court's website); and it is further

ORDERED that the parties shall upload the sealed document with only the signature pages of non-parties and Exhibit A of the document redacted to the NYSCEF system within three business days of this decision and order.

20231030093317ABORROKA8261606C5A54B5EB303BD0D093DD1FE

| 10/30/2023 | | ANDREW BORROK, J.S.C. |
|---|---|---|
| DATE | | |

| CHECK ONE: | X | CASE DISPOSED | | | | NON-FINAL DISPOSITION | | |
|---|---|---|---|---|---|---|---|---|
| | | GRANTED | | DENIED | X | GRANTED IN PART | | OTHER |

**653287/2019   KIRSCHENBAUM, JASON vs. DE BAETS, STEPHANE**
**Motion No.  006 007 008**

Page 7 of 8

FILED: NEW YORK COUNTY CLERK 10/30/2023 01:02 PM
NYSCEF DOC. NO. 227
RECEIVED NYSCEF: 10/30/2023

| APPLICATION: | ☐ | SETTLE ORDER | ☐ | SUBMIT ORDER | | |
|---|---|---|---|---|---|---|
| CHECK IF APPROPRIATE: | ☐ | INCLUDES TRANSFER/REASSIGN | ☐ | FIDUCIARY APPOINTMENT | ☐ | REFERENCE |

**653287/2019   KIRSCHENBAUM, JASON vs. DE BAETS, STEPHANE**                    **Page 8 of 8**
**Motion No.  006 007 008**

8 of 8

SUPREME COURT OF THE STATE OF NEW YORK-___
COUNTY OF NEW YORK

JASON KIRSCHENBAUM,                                Index No. 653287/2019

                    Plaintiff,

                                                   SECOND AMENDED
          -against-                                COMPLAINT

STEPHANE DE BAETS, THOSAPONG
JURUTHAVEE, ELEVATED RETURNS, LLC, 315
EAST DEAN ASSOCIATES, INC., ASPEN DIGITAL
INC. f/k/a ASPEN REIT INC., ER MERRY WAY
LP, ER GLOBAL, LLC and JOHN DOES 1-10,

                    Defendants.

JASON KIRSCHENBAUM,                                Index No. 653287/2019

                    Plaintiff,

                                                   THIRD AMENDED
          -against-                                COMPLAINT

STEPHANE DE BAETS and ELEVATED RETURNS,
LLC,

                    Defendants.

        Plaintiff, Jason Kirschenbaum ("Plaintiff") by his undersigned attorneys, Gulko Schwed LLP,

as and for his Second Third Amended Complaint against defendants Stephane De Baets ("De

Baets"),") and Elevated Returns, LLC ("ER"), 315 East Dean Associates, Inc. ("315 East

Dean"), Aspen Digital f/k/a/ Aspen REIT, Inc. ("Aspen REIT"), ER Merry Way LP ("ER

Merry"), ER Global, LLC ("ER Global") & John Does "1" through "10," being and

intended;" collectively referred to be those unknown persons and/or entities acting in

concert with defendants,herein as Defendants) hereby states as follows:

**PRELIMINARY STATEMENT**

Style Definition: Normal: Font: (Default) Century, 12 pt, Ligatures: None, Space After: 8 pt, Line spacing: Multiple 1.08 li, Widow/Orphan control, Adjust space between Latin and Asian text, Adjust space between Asian text and numbers

Style Definition: Heading 1

Style Definition: List Paragraph: Font: (Default) Century, Ligatures: None, Left, Indent: Left: 0.5", First line: 0", Space After: 8 pt, Don't add space between paragraphs of the same style, Line spacing: Multiple 1.08 li, Widow/Orphan control, Adjust space between Latin and Asian text, Adjust space between Asian text and numbers

Style Definition: Body Text

Style Definition: Table Paragraph

Formatted: Font: Times New Roman

Formatted: Font: Times New Roman

Formatted: Normal, Right: 0", Space Before: 0 pt, Allow hanging punctuation

Formatted: Normal, Space Before: 0 pt, Allow hanging punctuation

Formatted: Font: Times New Roman, Font color: Custom Color(RGB(33,33,33))

Formatted: Normal, Indent: First line: 0.5", Right: 0", Allow hanging punctuation

Formatted: Font: Times New Roman, Font color: Custom Color(RGB(33,33,33))

Formatted: Font: Times New Roman, Font color: Custom Color(RGB(37,37,37))

Formatted: Font: Times New Roman, Font color: Custom Color(RGB(33,33,33))

Formatted: Font: Times New Roman, Font color: Custom Color(RGB(33,33,33)), Not Expanded by / Condensed by

Formatted: Font: Times New Roman, Font color: Custom Color(RGB(33,33,33))

Formatted

Formatted

Formatted

Formatted

Formatted

Formatted

Formatted

Formatted

Formatted

Formatted

Formatted: Font: Times New Roman, Bold, Underline

EXHIBIT G

Case No. 3124-96-01050 NYSCA3 Document 50-1 Filed 06/03/25 DC USB Colorado
pg 105 of 155

1.    This action stems from ~~the fraud, deception and~~ breaches of ~~agreements~~contract, unjust enrichment, fraud, and conversion that certain defendants have committed against and in connection to Plaintiff. Plaintiff was solicited by defendants to provide his experience and relationships for certain joint business ventures and facilitate the launch of their real estate investment trust (REIT). Despite the dynamics that shifted over the course of the relationship between the parties, and the evolution of the joint ventures between those involved, the agreements between the parties stayed intact.

FILED: NEW YORK COUNTY CLERK 11/29/2023 05:24 PM INDEX NO. 653287/2019
NYSCEF DOC. NO. 243                                          RECEIVED NYSCEF: 11/29/2023

2.     As described more fully herein, Plaintiff entered into an agreement, dated March 22,

2016 ("Initial Agreement") with defendant De Baets, which provided that Plaintiff would be

entitled to 25% of founder's equity in connection to a certain "Initial Listing". The Initial Listing

changed names several times, but continued the same mission and objective. Moreover, at each

turn, Plaintiff trusted defendant De Baets; he relied on and his continued (false) assurances, and as

a result, expended time, resources and significant money into these ventures.

3.     Specifically, the  parties agreed that notwithstanding the sale or outcome of the REIT

that was the basis of the Initial Agreement, the Agreement would remain in place and cover future

investments.

3.4.     While defendants have contended that the Initial Listing failed and thus the

Agreement terminated - this is far from true; the Initial Listing succeeded, and as a result, Plaintiff

has sought to be compensated for his efforts. Plaintiff has sought to resolve the instant dispute without

the need for judicial intervention, but all such efforts by Plaintiff have been futile. As such, Plaintiff

is compelled to bring the instant action seek relief for monetary as well as other relief, in connection

to claims for *inter alia* breaches of agreement, fraud, and others.

## **<u>PARTIES</u>**

4.     At all times hereinafter mentioned, plaintiff Jason Kirschenbaum ("Plaintiff") was

5.     and is a resident of the state of New York.

5.6.     On information and belief, defendant Stephane De Baets ("De Baets") was and is a

resident of the State of New York and the principal and chief executive officer of Elevated Returns,

LLC. Defendant De Baets controls and/or maintains interests in other corporate entities, including

the other corporate defendants named herein.

6.     On information and belief, defendant Elevated Returns, LLC was formed in the

State of Delaware, on March 1, 2016 and is a foreign limited liability company licensed to do

business in the State of New York, and currently existing under the laws of the State of New York.

Defendant Elevated Returns is primarily an asset management company, but also involves itself

Formatted: Font: Times New Roman, Font color: Custom Color(RGB(33,33,33)), Not Expanded by / Condensed by

Formatted: Font: Times New Roman, Font color: Custom Color(RGB(33,33,33))

Formatted: Font: Times New Roman, Font color: Custom Color(RGB(33,33,33)), Not Expanded by / Condensed by

Formatted: Font: Times New Roman, Font color: Custom Color(RGB(33,33,33))

Formatted: Font: Times New Roman, Font color: Custom Color(RGB(33,33,33)), Not Expanded by / Condensed by

Formatted: Font: Times New Roman, Font color: Custom Color(RGB(33,33,33))

Formatted: Font: Times New Roman, Font color: Custom Color(RGB(33,33,33)), Not Expanded by / Condensed by

Formatted: Font: Times New Roman, Font color: Custom Color(RGB(33,33,33))

Formatted: Font: Times New Roman, Font color: Custom Color(RGB(33,33,33)), Not Expanded by / Condensed by

Formatted: Font: Times New Roman, Font color: Custom Color(RGB(33,33,33))

Formatted: Font: Times New Roman, Font color: Custom Color(RGB(33,33,33)), Not Expanded by / Condensed by

Formatted: Font: Times New Roman, Font color: Custom Color(RGB(33,33,33))

Formatted ...

Formatted: Font: Times New Roman, Font color: Custom Color(RGB(33,33,33))

Formatted ...

Formatted: Font: Times New Roman, Font color: Custom Color(RGB(33,33,33))

Formatted ...

Formatted: Font: Times New Roman, Font color: Custom Color(RGB(33,33,33))

Formatted ...

Formatted: Font: Times New Roman, Font color: Custom Color(RGB(33,33,33))

Formatted ...

Formatted: Font: Times New Roman, Font color: Custom Color(RGB(33,33,33))

Formatted ...

Formatted: Font: Times New Roman, Font color: Custom Color(RGB(33,33,33))

FILED: NEW YORK COUNTY CLERK 11/29/2023 05:24 PM
NYSCEF DOC. NO. 243
RECEIVED NYSCEF: 11/29/2023

7.    in investment banking, mergers and acquisitions, debt/equity, financing, advisory, management and asset recovery.

7.    On information and belief, Aspen Digital, Inc. f/k/a/ Sunset Tower REIT, Inc. is a single asset REIT, formed under the laws of the State of Maryland and is externally managed by ER-RE f/k/a ER REITS, a majority owned subsidiary of Elevated Returns, LLC a New York-based real estate management and advisory limited liability company. Aspen Digital maintains an office at 7 St. Paul Street. Suite 820, Baltimore, Maryland 21202.

8.    On information and belief, 315 East Dean Associates, Inc. ("315 East Dean") is a Delaware corporation formed on July 8, 2010, and maintains a registered agent at Nationwide Information Services, Inc., located at 3500 South Dupont Highway, Dover, Delaware.

9.    On information and belief, ER Merry Way LP is a Delaware limited partnership formed on March 13, 2015, and maintains a registered agent at Nationwide Information Services, Inc., located at 3500 South Dupont Highway, Dover, Delaware. On information and belief, ER Merry Way LP is an entity owned and operated by an individual known as Thosapong Juruthavec ("TJ"), but under the direction and control of Ravipan Jurathavec, TJ's daughter. A copy of the Amended and Restated Agreement of Limited Partnership of ER Merry Way LP, dated April 1, 2015, is annexed hereto as Exhibit A. Aspen ER Properties LP changed its name to ER Merry Way LP. See Exhibit B. The General Partner of ER Merry Way is Elevated Returns LLC. Id. On information and belief, Merry Way Investments Limited is an entity set up under the laws of the British Virgin Islands and owned and controlled by TJ. It is a limited partner of ER Merry Way.

10.    On information and belief, ER Global, LLC is a Delaware limited

Case No. 1:24-cv-01950-PAB-KAS   Document 50-1   filed 06/09/25   USDC Colorado
pg 109 of 155

liability company that was formed on or about July 10, 2018.

FILED: NEW YORK COUNTY CLERK 11/29/2023 05:24 PM    INDEX NO. 653287/2019
NYSCEF DOC. NO. 243                                  RECEIVED NYSCEF: 11/29/2023

FILED: NEW YORK COUNTY CLERK 10/26/2020 07:41 PM    INDEX NO. 653287/2019
NYSCEF DOC. NO. 70                                   RECEIVED NYSCEF: 11/24/2020

11. ~~The parties named as John Does 1-12 are those persons or entities that assisted or were involved in the claims provided herein, and whose identities cannot be determined at this time.~~

### JURISDICTION & VENUE

~~12.~~ This Court has personal jurisdiction over the parties pursuant to C.P.L.R. § 301 and 8. § 302.

~~13.~~9. Venue is proper in New York County pursuant to C.P.L.R. § 501.

### STATEMENT OF RELEVANT FACTS

#### *Organizational Structure*

~~14.~~10. Elevated Returns, LLC is a limited liability company set and currently operating under the laws of the State of Delaware. Pursuant to the limited liability company agreement ("LLC Agreement") of Elevated Returns, LLC, dated October 6, 2014, defendant De Baets is its sole members and holds 100% of its membership interests. A copy of the limited liability company agreement for Elevated Returns, LLC is annexed hereto as Exhibit C.

~~15.~~ ~~TJ~~Mr. Thosapong Jurathavee ("TJ"), a current partner of defendant De Baets and former partner of Plaintiff, acts often and primarily through defendant De Baets, his attorneys or his daughter Ravipan Jaruthavee who, on information and belief, resides in the State of New York. *See* e-mail from defendant De Baets to Plaintiff, dated September 24, 2018, annexed hereto as Exhibit D, wherein defendant De Baets states that TJ owns 60% of Elevated Returns. *See also* a

11. copy of the organizational chart prepared by or at the direction of, defendant De Baets annexed hereto as Exhibit D.

~~16.~~12. The individual defendants held their interests in the REIT (defined herein), its external asset manager/advisor, ER REITS, LLC a/k/a ER-RE, LLC, and its interests in the St. Regis Aspen

Case No. 3124-cv-01950-RM-SKC    Document 50-1 filed 08/29/25 DC USDC Colorado
pg 111 of 155

Hotel, through a spider web of entities and other wholly owned subsidiaries. *See* the organizational

chart attached as Exhibit F.

FILED: NEW YORK COUNTY CLERK 11/29/2023 05:24 PM INDEX NO. 653287/2019
NYSCEF DOC. NO. 243                                      RECEIVED NYSCEF: 11/29/2023

pg 112 of 155

*Initial Meetings re: Partnership Structure and Single Asset REIT.*

17.13.  Towards the end of 2015 and beginning of 2016, Plaintiff approached defendant De Baets with the idea, structure and concept of a single asset real estate investment trust ("REIT").

18.14.  Plaintiff and defendant De Baets continued to correspond with respect to setting up a REIT, and eventually began meeting at the Mercer Hotel in New York City to discuss implementing Plaintiff's ideas.

19.15.  During the course of these meetings, Plaintiff and defendant De Baets discussed potential ventures and opportunities, including the idea, concept and structure, proposed by Plaintiff, for the creation of a single asset REIT.

20.16.  In or around February 2016, Plaintiff met again with defendant De Baets and TJ at the Mercer Hotel to discuss further detail of a single asset REIT, as well as to create a company, or companies to be used in connection with other ventures.

21.17.  Plaintiff had prior experience in the REIT space and had significant and diverse relationships that defendant De Baets and TJ wished to monetize.

22.  Between the property holdings of defendant De Baets and TJ, together with

18.  Plaintiff's experience and resources in the financial sector and REIT space, a joint venture ensued.

23.19.  It was understood that defendant De Baets and TJ were to provide the initial assets in forming the REIT, which consisted of certain hotels.

24.20.  Plaintiff agreed to coordinate and supervise day-to-day aspects pertaining to the asset, business development, working with legal counsel on SEC filings, advise on sale and marketing strategy of asset, etc.

FILED: NEW YORK COUNTY CLERK 11/29/2023 05:24 PM INDEX NO. 653287/2019
NYSCEF DOC. NO. 243                                    RECEIVED NYSCEF: 11/29/2023

FILED: NEW YORK COUNTY CLERK 10/26/2020 07:41 PM    INDEX NO. 653287/2019
NYSCEF DOC. NO. 70                                   RECEIVED NYSCEF: 11/24/2020

25. 21.  Plaintiff and defendant De Baets continued to discuss joint venture interests, and after some back and forth, on or about February 26, 2016, defendant De Baets offered in writing via e-mail a 25% equity position stating:

> For the ongoing business, I can offer 25% equity …my capital partner want 50% so I split my 50% with you. I would say take this as a starting point. we can always renegotiate later.

26. 22.  This resulted in TJ having a 50% equity interest in their joint venture, and defendant De Baets having the remaining 25% equity interests.

27. 23.  Shortly thereafter, Plaintiff and defendant De Baets entered into an oral agreement which also was memorialized in a written agreement, dated March 22, 2016 ("Initial Agreement") and attached hereto as Exhibit G.

28. 24.  The Initial Agreement, amongst other things, provided a compensation structure relative to the creation of a single asset REIT using the Sunset Tower Hotel in Los Angeles, California and other future deals.

29. 25.  It was expressly understood between the parties hereto that the Initial Agreement was centered around the Sunset Tower deal, as that transaction was live at that time, but the Initial Agreement encompassed the terms for future deals, as well.

30.     In fact, the Agreement expressly provides in at least three (3) different provisions

26.     that the terms contemplated therein would apply to "future deals".

31. 27.  Pursuant to the terms of their Agreement, Plaintiff was entitled to twenty-five percent (25%) of the founder's equity issued in connection with the formation of an advisor company.

32. 28.  The Agreement follows that the foregoing arrangement will stay in place with future successful deals. Agreement at p. 2.

FILED: NEW YORK COUNTY CLERK 11/29/2023 05:24 PM

NYSCEF DOC. NO. 243

FILED: NEW YORK COUNTY CLERK 10/26/2020 07:41 PM

NYSCEF DOC. NO. 70

INDEX NO. 653287/2019
RECEIVED NYSCEF: 11/24/2020

29.     Defendant De Baets confirmed the flexibility and ongoing validity of the parties Agreement irrespective of the underlying asset repeatedly, including in writing by email dated May 24, 2017.

30.     Defendant De Baets also stated in his sworn testimony, "I sold the hotel and in order to bring the experiment to a tangible outcome we decided to replace the underlying asset from the Sunset Tower to the St. Regis Aspen." August 8, 2022, Deposition, 113:10-14.

31.     Defendant De Baets further testified that the Agreement between the parties was never terminated. *Id.*, at 133:14-18; 146:2-9.

32.     Plaintiff was instrumental and contributed significantly, including but not limited to the following:

    a.    the creation of the Sunset Tower REIT;

    b.    the creation of the Aspen REIT and creating Aspen Coin;

    c.    the acquisition of a certain interest in Securitize;

    d.    the development of Elevated Returns/ER Global; and

    e.    the capital raise for the acquisition of 21% of Seamico Securities.

33.     As described more fully below, Plaintiff also utilized his relationships to facilitate revenue, opportunities and dealings for defendant De Baets and TJ and their related affiliates.

34.     In addition to the Initial Agreement, the parties entered into additional contracts, including, Purchase Agreement dated October 2, 2018; Series A Preferred Stock Purchase Agreement dated November 2, 2018.

*Sunset Tower Hotel*

FILED: NEW YORK COUNTY CLERK 11/29/2023 05:24 PM    INDEX NO. 653287/2019
NYSCEF DOC. NO. 243                                 RECEIVED NYSCEF: 11/29/2023

Case No. 3:24-cv-01659-AHS-KS    Document 53 of 155    Filed 12/89/25    USDC Colorado
pg 115 of 155

35.    For close to one year, Plaintiff expended significant time and effort on the Sunset Tower deal in connection with the formation and listing on the Nasdaq Stock Exchange of a single asset REIT. The initial listing was "expected" to be the Sunset Tower Hotel in Los Angeles, California. *See* Initial Agreement (annexed hereto as Exhibit G at ¶ 1.

California. See Initial Agreement (annexed hereto as Exhibit G at ¶ 1.

36.    Through a close contact, Plaintiff brought in the law firm of Clifford Chance, LLP to act as counsel in connection with the Sunset Tower REIT and coordinated and assisted in drafting, compiling and coordinating with legal counsel at Clifford Chance with respect to the S–11.

37.    Plaintiff interfaced with the partners, legal counsel and other senior executive personnel; performing due diligence; writing offering memoranda; creating and evaluating term sheets; evaluating acquisition candidates and deal structures; working with investment bankers and commercial bankers; creating different financial models and scenarios; writing board

37.     presentations; and evaluating offers and financing options; and supervising due diligence by prospective investors in the company.

38.     In August 2016, Clifford Chance introduced the parties to an individual named Mike Wirth ("Wirth"), who in short order was hired in a part time position as the chief financial officer.

39.     In order to assemble an attractive compensation package to secure Wirth, at the request of defendant De Baets and with the approval of TJ, defendant De Baets requested that Plaintiff relinquish 5% of his 25% equity stake so that it could be included in a compensation package to Wirth.

~~package to Wirth.~~

40.     Defendant De Baets also agreed to reduce his own equity interests by 5% so that he would remain at 20% and equal to Plaintiff.

41.     TJ agreed to relinquish or free up 10% of his equity interests from 50% to 40%.

42.     On or around October 11, 2016, the law firm of Mayer Brown, LLP circulated an e-mail concerning ER-REITS breakdown of the following equity interests: ER 20%, Jason [Kirschenbaum] 20% and Mike [Wirth] 20%. In addition, on September 28, 2017, defendant De Baets confirmed Plaintiff's 20% interests in an email to Plaintiff. See e-mail, dated September 28, 2017, annexed hereto as Exhibit H. Upon Wirth's departure from ER, consistent with the parties' understanding, Plaintiff's equity stake reverted to 25%.

~~understanding, Plaintiff's equity stake reverted to 25%.~~

43.     In January 2017, Jeff Klein, owner of Sunset Tower Hotel in West Hollywood, California decided not to go public and list on an exchange. Although the Sunset Deal did not close as initially planned in March 2017, the Sunset Tower Hotel sold for approximately $95 million (USD).

FILED: NEW YORK COUNTY CLERK 11/29/2023 05:24 PM    INDEX NO. 653287/2019
NYSCEF DOC. NO. 243                                  RECEIVED NYSCEF: 11/29/2023

FILED: NEW YORK COUNTY CLERK 10/26/2020 07:41 PM    INDEX NO. 653287/2019
NYSCEF DOC. NO. 70                                   RECEIVED NYSCEF: 11/24/2020

44. Despite TJ's representations to the Court to the contrary with respect to jurisdiction and his business activities, defendant TJ had purchased an 80% stake in the Sunset Tower Hotel, which he sold for roughly $100 million. *See* LA Business Journal Article, dated June 2, 2017 attached hereto as Exhibit I.

45. Defendant De Baets paid Plaintiff $20,000 from the closing of the Sunset Tower Deal and stated to Plaintiff in an e-mail, dated May 24, 2017, that he [Plaintiff] would be paid well on their other future dealings, such as Aspen REIT.

46. As seen in his email to Plaintiff, defendant De Baets made clear that Plaintiff would be entitled and should expect to receive significantly more money once the REIT is launched. **In fact, defendant De Baets states that the payment in the amount of $20,000 was simply "play money".** The real money would come in from the REIT. **As such, he instructed Plaintiff "[A]ll eyes on Aspen now"** and to keep working on the launch of the Aspen REIT.

47. Plaintiff relied on defendant De Baet's assurances and clear message that their partnership was very much intact and continued to expend time, efforts and money towards the original objective: the listing of a single asset REIT.

48. Plaintiff continued to expend his resources on their joint venture and defendant De Baets and TJ knew that he continued to do so, but did not inform Plaintiff that any of the terms of their Initial Agreement had changed or that it was terminated. To the contrary, defendant De Baets and TJ, but certainly defendant De Baets, deliberately led Plaintiff to believe that their partnership or fee structure as contemplated under the Initial Agreement was fully intact.

*St. Regis Aspen REIT (Aspen REIT)*

FILED: NEW YORK COUNTY CLERK 11/29/2023 05:24 PM INDEX NO. 653287/2019
NYSCEF DOC. NO. 243 RECEIVED NYSCEF: 11/29/2023

FILED: NEW YORK COUNTY CLERK 10/26/2020 07:41 PM INDEX NO. 653287/2019
NYSCEF DOC. NO. 70 RECEIVED NYSCEF: 11/24/2020

49. In or around September 2010, defendant De Baets, via an entity under his direction and control, 315 East Dean acquired the 179 room St. Regis Aspen Hotel ("Aspen Hotel") for $70 million (USD). The Aspen Hotel is currently managed by ER-RE, LLC f/k/a ER REITS, LLC, the asset management arm of Elevated Returns, LLC.

50. After the Sunset Tower deal changed direction and TJ opted to sell his interests in the Sunset Tower Hotel instead of listing as an IPO on an exchange, defendant De Baets chose to refocus his efforts and use the Aspen Hotel instead as the underlying real estate for the single-asset REIT.

51. Because the Sunset Tower REIT simply changed names, Defendants had the unique advantage and ability to move quickly in their efforts and launch ~~the~~a single-asset REIT. The whitepaper and the filings with the Security and Exchange Commission (SEC) for Aspen ~~REIT~~Coin were essentially the same whitepaper and SEC filings in connection to ~~Sunset Tower~~Aspen REIT~~,~~ ~~Inc~~.

52. Notably, **Aspen REIT, Inc., as well as Aspen Digital, Inc, were one of the same; they were the simple evolution of Sunset Tower REIT, Inc.** Aspen REIT, Inc. and Aspen Digital, Inc. were formerly known as Sunset Tower REIT, Inc. *See* Form D filed with the SEC, annexed hereto as Exhibit J, wherein defendant De Baets changed the name from Sunset Tower REIT, Inc. to Aspen REIT, Inc. to Aspen Digital, Inc.

~~REIT, Inc. to Aspen REIT, Inc. to Aspen Digital, Inc.~~

53. In middle of November 2017, Aspen REIT, a single asset real estate investment trust, filed with the SEC a Regulation A+ initial public offering to raise approximately $33.5 million in gross proceeds.

54. There was no reason to think that the arrangements and understandings contemplated under the Initial Agreement and that were subsequently reaffirmed between the parties, both orally and in writing, continued between the parties.

FILED: NEW YORK COUNTY CLERK 11/29/2023 05:24 PM INDEX NO. 653287/2019
NYSCEF DOC. NO. 243 RECEIVED NYSCEF: 11/29/2023

Case No. 3124-cv-01659-PAB-KAS Document 150-1 filed 07/29/25 USDC Colorado
pg 119 of 155

FILED: NEW YORK COUNTY CLERK 10/26/2020 07:41 PM INDEX NO. 653287/2019
NYSCEF DOC. NO. 70 RECEIVED NYSCEF: 11/24/2020

55. As far as the parties were concerned, and as evidenced by the filings with the SEC, the Sunset Tower Hotel REIT simply changed its name and morphed into other single-asset REIT without any materials changes in the whitepaper or security submissions.

56. In January, 2018, and after re-filing, the SEC fully approved Aspen REIT as a Single Asset REIT.

57. The IPO appeared set to proceed by the end of February, 2018, but Elevated Returns

57. abruptly canceled the sale on February, 26, ostensibly in an effort to retool. It became apparent that defendant De Baets tanked the listing seemingly for the sole purpose of depriving Plaintiff from any renumeration due him as a member of Aspen REIT, and in an effort to restructure and evade his obligations to Plaintiff.

defendant De Baets tanked the listing seemingly for the sole purpose of depriving Plaintiff from any renumeration due him as a member of Aspen REIT, and in an effort to restructure and evade his obligations to Plaintiff.

58. Despite the IPO being shelved, the law firm of Clifford Chance continued to work on the St. Regis Aspen REIT and the related St. Regis Aspen Coin projects (collectively "Aspen Digital"). Plaintiff also continued to work on the REIT and Aspen Digital and continued to rely on the representations by defendant De Baets.

59. Throughout this process, defendant De Baets constantly reaffirmed his promises to Plaintiff both verbally and in writing to assure him that their structure was still intact and he (Plaintiff) would remain a partner in their ventures.

60. For example, in April 2018, defendant De Baets confirmed Plaintiff as a partner, ER Global and writes in an e-mail "[P]lease add jason as co-founder too. Lets also pin down a call about who gets what. The sooner the better." *See* e-mail sent by defendant De Baets, dated April 17, 2018, annexed hereto as Exhibit K.

Case No. 1:24-cv-01455-RMR-KAS Document 50-11 filed 09/29/25 USDC Colorado
pg 120 of 155

61.    During this time Plaintiff divided his time amongst other projects under the ER umbrella, but still continued to work and create whitepaper, private placement memorandum, and a deck for Aspen Coin - shares in the St. Regis -- that were to be denominated not in bitcoin but in a special securitized token created specifically for the hotel's sale, known as Aspen Coin.

FILED: NEW YORK COUNTY CLERK 11/29/2023 05:24 PM INDEX NO. 653287/2019

NYSCEF DOC. NO. 243                                                RECEIVED NYSCEF: 11/29/2023

pg 121 of 155

a deck for Aspen Coin – shares in the St. Regis – that were to be denominated not in bitcoin but in

a special securitized token created specifically for the hotel's sale, known as Aspen Coin.

62.    In July of 2018, the private placement memorandum for Aspen Coin was completed,

and the parties sought to raise $18 million (USD) for a 19% interest of the St. Regis Aspen hotel.

63.    In or around October of 2018, defendant De Baets led Plaintiff to believe that (i) they

could not close the Aspen Coin deal if Plaintiff didn't contribute to the deal, and (ii) defendants TJ

and East Dean would not contribute to this venture if Plaintiff did not believe in its viability and

contribute as well. *See,* e-mail ("Very disappointing") from defendant De Baets to Plaintiff, dated

September 24, 2018, annexed hereto as Exhibit D.

64.    Plaintiff also understood clearly from defendant De Baets' representations that in the

event they were unable to successfully complete the raise, Plaintiff's equity interests and monetary,

as well as non-monetary, investments would be worthless and he would lose his interests in their

venture.

65.    As such, Plaintiff relied on the foregoing representations made to him by defendant

De Baets, and on or around October 4, 2018, Plaintiff wired a total amount of approximately

$1,360,000 in an effort to launch the REIT.

$1,360,000 in an effort to launch the REIT.

66.    In October 2018, Aspen Coin closed at the full $18 million (USD). TJ and defendant

East Dean contributed $9 million dollars; defendant De Baets contributed $1.27 million (USD), and

Plaintiff contributed over $1.36 million (USD).

67.    Defendant De Baets shook Plaintiff's hands and re-affirmed their partnership.

*Securitize and Seamico and Other Ventures*

18  of

FILED: NEW YORK COUNTY CLERK 11/29/2023 05:24 PM
NYSCEF DOC. NO. 243
INDEX NO. 653287/2019
RECEIVED NYSCEF: 11/29/2023

FILED: NEW YORK COUNTY CLERK 10/26/2020 07:41 PM
NYSCEF DOC. NO. 70
INDEX NO. 653287/2019
RECEIVED NYSCEF: 11/24/2020

68. ~~Not too long after~~Plaintiff was instrumental in the capital raises for the acquisition of a certain interests in Securitize and Seamico, which are both considered under the ER umbrella, as well as other ventures.

~~68.~~69. Subsequent to the successful raise for Aspen Coin, the parties were introduced to a company known as Securitize, which provided a compliance platform and protocol for digitizing securities in the blockchain.

~~69. Plaintiff was instrumental in the capital raises for the acquisition of a certain interests in Securitize and Seamico, which are both considered under the ER umbrella, as well as other ventures.~~

70. In November 2018, Securitize, a company led by Jaimie Finn and Carlos Domingo, entered into a Series A Preferred Stock Purchase Agreement ("Transaction"), whereby in exchange for One Million Dollars ($1,000,000) paid collectively by Plaintiff, and his former partners, defendant Stephane De Baets and Mr. Thosapong Jurathavee, defendant Elevated Returns, LLC received in exchange Series A Preferred Stock at a par value of $.00001 per share interests in Securitize.

71. On November 8, 2018, defendant De Baets sent Plaintiff ~~also personally invested~~a text message informing him that he needed to pay for his investment in Securitize with his digital currency in the form of Aspen Coin.

72. Plaintiff's investment, the sum of Three Hundred and Thirty-Three Thousand Dollars ($333,000) ("Investment") was his 1/3 share of the total One Million Dollar ($1,000,000) fee ("Fee") that was earned by Plaintiff and his former partners, Stephane De Baets and Thosapong Jurathavee in connection to raise done on behalf of Aspen Coin.

73. Instead of Plaintiff being paid out his share of the Fee, Plaintiff agreed to invest his share of the Fee in the form of digital currency (Aspen Coin), together with his former partners investment in the same form of digital currency, into Securitize.

FILED: NEW YORK COUNTY CLERK 11/29/2023 05:24 PM
NYSCEF DOC. NO. 243

Case No. 3:24-cv-01950-JSC-SK   Document 50-15   Filed 07/29/25   Page 123 of 155
INDEX NO. 653287/2019
RECEIVED NYSCEF: 11/29/2023

pg 123 of 155

70.74.  Plaintiff's investment of significant monies in both Securitize and Aspen Coin, the latter of which guaranteed the success of the Aspen Coin venture. Plaintiff's contributions were material to the creation and success of the St. Regis Aspen REIT and Aspen Coin.

71.  Plaintiff, via and/or together with ER, invested a sum of $1 million (USD) into Securitize.

75.  On information and belief, the investment in Securitize was made by Elevated Returns.

76.  However, unbeknownst to Plaintiff, in or around July 2020, Securitize elected to terminate the Transaction and returned the sum of One Million Dollars ($1,000,000) to defendant, via an entity known as 315 East Dean Associates, Inc. Attached hereto as Exhibit L is a copy of the executed Transfer Request Form.

77.  315 East Dean Associates, Inc., is an entity believed to be under the direction and is currently held control of defendant and Mr. Thosapong Jurathavee.

78.  The redemption of shares in Securitize and return of funds in connection therewith, included Plaintiff's Investment.

79.  While Plaintiff has made demands for the return of his Investment, to date, he has not received his Investment or any portion thereof.

72.80.  Moreover, despite counsel for Defendants assurances that Plaintiff "retains his investments" in Securitize, Plaintiff recently discovered that his Investment was in fact not retained by ER Global. Securitize, as his Investment was redeemed by defendant, and Plaintiff's monies were sent to defendant StephaneDe Baets via his entity known as 315 East Dean Associates, LLC. See letter dated March 26, 2019 annexed hereto as Exhibit M.

73.81.  To date, Defendants have failed to make any distributions from the monies invested with Securitize or his other investments with his partners, and has denied Plaintiff the ability to liquidate or redeem his interests in same.

20   of

Case No. 3:24-cv-01650-RK-KAS   Document 50-1   Filed 02/29/25   INDEX NO. 653287/2019
pg 124 of 155
RECEIVED NYSCEF: 11/29/2023

74. Moreover, defendant De Baets has failed to acknowledge Plaintiff's investment in

Securitize or provide Plaintiff with any information as to its current value.

75. Defendant De Baets and others unknown to Plaintiff and whom Plaintiff has listed as John Does 1-10 in the instant action, continue to exercise exclusive dominion and control over property belonging to Plaintiff.

76. Moreover, said defendants have denied Plaintiff the access to his interests.

Case No. 3124-04-01059-NY-KSA-53   Document 65 of 166   Dc9df89125   SDC   USDC   Colorado
pg 125 of 155

77.    ~~Plaintiff has personally and professionally committed and contributed significant resources to the success of the various business ventures of defendant De Baets and TJ.~~

_Current Status_

~~78.~~82.  Plaintiff's efforts and ideas caused defendant De Baets and TJ to realize significant profits and caused defendant De Baets and TJ to successfully launch a single asset REIT, ultimately known as Aspen Digital Token, using the St. Regis Aspen Hotel.

~~79.~~83.  Based on a recent estimation, ER Global has a current pre-money valuation of $40 million (USD).

~~80.~~84.  As such, Plaintiff's 25% share equates to (at the very least) $10 million (USD).

~~81.~~85.  Plaintiff has attempted to resolve this dispute without the need for litigation, however, to date, Defendants have refused to make any substantial attempt to settle the disputes outlined herein.

**FIRST CAUSE OF ACTION**

_Breach of Contract_

~~Unjust Enrichment~~

~~107.~~86. Plaintiff repeats and ~~realleges~~re-alleges each of the allegations contained in paragraphs 1 through 86 above as if more fully set forth at length herein.

87.    Plaintiff and defendants entered into a lawful and enforceable agreements.

88.    Plaintiff has fully performed all of the obligations required to be performed by him.

89.    By reason of the foregoing, Defendants have breached the agreements with Plaintiff, and continue to breach same by inter alia failing to make requisite distributions or provide an accounting.

22  of

90.     By reason of the foregoing, Plaintiff is entitled to damages in an amount to be determined but not less than $1.36m.

### SECOND CAUSE OF ACTION

#### Unjust Enrichment

108. 87.     Defendants have been unjustly enriched by the renumeration they retained for themselves, which was due solely to Plaintiff's actions.

109. 83.     To date, Defendants have failed and refused to compensate Plaintiff any part of the outstanding balance to which Plaintiff is entitled, but have nevertheless retained and continue to enjoy the benefit bestowed upon them by Plaintiff's actions.

110. 84.     By reason of the foregoing, Plaintiff is entitled to damages in an amount to be determined at trial of this matter.

23  of

FILED: NEW YORK COUNTY CLERK 11/29/2023 05:24 PM
NYSCEF DOC. NO. 243

Case No. 1:24-cv-01950-AKH-SLC   Document 50-1   Filed 09/29/25   DCS INDEX NO. 653287/2019
pg 127 of 155
RECEIVED NYSCEF: 11/29/2023

FILED: NEW YORK COUNTY CLERK 10/26/2020 07:41 PM
NYSCEF DOC. NO. 70

INDEX NO. 653287/2019
RECEIVED NYSCEF: 11/24/2020

### THIRD CAUSE OF ACTION

### Fraud

85.     Plaintiff repeats and realleges each of the allegations as if more fully set forth at length herein.

86.     In or around September 2018, Defendant De Baets represented to Plaintiff that he needed certain funds for the Securitize transaction, as he "had no choice, but to monetize this deal, one way or another".

87.     Plaintiff relied on defendant De Baets' representations and was induced by defendant De Baets to invest a sum of $333,000 into Securitize alongside his former partners.

88.     On information and belief, despite the representations made by defendant De Baets and assurances made by counsel for defendant De Baets Plaintiff's funds were never invested into Securitize on his behalf.

89.     Plaintiff recently discovered that the funds invested by him were returned to defendant De Baets.

90.     Defendant De Baets and/or his counsel knowingly omitted making such disclosures to Plaintiff, and misrepresented certain material facts, including the whereabout of Plaintiff's Investment to Plaintiff.

91. Plaintiff relied on defendant's misrepresentations and as a result has been damaged in an amount to be determined at trial, but no event in an amount of less than Three Hundred and Thirty Three Thousand Dollars ($333,000).

### FOURTH CAUSE OF ACTION

### Conversion
-Pled In The Alternative-

Case No. 3:24-cv-01950-X-BK K-S-5    Document 50 of 55    filed 03/28/25    USDC Colorado    pg

92.  Plaintiff repeats and realleges each of the allegations as if more fully set forth at length herein.

93.  A portion of the funds transferred to 315 East Dean Associates, LLC, from Securitize, did not belong to Defendants, but, rather, belonged to Plaintiff.

94.  Defendants committed the wrongful acts described herein without authority to do so.

95.  Defendants committed these acts intentionally and without Plaintiffs' knowledge and has interfered with Plaintiffs' rights to possess the converted funds.

96.  By reason of the foregoing, Plaintiff has been damaged in an amount to be determined at trial.

**CONCLUSION**

**WHEREFORE**, Plaintiff, Jason Kirschenbaum, demands judgment against the defendants named hereinabove for damages in an amount to be determined at trial of this matter, together with reasonable attorney's fees, the costs and disbursements of this action and such other, further and/or different relief as the Court deems just and proper.

Dated: Cedarhurst, New York, New York October 26, 2020

November 29, 2023

**GULKO SCHWED LLP**

_____

By:    /s Asher Gulko        Asher C. Gulko, Esq.

FILED: NEW YORK COUNTY CLERK 11/29/2023 05:24 PM INDEX NO. 653287/2019
NYSCEF DOC. NO. 243                              RECEIVED NYSCEF: 11/29/2023

FILED: NEW YORK COUNTY CLERK 10/26/2020 07:41 PM    INDEX NO. 653287/2019
NYSCEF DOC. NO. 70                                  RECEIVED NYSCEF: 11/24/2020

525 Chestnut

ASHER GULKO, ESQ.

44 Wall Street, Suite 207 Cedarhurst, Second Floor

New York 11516 , New York 10005

T: 212.500.1312

/ F: 212.678.04950405

E: asher@gulkoschwed.com Attorneys for Plaintiff

**Formatted:** Font: Times New Roman, Font color: Text 1

**Formatted:** Font color: Text 1

**Formatted:** Font color: Text 1

**Formatted:** Font: Times New Roman, Font color: Text 1

**Formatted:** Font: Times New Roman, Font color: Text 1, Not Expanded by / Condensed by

**Formatted:** Font: Times New Roman, Font color: Text 1

**Formatted:** Font: Times New Roman, Font color: Text 1

**Formatted:** Normal, Justified, Indent: Left:  3", First line:  0.5", Allow hanging punctuation

**Formatted:** Normal, Indent: Left:  0", Space Before:  0 pt, Don't add space between paragraphs of the same style, Allow hanging punctuation

Case No. 1:24-cv-01823-PKC-KHP    Document 50-4    filed 03/29/25    DC USDC Colorado    pg 130 of 155

INDEX NO. 653287/2019

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

JASON KIRSCHENBAUM,

                      Plaintiff,

      -against-

STEPHANE DE BAETS and ELEVATED RETURNS,
LLC,

                    Defendants.

Index No. 653287/2019

**THIRD AMENDED
COMPLAINT**

        Plaintiff, Jason Kirschenbaum ("Plaintiff") by his undersigned attorneys, Gulko Schwed

LLP, as and for his Third Amended Complaint against defendants Stephane De Baets ("De Baets")

and Elevated Returns, LLC ("ER;" collectively referred to herein as Defendants) hereby states as

follows:

<div align="center"><strong><u>PRELIMINARY STATEMENT</u></strong></div>

        1.     This action stems from breaches of contract, unjust enrichment, fraud, and

conversion that certain defendants have committed against and in connection to Plaintiff. Plaintiff

was solicited by defendants to provide his experience and relationships for certain joint business

ventures and facilitate the launch of their real estate investment trust (REIT). Despite the dynamics

that shifted over the course of the relationship between the parties, and the evolution of the joint

ventures between those involved, the agreements between the parties stayed intact.

        2.     As described more fully herein, Plaintiff entered into an agreement, dated March

22, 2016 ("Initial Agreement") with defendant De Baets, which provided that Plaintiff would be

entitled to 25% of founder's equity in connection to a certain "Initial Listing". The Initial Listing

changed names several times, but continued the same mission and objective. Moreover, at each

Case No. 2124-04-81663, Docket #5... Document 56... Filed 06/29/25 DC US Colorado...
pg 131 of 155

turn, Plaintiff trusted defendant De Baets; he relied on and his continued (false) assurances, and as a result, expended time, resources and significant money into these ventures.

3.      Specifically, the  parties agreed that notwithstanding the sale or outcome of the REIT that was the basis of the Initial Agreement, the Agreement would remain in place and cover future investments.

4.      While defendants have contended that the Initial Listing failed and thus the Agreement terminated - this is far from true; the Initial Listing succeeded, and as a result, Plaintiff has sought to be compensated for his efforts. Plaintiff has sought to resolve the instant dispute without the need for judicial intervention, but all such efforts by Plaintiff have been futile. As such, Plaintiff is compelled to bring the instant action seek relief for monetary as well as other relief, in connection to claims for *inter alia* breaches of agreement, fraud, and others.

**PARTIES**

5.      At all times hereinafter mentioned, plaintiff Jason Kirschenbaum ("Plaintiff") was and is a resident of the state of New York.

6.      On information and belief, defendant Stephane De Baets ("De Baets") was and is a resident of the State of New York and the principal and chief executive officer of Elevated Returns, LLC. Defendant De Baets controls and/or maintains interests in other corporate entities, including the other corporate defendants named herein.

7.      On information and belief, defendant Elevated Returns, LLC was formed in the State of Delaware, on March 1, 2016 and is a foreign limited liability company licensed to do business in the State of New York, and currently existing under the laws of the State of New York. Defendant Elevated Returns is primarily an asset management company, but also involves itself

Case No. 3:24-cv-01650-MCR-KAS   Document 56   filed 06/09/25   DCUSDC Colorado
pg 132 of 155

in investment banking, mergers and acquisitions, debt/equity financing, advisory management and asset recovery.

## JURISDICTION & VENUE

8.   This Court has personal jurisdiction over the parties pursuant to C.P.L.R. § 301 and § 302.

9.   Venue is proper in New York County pursuant to C.P.L.R. § 501.

## STATEMENT OF RELEVANT FACTS

### *Organizational Structure*

10.   Elevated Returns, LLC is a limited liability company set and currently operating under the laws of the State of Delaware. Pursuant to the limited liability company agreement ("LLC Agreement") of Elevated Returns, LLC, dated October 6, 2014, defendant De Baets is its sole members and holds 100% of its membership interests. A copy of the limited liability company agreement for Elevated Returns, LLC is annexed hereto as <u>Exhibit C</u>.

11.   Mr. Thosapong Jurathavee ("TJ"), a current partner of defendant De Baets and former partner of Plaintiff, acts often and primarily through defendant De Baets, his attorneys or his daughter Ravipan Jaruthavee who, on information and belief, resides in the State of New York. *See* e-mail from defendant De Baets to Plaintiff, dated September 24, 2018, annexed hereto as <u>Exhibit D</u>, wherein defendant De Baets states that TJ owns 60% of Elevated Returns. *See also* a copy of the organizational chart prepared by or at the direction of, defendant De Baets annexed hereto as Exhibit D.

12.   The individual defendants held their interests in the REIT (defined herein), its external asset manager/advisor, ER REITS, LLC a/k/a ER-RE, LLC, and its interests in the St. Regis Aspen Hotel, through a spider web of entities and other wholly owned subsidiaries. *See* the organizational chart attached as <u>Exhibit F</u>.

Case No. 3:24-cv-01650-X-KS-3    Document 56-1    Filed 03/29/25    Page 3 of 33    SDM-Colorado-133
pg 133 of 155

*Initial Meetings re: Partnership Structure and Single Asset REIT*

13.     Towards the end of 2015 and beginning of 2016, Plaintiff approached defendant De Baets with the idea, structure and concept of a single asset real estate investment trust ("REIT").

14.     Plaintiff and defendant De Baets continued to correspond with respect to setting up a REIT, and eventually began meeting at the Mercer Hotel in New York City to discuss implementing Plaintiff's ideas.

15.     During the course of these meetings, Plaintiff and defendant De Baets discussed potential ventures and opportunities, including the idea, concept and structure, proposed by Plaintiff, for the creation of a single asset REIT.

16.     In or around February 2016, Plaintiff met again with defendant De Baets and TJ at the Mercer Hotel to discuss further detail of a single asset REIT, as well as to create a company or companies to be used in connection with other ventures.

17.     Plaintiff had prior experience in the REIT space and had significant and diverse relationships that defendant De Baets and TJ wished to monetize.

18.     Between the property holdings of defendant De Baets and TJ, together with Plaintiff's experience and resources in the financial sector and REIT space, a joint venture ensued.

19.     It was understood that defendant De Baets and TJ were to provide the initial assets in forming the REIT, which consisted of certain hotels.

20.     Plaintiff agreed to coordinate and supervise day-to-day aspects pertaining to the asset, business development, working with legal counsel on SEC filings, advise on sale and marketing strategy of asset, etc.

Case No. 1:24-cv-01659-MKV-SN    Document 56-1    Filed 05/09/25    Page 134 of
pg 134 of 155

21.     Plaintiff and defendant De Baets continued to discuss joint venture interests, and after some back and forth, on or about February 26, 2016, defendant De Baets offered in writing via e-mail a 25% equity position stating:

> For the ongoing business, I can offer 25% equity …my capital partner want 50% so I split my 50% with you. I would say take this as a starting point. we can always renegotiate later.

22.     This resulted in TJ having a 50% equity interest in their joint venture, and defendant De Baets having the remaining 25% equity interests.

23.     Shortly thereafter, Plaintiff and defendant De Baets entered into an oral agreement which also was memorialized in a written agreement, dated March 22, 2016 ("Initial Agreement") and attached hereto as Exhibit G.

24.     The Initial Agreement, amongst other things, provided a compensation structure relative to the creation of a single asset REIT using the Sunset Tower Hotel in Los Angeles, California and other future deals.

25.     It was expressly understood between the parties hereto that the Initial Agreement was centered around the Sunset Tower deal, as that transaction was live at that time, but the Initial Agreement encompassed the terms for future deals, as well.

26.     In fact, the Agreement expressly provides in at least three (3) different provisions that the terms contemplated therein would apply to "future deals".

27.     Pursuant to the terms of their Agreement, Plaintiff was entitled to twenty-five percent (25%) of the founder's equity issued in connection with the formation of an advisor company.

28.     The Agreement follows that the foregoing arrangement will stay in place with future successful deals. Agreement at p. 2.

Case No. 1:24-cv-01659-RDM SESJ Document 55-1 filed 06/09/25 DC USDC Colorado 135 pg 135 of 155

29.    Defendant De Baets confirmed the flexibility and ongoing validity of the parties Agreement irrespective of the underlying asset repeatedly, including in writing by email dated May 24, 2017.

30.    Defendant De Baets also stated in his sworn testimony, "I sold the hotel and in order to bring the experiment to a tangible outcome we decided to replace the underlying asset from the Sunset Tower to the St. Regis Aspen." August 8, 2022, Deposition, 113:10-14.

31.    Defendant De Baets further testified that the Agreement between the parties was never terminated. *Id*., at 133:14-18; 146:2-9.

32.    Plaintiff was instrumental and contributed significantly, including but not limited to the following:

  a.    the creation of the Sunset Tower REIT;

  b.    the creation of the Aspen REIT and creating Aspen Coin;

  c.    the acquisition of a certain interest in Securitize;

  d.    the development of Elevated Returns/ER Global; and

  e.    the capital raise for the acquisition of 21% of Seamico Securities.

33.    As described more fully below, Plaintiff also utilized his relationships to facilitate revenue, opportunities and dealings for defendant De Baets and TJ and their related affiliates.

34.    In addition to the Initial Agreement, the parties entered into additional contracts, including, Purchase Agreement dated October 2, 2018; Series A Preferred Stock Purchase Agreement dated November 2, 2018.

*Sunset Tower Hotel*

35.    For close to one year, Plaintiff expended significant time and effort on the Sunset Tower deal in connection with the formation and listing on the Nasdaq Stock Exchange of a single

asset REIT. The initial listing was "_expected_" to be the Sunset Tower Hotel in Los Angeles, California. _See_ Initial Agreement (annexed hereto as Exhibit G at ¶ 1.

36.     Through a close contact, Plaintiff brought in the law firm of Clifford Chance, LLP to act as counsel in connection with the Sunset Tower REIT and coordinated and assisted in drafting, compiling and coordinating with legal counsel at Clifford Chance with respect to the S-11.

37.     Plaintiff interfaced with the partners, legal counsel and other senior executive personnel; performing due diligence; writing offering memoranda; creating and evaluating term sheets; evaluating acquisition candidates and deal structures; working with investment bankers and commercial bankers; creating different financial models and scenarios; writing board presentations; and evaluating offers and financing options; and supervising due diligence by prospective investors in the company.

38.     In August 2016, Clifford Chance introduced the parties to an individual named Mike Wirth ("Wirth"), who in short order was hired in a part time position as the chief financial officer.

39.     In order to assemble an attractive compensation package to secure Wirth, at the request of defendant De Baets and with the approval of TJ, defendant De Baets requested that Plaintiff relinquish 5% of his 25% equity stake so that it could be included in a compensation package to Wirth.

40.     Defendant De Baets also agreed to reduce his own equity interests by 5% so that he would remain at 20% and equal to Plaintiff.

41.     TJ agreed to relinquish or free up 10% of his equity interests from 50% to 40%.

Case No. 2:24-cv-08653-AB-SK Document 56-1 Filed 09/25 DC US Colo. pub 3287/2019
pg 137 of 155

42.     On or around October 11, 2016, the law firm of Mayer Brown, LLP circulated an e-mail concerning ER-REITS breakdown of the following equity interests: ER 20%, Jason [Kirschenbaum] 20% and Mike [Wirth] 20%. In addition, on September 28, 2017, defendant De Baets confirmed Plaintiff's 20% interests in an email to Plaintiff. See e-mail, dated September 28, 2017, annexed hereto as <u>Exhibit H</u>. Upon Wirth's departure from ER, consistent with the parties' understanding, Plaintiff's equity stake reverted to 25%.

43.     In January 2017, Jeff Klein, owner of Sunset Tower Hotel in West Hollywood, California decided not to go public and list on an exchange. Although the Sunset Deal did not close as initially planned in March 2017, the Sunset Tower Hotel sold for approximately $95 million (USD).

44.     Despite TJ's representations to the Court to the contrary with respect to jurisdiction and his business activities, defendant TJ had purchased an 80% stake in the Sunset Tower Hotel, which he sold for roughly $100 million. *See* LA Business Journal Article, dated June 2, 2017 attached hereto as <u>Exhibit I</u>.

45.     Defendant De Baets paid Plaintiff $20,000 from the closing of the Sunset Tower Deal and stated to Plaintiff in an e-mail, dated May 24, 2017, that he [Plaintiff] would be paid well on their other future dealings, such as Aspen REIT.

46.     As seen in his email to Plaintiff, defendant De Baets made clear that Plaintiff would be entitled and should expect to receive significantly more money once the REIT is launched. **In fact, defendant De Baets states that the payment in the amount of $20,000 was simply "play money".** The real money would come in from the REIT. **As such, he instructed Plaintiff "[A]ll eyes on Aspen now"** and to keep working on the launch of the Aspen REIT.

INDEX NO. 653287/2019

RECEIVED NYSCEF: 11/29/2020

47.     Plaintiff relied on defendant De Baet's assurances and clear message that their partnership was very much intact and continued to expend time, efforts and money towards the original objective: the listing of a single asset REIT.

48.     Plaintiff continued to expend his resources on their joint venture and defendant De Baets and TJ knew that he continued to do so, but did not inform Plaintiff that any of the terms of their Initial Agreement had changed or that it was terminated. To the contrary, defendant De Baets and TJ, but certainly defendant De Baets, deliberately led Plaintiff to believe that their partnership or fee structure as contemplated under the Initial Agreement was fully intact.

### *St. Regis Aspen REIT (Aspen REIT)*

49.     In or around September 2010, defendant De Baets, via an entity under his direction and control, 315 East Dean acquired the 179 room St. Regis Aspen Hotel ("Aspen Hotel") for $70 million (USD). The Aspen Hotel is currently managed by ER-RE, LLC f/k/a ER REITS, LLC, the asset management arm of Elevated Returns, LLC.

50.     After the Sunset Tower deal changed direction and TJ opted to sell his interests in the Sunset Tower Hotel instead of listing as an IPO on an exchange, defendant De Baets chose to refocus his efforts and use the Aspen Hotel instead as the underlying real estate for the single asset REIT.

51.     Because the Sunset Tower REIT simply changed names, Defendants had the unique advantage and ability to move quickly in their efforts and launch a single-asset REIT. The whitepaper and the filings with the Security and Exchange Commission (SEC) for Aspen Coin were essentially the same whitepaper and SEC filings in connection to Aspen REIT.

52.     Notably, **Aspen REIT, Inc., as well as Aspen Digital, Inc. were one of the same; they were the simple evolution of Sunset Tower REIT, Inc.** Aspen REIT, Inc. and Aspen

Case No. 3134-6636659-FDHSKAS3 Document 56-1 Filed 08/29/25 DUSDC Colorado pg 139 of 155
pg 139 of 155

Digital, Inc. were formerly known as Sunset Tower REIT, Inc. *See* Form D filed with the SEC, annexed hereto as <u>Exhibit J</u>, wherein defendant De Baets changed the name from Sunset Tower REIT, Inc. to Aspen REIT, Inc. to Aspen Digital, Inc.

53.     In middle of November 2017, Aspen REIT, a single asset real estate investment trust, filed with the SEC a Regulation A+ initial public offering to raise approximately $33.5 million in gross proceeds.

54.     There was no reason to think that the arrangements and understandings contemplated under the Initial Agreement and that were subsequently reaffirmed between the parties, both orally and in writing, continued between the parties.

55.     As far as the parties were concerned, and as evidenced by the filings with the SEC, the Sunset Tower Hotel REIT simply changed its name and morphed into other single-asset REIT without any materials changes in the whitepaper or security submissions.

56.     In January 2018, and after re-filing, the SEC fully approved Aspen REIT as a Single Asset REIT.

57.     The IPO appeared set to proceed by the end of February 2018, but Elevated Returns abruptly canceled the sale on February 26, ostensibly in an effort to retool. It became apparent that defendant De Baets tanked the listing seemingly for the sole purpose of depriving Plaintiff from any renumeration due him as a member of Aspen REIT, and in an effort to restructure and evade his obligations to Plaintiff.

58.     Despite the IPO being shelved, the law firm of Clifford Chance continued to work on the St. Regis Aspen REIT and the related St. Regis Aspen Coin projects (collectively "Aspen Digital"). Plaintiff also continued to work on the REIT and Aspen Digital and continued to rely on the representations by defendant De Baets.

Case No. 1:24-cv-01955-AS Document 56-1 Filed 09/25/25 Page 140 of 155
pg 140ob155

59.     Throughout this process, defendant De Baets constantly reaffirmed his promises to Plaintiff both verbally and in writing to assure him that their structure was still intact and he (Plaintiff) would remain a partner in their ventures.

60.     For example, in April 2018, defendant De Baets confirmed Plaintiff as a partner ER Global and writes in an e-mail "[**P]lease add jason as co-founder too.** Lets also pin down a call about who gets what. The sooner the better." *See* e-mail sent by defendant De Baets, dated April 17, 2018, annexed hereto as <u>Exhibit K</u>.

61.     During this time Plaintiff divided his time amongst other projects under the ER umbrella, but still continued to work and create whitepaper, private placement memorandum and a deck for Aspen Coin - shares in the St. Regis -- that were to be denominated not in bitcoin but in a special securitized token created specifically for the hotel's sale, known as Aspen Coin.

62.     In July of 2018, the private placement memorandum for Aspen Coin was completed, and the parties sought to raise $18 million (USD) for a 19% interest of the St. Regis Aspen hotel.

63.     In or around October of 2018, defendant De Baets led Plaintiff to believe that (i) they could not close the Aspen Coin deal if Plaintiff didn't contribute to the deal, and (ii) defendants TJ and East Dean would not contribute to this venture if Plaintiff did not believe in its viability and contribute as well. *See* e-mail ("Very disappointing") from defendant De Baets to Plaintiff, dated September 24, 2018, annexed hereto as <u>Exhibit D</u>.

64.     Plaintiff also understood clearly from defendant De Baets' representations that in the event they were unable to successfully complete the raise, Plaintiff's equity interests and monetary as well as non-monetary investments would be worthless and he would lose his interests in their venture.

Case No. 1:24-cv-01467-RA Document 60-3 Filed 06/09/25 DCUSDC Colorado
pg 141 of 155

65. As such, Plaintiff relied on the foregoing representations made to him by defendant De Baets, and on or around October 4, 2018, Plaintiff wired a total amount of approximately $1,360,000 in an effort to launch the REIT.

66. In October 2018, Aspen Coin closed at the full $18 million (USD). TJ and defendant East Dean contributed $9 million dollars; defendant De Baets contributed $1.27 million (USD), and Plaintiff contributed over $1.36 million (USD).

67. Defendant De Baets shook Plaintiff's hands and re-affirmed their partnership.

### Securitize and Seamico and Other Ventures

68. Plaintiff was instrumental in the capital raises for the acquisition of a certain interests in Securitize and Seamico, which are both considered under the ER umbrella, as well as other ventures.

69. Subsequent to the successful raise for Aspen Coin, the parties were introduced to a company known as Securitize, which provided a compliance platform and protocol for digitizing securities in the blockchain.

70. In November 2018, Securitize, a company led by Jaimie Finn and Carlos Domingo, entered into a Series A Preferred Stock Purchase Agreement ("Transaction"), whereby in exchange for One Million Dollars ($1,000,000) paid collectively by Plaintiff, and his former partners, defendant Stephane De Baets and Mr. Thosapong Jurathavee, defendant Elevated Returns, LLC received in exchange Series A Preferred Stock at a par value of $.00001 per share interests in Securitize.

71. On November 8, 2018, defendant De Baets sent Plaintiff a text message informing him that he needed to pay for his investment in Securitize with his digital currency in the form of Aspen Coin.

Case No. 3:24-cv-01602-AJB-SBC   Document 50-1   Filed 03/28/25   USDC Colorado
pg 142 of 155

72.     Plaintiff's investment, the sum of Three Hundred and Thirty-Three Thousand Dollars ($333,000) ("Investment") was his 1/3 share of the total One Million Dollar ($1,000,000) fee ("Fee") that was earned by Plaintiff and his former partners, Stephane De Baets and Thosapong Jurathavee in connection to raise done on behalf of Aspen Coin.

73.     Instead of Plaintiff being paid out his share of the Fee, Plaintiff agreed to invest his share of the Fee in the form of digital currency (Aspen Coin), together with his former partners investment in the same form of digital currency, into Securitize.

74.     Plaintiff's investment of significant monies in both Securitize and Aspen Coin guaranteed the success of the Aspen Coin venture. Plaintiff's contributions were material to the creation and success of the St. Regis Aspen REIT and Aspen Coin.

75.     On information and belief, the investment in Securitize was made by Elevated Returns.

76.     However, unbeknownst to Plaintiff, in or around July 2020, Securitize elected to terminate the Transaction and returned the sum of One Million Dollars ($1,000,000) to defendant, via an entity known as 315 East Dean Associates, Inc. Attached hereto as <u>Exhibit L</u> is a copy of the executed Transfer Request Form.

77.     315 East Dean Associates, Inc., is an entity believed to be under the direction and control of defendant and Mr. Thosapong Jurathavee.

78.     The redemption of shares in Securitize and return of funds in connection therewith, included Plaintiff's Investment.

79.     While Plaintiff has made demands for the return of his Investment, to date, he has not received his Investment or any portion thereof.

Case No. 1:24-cv-01650-DEH-GS Document 54-1 Filed 03/29/25 DC USDC Colorado pg 143 of 155

80. Moreover, despite counsel for Defendants assurances that Plaintiff "retains his investments" in Securitize, Plaintiff recently discovered that his Investment was in fact not retained by Securitize, as his Investment was redeemed by defendant, and Plaintiff's monies were sent to defendant Stephane De Baets via his entity known as 315 East Dean Associates, LLC. See letter dated March 26, 2019 annexed hereto as Exhibit M.

81. To date, Defendants have failed to make any distributions from the monies invested with Securitize or his other investments with his partners, and has denied Plaintiff the ability to liquidate or redeem his interests in same.

### *Current Status*

82. Plaintiff's efforts and ideas caused defendant De Baets and TJ to realize significant profits and caused defendant De Baets and TJ to successfully launch a single asset REIT, ultimately known as Aspen Digital Token, using the St. Regis Aspen Hotel.

83. Based on a recent estimation, ER Global has a current pre-money valuation of $40 million (USD).

84. As such, Plaintiff's 25% share equates to (at the very least) $10 million (USD).

85. Plaintiff has attempted to resolve this dispute without the need for litigation, however, to date, Defendants have refused to make any substantial attempt to settle the disputes outlined herein.

## **FIRST CAUSE OF ACTION**

### **Breach of Contract**

86. Plaintiff repeats and re-alleges each of the allegations contained in paragraphs 1 through 86 above as if more fully set forth at length herein.

87. Plaintiff and defendants entered into a lawful and enforceable agreements.

Case No. 3:24-cv-01650-CRB-SK Document 56-1 Filed 06/09/25 Page 144 of 155
pg 144 of 155

88.     Plaintiff has fully performed all of the obligations required to be performed by him.

89.     By reason of the foregoing, Defendants have breached the agreements with Plaintiff, and continue to breach same by inter alia failing to make requisite distributions or provide an accounting.

90.     By reason of the foregoing, Plaintiff is entitled to damages in an amount to be determined but not less than $1.36m.

## SECOND CAUSE OF ACTION

### Unjust Enrichment

87.     Defendants have been unjustly enriched by the renumeration they retained for themselves, which was due solely to Plaintiff's actions.

83.     To date, Defendants have failed and refused to compensate Plaintiff any part of the outstanding balance to which Plaintiff is entitled, but have nevertheless retained and continue to enjoy the benefit bestowed upon them by Plaintiff's actions.

84.     By reason of the foregoing, Plaintiff is entitled to damages in an amount to be determined at trial of this matter.

## THIRD CAUSE OF ACTION

### Fraud

85.     Plaintiff repeats and realleges each of the allegations as if more fully set forth at length herein.

Case No. 3:24-cv-01650-RAM-SCC   Document 56-1   Filed 08/29/25   DC03   Doc. No. 54287/2019
pg 145 of 155

86.     In or around September 2018, Defendant De Baets represented to Plaintiff that he needed certain funds for the Securitize transaction, as he "had no choice, but to monetize this deal, one way or another".

87.     Plaintiff relied on defendant De Baets' representations and was induced by defendant De Baets to invest a sum of $333,000 into Securitize alongside his former partners.

88.     On information and belief, despite the representations made by defendant De Baets and assurances made by counsel for defendant De Baets Plaintiff's funds were never invested into Securitize on his behalf.

89.     Plaintiff recently discovered that the funds invested by him were returned to defendant De Baets.

90.     Defendant De Baets and/or his counsel knowingly omitted making such disclosures to Plaintiff, and misrepresented certain material facts, including the whereabout of Plaintiff's Investment to Plaintiff.

91. Plaintiff relied on defendant's misrepresentations and as a result has been damaged in an amount to be determined at trial, but no event in an amount of less than Three Hundred and Thirty Three Thousand Dollars ($333,000).

## FOURTH CAUSE OF ACTION

### Conversion
### -Pled In The Alternative-

92.     Plaintiff repeats and realleges each of the allegations as if more fully set forth at length herein.

93.     A portion of the funds transferred to 315 East Dean Associates, LLC, from Securitize, did not belong to Defendants, but, rather, belonged to Plaintiff.

Case No. 1:24-cv-01659-RJK-KS    Document 50-1    filed 03/29/25    USDC Colorado
pg 146 of 155

94.     Defendants committed the wrongful acts described herein without authority to do so.

95.     Defendants committed these acts intentionally and without Plaintiffs' knowledge and has interfered with Plaintiffs' rights to possess the converted funds.

96.     By reason of the foregoing, Plaintiff has been damaged in an amount to be determined at trial.

## **CONCLUSION**

**WHEREFORE**, Plaintiff, Jason Kirschenbaum, demands judgment against the defendants named hereinabove for damages in an amount to be determined at trial of this matter, together with reasonable attorney's fees, the costs and disbursements of this action and such other, further and/or different relief as the Court deems just and proper.

Dated: Cedarhurst, New York
        November 29, 2023

                    **GULKO SCHWED LLP**

                    By:      /s Asher Gulko

                             ASHER GULKO, ESQ.
                             44 Wall Street, Second Floor
                             New York, New York 10005
                             T: 212.500.1312 / F: 212.678.0405
                             *Attorneys for Plaintiff*

Case No. 1:24-cv-01950-PAE-SDA   Document 50-8   Filed 06/03/25   Page 147/2019

pg 147 of 155

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK:  COMMERCIAL DIVISION PART 53

-----------------------------------------------------------------------------------X

JASON KIRSCHENBAUM,

| | |
|---|---|
| **INDEX NO.** | 653287/2019 |

Plaintiff,

| | |
|---|---|
| **MOTION DATE** | 11/29/2023 |

- v -

| | |
|---|---|
| **MOTION SEQ. NO.** | 009 |

STEPHANE DE BAETS, THOSAPONG JURUTHAVEE, ELEVATED RETURNS, LLC,315 EAST DEAN ASSOCIATES, INC.,ASPEN DIGITAL, INC.,ER MERRY WAY LP, ER GLOBAL, LLC,JOHN DOES 1-10,

**DECISION + ORDER ON MOTION**

Defendant.

-----------------------------------------------------------------------------------X

HON. ANDREW BORROK:

The following e-filed documents, listed by NYSCEF document number (Motion 009) 236, 237, 238, 239, 240, 241, 242, 243, 244, 245, 246

were read on this motion to/for                    AMEND CAPTION/PLEADINGS                    .

Upon the foregoing documents, Plaintiff's motion for leave to amend or in the alternative for

reargument/renewal is denied.

This case was first filed in 2019, and Mr. Kirschenbaum's theory of the case has gone through a

number of different iterations and pleadings.  By decision and order dated October 16, 2020, the

Court dismissed all of Plaintiff's claims except one, his claim sounding in unjust enrichment

(NYSCEF Doc. No. 68).  After discovery, by decision and order dated October 30, 2023, the

Court granted the Defendant's motion seeking summary judgment and dismissal of the claim for

unjust enrichment (NYSCEF Doc. No. 228).  Thus, this case has been disposed and there is no

complaint left to amend (*Jeffrey L. Rosenberg & Assocs., LLC. v. Kadem Cap. Mgmt., Inc.*, 306

A.D.2d 155, 156 [1st Dept 2003] ["Plaintiffs' complaint having been previously dismissed on

**653287/2019   KIRSCHENBAUM, JASON vs. DE BAETS, STEPHANE**
**Motion No.  009**

Page 1 of 4

EXHIBIT H

Case No. 1:24-cv-01950-AKH   Document 50-51   Filed 03/29/25   USDC Colorado   pg 148 of 155
pg 148 of 155

summary judgment in a prior, unappealed order, there was no basis for a motion for its amendment; there was no complaint left before the court to amend."]).

Plaintiff's request in the alternative for reargument is also denied.  A motion to reargue must be based upon matters of law or fact allegedly overlooked or misapprehended by the court in determining the prior motion (CPLR 2221[d]; *Pezhman v Chanel, Inc.*, 126 AD3d 497, 497 [1st Dept 2015]).  Plaintiff fails to point to any matter of law or fact this Court overlooked or misapprehended.  Plaintiff argues that the existence of several contracts governing the transactions he entered into with Defendants presents an issue of fact warranting reargument and denial of Defendant's motion for summary judgment.  But the Court knew of and expressly relied on the existence of these contracts in granting the Defendant's motion seeking summary judgment.  Discovery has revealed that the parties' relationships were governed by specific agreements and that there are no issues of fact that these agreements were not violated and that the Plaintiff is not otherwise entitled to relief based on a claim for unjust enrichment.  As discussed in the October 20, 2020 decision and order, Plaintiff's investment in the ASPEN REIT was governed by a March 22, 2016 Letter Agreement, under which Plaintiff would have been compensated with 50% of any advisory fee paid to the advisory company, and 25% equity in the advisory company, upon a successful listing of the REIT on NASDAQ, which never occurred (NYSCEF Doc. No. 68 at 17).  Following this, Plaintiff was compensated as a W-2 employee (NYSCEF Doc. No. 166).  As discussed in the October 30, 2023 decision and order, Plaintiff's claims relating to the $1.36 million investment in Aspen Coin and an alleged one-third interest in a $1 million investment in Securitize were also governed by contract, namely an October 2, 2018 Purchase Agreement and a November 2, 2018 Stock Purchase Agreement, respectively

FILED: NEW YORK COUNTY CLERK 02/26/2024 02:18 PM
NYSCEF DOC. NO. 247
RECEIVED NYSCEF: 02/22/2024

Case No. 1:24-cv-01950 Document 50-1 filed 06/03/25 USDC Colorado pg 149 of 155

(NYSCEF Doc. No. 228 at 5-6).   This Court found Plaintiff did not produce any evidence indicating he is entitled to payment from Defendants pursuant to these latter two contracts sufficient to raise an issue of triable fact.  In particular, the Court found Plaintiff failed to adduce any evidence in support of his allegation as to any possessory interest in the funds invested in Securitize (NYSCEF Doc. No. 228 at 2-3) that raised a triable issue of fact.  Plaintiff fails to point to any evidence indicating Plaintiff was due such a payment that the Court did not consider or misapprehended.

For the avoidance of doubt, the Court notes that Plaintiff's proposed breach of contract claim alleging Defendants owe Plaintiff $1.36 million, apparently pursuant to his investment in Aspen Coin, would nevertheless be unavailing, because Plaintiff's proposed Third Amended Complaint (NYSCEF Doc. No. 243) fails to allege Defendants committed any specific breach of the October 2, 2018 Purchase Agreement, or that Defendants have any control or custody over these funds.  As to Plaintiff's claim to the one-third portion of an alleged $1 million fee paid out to Defendants, Plaintiff's proposed Third Amended Complaint sues for these funds on the basis of fraud, not breach of contract (NYSCEF Doc. No. 243, ¶¶ 85-91).  The Court dismissed this same fraud claim in its October 16, 2020 decision and order, and denied Plaintiff leave to amend to renew this claim post-discovery in its October 30, 2023 decision and order, finding the claim still subject to the same infirmities that warranted its dismissal.  Plaintiff has made no effort to fix these infirmities pursuant to this motion.  To the extent Plaintiff seeks leave to amend to bring a breach of contract claim on the purported one-third fee (and it is not clear he does), this too fails because Plaintiff has not produced evidence showing he is even a party to the November 2, 2018 Stock Purchase Agreement or that he contributed any funds to Defendants' investment in

**653287/2019   KIRSCHENBAUM, JASON vs. DE BAETS, STEPHANE**          Page 3 of 4
**Motion No.  009**

Case No. 1:24-cv-01659-DLC Document 50 Filed 06/03/25 Page 150 of 155
pg 150 of 155

Securitize under that Agreement such that he is entitled to any payment pursuant to that Agreement. Thus, this Agreement does not provide Plaintiff and ground for relief and such a claim is palpably insufficient as a matter of law and it does not matter that monies invested in Securitize were returned.

Plaintiff indicated at oral argument (2.20.24) that the Court should exercise its discretion to consider the instant motion for reargument as one for renewal. Pursuant to CPLR 2221(e)(2), a motion for leave to renew must be based on new facts not offered on the prior motion that would change the prior determination, or on a demonstration that there has been a change in the law that would change the prior determination. The Plaintiff fails to point to any new facts or change in the law that would change this Court's prior ruling. Thus, the motion is denied.

20240222164437AD0RR0K11AE771E63FD16E18317270A00BB9B91

| _____2/22/2024_____ | | | | | _____ |
| DATE | | | | | ANDREW BORROK, J.S.C. |

| CHECK ONE: | [X] | CASE DISPOSED | | [ ] | NON-FINAL DISPOSITION | |
| | [ ] | GRANTED | [X] DENIED | [ ] | GRANTED IN PART | [ ] OTHER |
| APPLICATION: | [ ] | SETTLE ORDER | | [ ] | SUBMIT ORDER | |
| CHECK IF APPROPRIATE: | [ ] | INCLUDES TRANSFER/REASSIGN | | [ ] | FIDUCIARY APPOINTMENT | [ ] REFERENCE |

653287/2019   KIRSCHENBAUM, JASON vs. DE BAETS, STEPHANE                    Page 4 of 4
Motion No.  009

At IAS Part 53 of the Supreme Court of the
State of New York held in and for the
County of New York, at the Courthouse at
60 Centre Street, New York, New York, on
the _____ day of _____, 2024

P R E S E N T:

        Hon. Andrew Borrok, J.S.C.

------------------------------------------------------------------X

JASON KIRSCHENBAUM,                :

                  Plaintiff,     :     Index No. 653287/2019

        - against -         :

                       :     **[PROPOSED] JUDGMENT**

STEPHANE DE BAETS, THOSAPONG   :

JURUTHAVEE, ELEVATED RETURNS, LLC, 315 :

EAST DEAN ASSOCIATES INC., ASPEN    :

DIGITAL INC., ER MERRY WAY LP, ER    :

GLOBAL, LLC and JOHN DOES 1-10     :

                       :

                Defendants.   :

------------------------------------------------------------------X

       Plaintiff Jason Kirschenbaum having commenced this action by filing of a summons and

complaint on June 5, 2019 (NYSCEF Doc. Nos. 1-3); and

       Defendants Stephane De Baets, Elevated Returns, LLC, 315 East Dean Associates, Inc.,

Aspen Digital, Inc., ER Merry Way LP, and ER Global, LLC having moved on August 12, 2019,

for an order pursuant to CPLR 3211 dismissing the complaint for failure to state a cause of

action and upon documentary evidence ("Motion Sequence No. 1," NYSCEF Doc. Nos. 13-19);

and

       Defendant Thosapong Jaruthavee having moved on August 12, 2019, for an order

pursuant to CPLR 301 and 302 dismissing the complaint for lack of personal jurisdiction and

pursuant to CPLR 3211 dismissing the complaint for failure to state a cause of action ("Motion

Sequence No. 2," NYSCEF Doc. Nos. 20-25); and

       Plaintiff having filed an Amended Complaint on September 24, 2019 (NYSCEF Doc.

EXHIBIT I

Nos. 30-32) and having opposed Motion Sequences Nos. 1 and 2 (NYSCEF Doc. Nos. 33-34); and

Defendants having, in reply to Plaintiff's opposition, requested pursuant to applicable authority that the Court include the Amended Complaint in the record on Motion Sequences Nos. 1 and 2 (NYSCEF Doc. Nos. 37-40); and

At an oral argument on February 26, 2020, this Court having authorized Defendant Thosapong Jaruthavee to supplement the record on Motion Sequence No. 2 and Plaintiff to submit further opposition to Motion Sequences. Nos. 1 and 2 (NYSCEF Doc. No. 42); and

Defendant Thosapong Jaruthavee having submitted supplemental documentary evidence in support of Motion Sequence No. 2 (NYSCEF Doc. Nos. 43-49); and

Plaintiff having cross-moved on June 12, 2020, for leave to file a Second Amended Complaint (the "Cross-Motion") and having further opposed Motion Sequences Nos. 1 and 2 (NYSCEF Doc. Nos. 52-62); and

This Court having issued a Decision and Order (NYSCEF Doc. No. 68) on October 16, 2020, granting Motion Sequence No. 1 to the extent of dismissing the Complaint and Amended Complaint as to Plaintiff's first cause of action for fraud, second cause of action for conversion, third cause of action for breach of fiduciary duty, fourth cause of action for breach of the covenant of good faith and fair dealing, sixth cause of action for quantum meruit, seventh cause of action for an accounting, and eighth cause of action for a declaratory judgment without prejudice as to all defendants, granting Motion Sequence No. 2 to the extent of dismissing the Complaint and Amended Complaint as against Defendant Thosapong Jaruthavee for lack of personal jurisdiction pursuant to CPLR 301 and 302, and granting the Cross-Motion to the extent of permitting Plaintiff to file a Second Amended Complaint as against all defendants other than

Thosapong Jaruthavee asserting a single claim for unjust enrichment; and

Plaintiff having filed a Second Amended Complaint on October 26, 2020, and having filed a corrected version of the Second Amended Complaint on November 24, 2020 (NYSCEF Doc. Nos. 70-81); and

Defendants Stephane De Baets, Thosapong Juruthavee, Elevated Returns, LLC, 315 East Dean Associates Inc., Aspen Digital Inc., ER Merry Way LP, and ER Global, LLC having moved on January 4, 2021 for an order pursuant to CPLR 3211 dismissing the Second Amended Complaint for failure to state a cause of action and upon documentary evidence ("Motion Sequence No. 3," NYSCEF Doc. Nos. 88-99), and Plaintiff having opposed the motion (NYSCEF Doc. No. 101), and Defendants having replied in further support of the motion (NYSCEF Doc. No. 102); and

This Court having issued a Decision and Order (NYSCEF Doc. No. 103, amended at NYSCEF Doc. No. 104), granting Motion Sequence No. 3 to the extent of dismissing the Second Amended Complaint in its entirety, with costs and disbursements to be taxed by the Clerk of Court, as to Defendants 315 East Dean Associates, Inc., Aspen Digital, Inc., ER Merry Way LP, ER Global, LLC, and John Does 1-10, and dismissing the Second Amended Complaint as against Defendants Stephane De Baets and Elevated Returns, LLC except for the claim for unjust enrichment; and

Defendants Stephane De Baets and Elevated Returns, LLC having answered the remaining allegations of the Second Amended Complaint on October 25, 2021 (NYSCEF Doc. No. 105); and

Plaintiff having moved on February 28, 2023, for leave to serve a Third Amended Complaint (NYSCEF Doc. Nos. 148-152), and Plaintiff having withdrawn that motion on March

8, 2023 (NYSCEF Doc. No. 153); and

Plaintiff having moved on March 8, 2023, for leave to serve a Third Amended Complaint ("Motion Sequence No. 6," NYSCEF Doc. Nos. 154-158), and Defendants Stephane De Baets and Elevated Returns, LLC having opposed the motion (NYSCEF Doc. Nos. 183-190); and

Defendants Stephane De Baets and Elevated Returns, LLC having moved on July 21, 2023, for an order pursuant to CPLR 3212 granting them summary judgment of dismissal against Plaintiff Jason Kirschenbaum (the "Summary Judgment Motion," NYSCEF Doc. Nos. 162-182, 191, 195), and Plaintiff Jason Kirschenbaum having opposed the Summary Judgment Motion (NYSCEF Doc. Nos. 196-212), and Defendants having replied in further support of the Summary Judgment Motion (NYSCEF Doc Nos. 216-224); and

The Parties having engaged in discovery proceedings, and Plaintiff having filed a Note of Issue and Certificate of Readiness on August 31, 2023, certifying that discovery proceedings were completed (NYSCEF Doc. No. 197); and

Defendants Stephane De Baets and Elevated Returns, LLC, having moved on September 15, 2023, for leave to file under seal an exhibit submitted in further support of the Summary Judgment Motion (the "Sealing Motion," NYSCEF Doc. Nos. 214-216); and

This Court having issued an order, dated October 30, 2023, denying Motion Sequence No. 6 in full, granting the Summary Judgment Motion in full, and granting the Sealing Motion in full (NYSCEF Doc. No. 227-229);

NOW, on motion of Offit Kurman, P.A., attorneys for defendants, it is hereby

ORDERED, ADJUDGED AND DECREED, that this action be, and the same hereby is, is dismissed with prejudice as against all defendants; and it is further

ORDERED, ADJUDGED AND DECREED that Plaintiff be taxed the costs and

disbursements of this action comprising the sum of $____ in accordance with the annexed bill of costs.

<div align="center">E N T E R</div>

<div align="right">_____</div>

<div align="right">_____ J.S.C.</div>

4890-7984-4289, v. 2