1          IN THE UNITED STATES DISTRICT COURT

2            FOR THE DISTRICT OF COLORADO

3   Civil Action No. 24-cv-01950-CNS-KAS

4

5    JASON KIRSCHENBAUM,

6         Plaintiff,

7         vs.

8    STEPHANE DE BAETS, et al.,

9         Defendants.

10  ------------------------------------------------------------

11                  REPORTER'S TRANSCRIPT
                      Oral Argument
12
    ------------------------------------------------------------
13
    Proceedings before the HONORABLE CHARLOTTE N. SWEENEY, Judge,
14   United States District Court for the District of Colorado,
    commencing on the 30th day of June, 2025, in Courtroom A-702,
15          United States Courthouse, Denver, Colorado.

16                      APPEARANCES

17  For the Plaintiff:
    ASHER GULKO, Gulko Schwed LLP, 525 Chestnut St., Ste. 212,
18  Cedarhurst, NY 11516

19  For the Defendants:
    ALEXANDER MIRKIN, Offit Kurman PA, 590 Madison Ave., 6th
20  Floor, New York, NY 10022

21  CHRISTOPHER D. BRYAN, Garfield & Hecht, PC, 625 East Hyman
    Ave., Ste. 201, Aspen, CO 81601
22

23

24

25      Sarah K. Mitchell, RPR, CRR, 901 19th Street, Room A252,
             Denver, CO 80294, 303-335-2108
        Proceedings reported by mechanical stenography;
             transcription produced via computer.

EXHIBIT 1

```
1              *        *        *        *        *
```

2        (The proceedings commenced at 8:59 a.m.)

3              THE COURT:  We are here in 24-cv-1950, Jason

4    Kirschenbaum v. Stephane -- how do you say your client's last

5    name?

6              MR. GULKO:  De Baets.

7              THE COURT:  De Baets, Elevated Returns, et al.

8              May I have entries of appearance, please.

9              MR. GULKO:  Good morning, Your Honor.  Asher Gulko,

10   Gulko Schwed LLP, 40 Wall Street, 60th Floor, New York, New

11   York, here for plaintiff.

12             THE COURT:  Good morning.

13             MR. BRYAN:  Good morning, Your Honor.  Christopher D.

14   Bryan, Garfield & Hecht, Aspen, Colorado, on behalf of

15   defendants.  I'm joined at counsel's table --

16             MR. MIRKIN:  Alexander Mirkin -- good morning, Your

17   Honor -- Offit Kurman, 590 Madison, New York, New York, here

18   for defendants as well.

19             THE COURT:  Good morning.  We are here on the motion

20   to dismiss that was filed by five of the defendants, De Beats,

21   Elevated Returns, 315 East Dean Associates Inc., ER Merry Way

22   LP and Aspen Digital Inc.  Before we hear argument on that

23   motion to dismiss which is at ECF 50, let me just ask, I did

24   see I think on Friday two of the other defendants filed a

25   motion to dismiss.  I believe that just leaves ER Global out

1    there; is that correct?

2         MR. MIRKIN:  Your Honor, ER Global submitted a notice

3    of joinder.

4         THE COURT:  Okay.  To this motion?

5         MR. MIRKIN:  To this motion.

6         THE COURT:  Okay.  I didn't see that.  All right.  So

7    it looked on first blush, the one filed on Friday is largely a

8    challenge to personal jurisdiction, but we will deal with that

9    at a later date most likely.  So with that, let me -- we're

10   going to hear argument.  Obviously one thing I want to hear

11   fairly immediately about is whether -- it appears the New York

12   court entered judgment now in March -- has there been an

13   appeal of that?  But then I'll just let defendant go ahead and

14   present argument, knowing that I've read the briefing, but

15   some supplement on the facts, particularly kind of the claims

16   at issue in that New York case might warrant some more

17   details.

18        MR. MIRKIN:  Your Honor, no appeal was filed.  The

19   New York judgment has been paid.

20        THE COURT:  Okay.  All right.  That's helpful.  And

21   I'll have you present argument, but will you go to the podium.

22   Our microphone there is a little better, whoever is presenting

23   argument.

24        MR. BRYAN:  Yes, Your Honor.  I presume you don't

25   want us to tag-team, so we should select -- and I understand

 1  you want us to talk in some detail about the New York

 2  litigation?

 3          THE COURT:  Exactly.  You're pawning that off is what

 4  that looked like.

 5          MR. BRYAN:  My colleague and I spoke about this last

 6  night, and we drew straws, so there we go.

 7          THE COURT:  Okay.  I don't have a problem with other

 8  counsel supplementing to the extent necessary if there's some

 9  area you have more information about, but we'll proceed as is.

10  Go ahead.

11          MR. MIRKIN:  Good morning, Your Honor.

12          THE COURT:  Good morning.

13          MR. MIRKIN:  This case has been pending since -- in

14  New York it was first filed in 2019, and it's been

15  through three complaints, plus two rejected complaints.  So

16  the allegations have varied to some extent, but the story of

17  the case has been the same more or less.  Mr. Kirschenbaum and

18  Mr. De Baets entered into an agreement back in 2016 in

19  connection with the formation of what's known as an advisory

20  company incident to the listing on the NASDAQ of a single

21  asset REIT that was initially to be based on the real estate

22  in the Sunset Tower Hotel.

23          There's some discussion about whether it's the same

24  project or a later project where that asset was sub'd for the

25  St. Regis Hotel in Aspen.  At no point was that listing ever

1   successful in the sense that there was never a single asset

2   reformed, and there was no listing on NASDAQ.  That was

3   essentially the beginning and end of the central argument in

4   New York.

5        There was a secondary issue in New York about an

6   investment in Securitize which is alleged to have come from

7   some fee that was paid by -- paid to some group in which

8   plaintiff claims to have had an interest.  Again, there was no

9   connection to establish in New York to plaintiff -- between

10  plaintiff and that fee, and that's what the New York Court

11  held.  The Court in New York held that all the claims having

12  to do with the original listing agreement were dismissed

13  because by the terms of that agreement there was no breach.

14       The Court held there was no breach shown of the

15  agreement for Securitize, of the fee agreement, because there

16  was no connection to plaintiff, and the Court didn't find a

17  breach of the investment agreement by which plaintiff invested

18  in Aspen Digital on its own.

19       And here we can pause for a second and talk about

20  that investment, because after the single asset REIT idea

21  failed, the parties switched gears into a different model with

22  a Securitize digital token offering supporting that

23  investment.  That offering wasn't made on NASDAQ.  It didn't

24  involve a REIT.  It was a separate investment product in which

25  plaintiff invested pursuant to a contract and his investment

1    remains pursuant to a contract.  Now, that's what the New York

2    court held.

3           So practically speaking, plaintiff asserted claims

4    for breach of contract, for declaratory judgment as to these

5    same assets, for fraud as to these investments, and as to the

6    Securitize fee as to the investment to Aspen Digital for

7    conversion.  He asserted the same claims that he's asserting

8    here, in other words, and those claims were all dismissed at

9    various stages by the New York court either in a motion to

10   dismiss or in a motion for summary judgment.

11          Judgment was ultimately entered, judgment was paid.

12   The dismissal was with prejudice.  The dismissal covers all

13   claims that could have been brought under these facts, and

14   there are no facts alleged as to any of plaintiff's state law

15   claims that weren't alleged in New York, that weren't

16   considered by the Court in New York.  It's the same

17   transaction.

18          THE COURT:  All right.  Now, plaintiff seems to argue

19   really except for the unjust enrichment claim, there was no

20   finding on the merits, if you will, but the other claims were

21   all dismissed without prejudice.  What is the response to

22   that?

23          MR. MIRKIN:  There are two responses, Your Honor.

24   The first response is that under New York law a dismissal in a

25   motion to dismiss -- on a motion to dismiss is sufficient to

1    sustain a res judicata even if it's a dismissal without

2    prejudice so long as there's no further amendment.  But the

3    second point -- and this is really central for your analysis

4    because it also covers the Colorado claim -- what matters for

5    purposes of res judicata analysis is whether the claims arise

6    from the same transaction, whether the claims were actually

7    passed upon by the New York court.  Whether the claims were

8    asserted doesn't matter.  Whether they were decided doesn't

9    matter.  As long as they could have been asserted in the New

10   York proceedings and relate to the same transaction as these

11   unquestionably do, they're barred by res judicata.

12        THE COURT:  All right.  So turning to the federal

13   claims, the argument there isn't that the New York court

14   passed on those at all.  In fact, they stem from an event

15   after that was filed essentially.  But the claim there is that

16   the plaintiff has failed to plead with particularity or as

17   sufficiently required.  Is that the argument?

18        MR. MIRKIN:  That's exactly right, Your Honor.  Under

19   the Exchange Act, to sustain that claim plaintiff would need

20   to plead, amongst other things, that he sustained a loss.  He

21   would have to allege that he relied on specific statements,

22   and he would have to allege the state of mind of specific

23   defendants with particularity under the PSLRA.  He hasn't done

24   any of those things.  In fact, he can't do those things

25   because his only investment was before the statements were

1   made, and his only complaint about the statements is that they

2   artificially raised the price and raised the volume which

3   can't hurt somebody who holds the security and wants to sell

4   it, right?

5          THE COURT:  All right.  That was one of my questions

6   because that's, indeed, what I understood from reading the

7   facts.  The issue is in my mind the plaintiff's challenging

8   kind of the statements made by what seems to be kind of

9   unnamed individuals at this point or all of the defendants as

10  a group, but really the harm to the plaintiff is in your mind

11  absent because, really, assuming these things happened,

12  they're really benefiting the plaintiff.

13         MR. MIRKIN:  Precisely, Your Honor.

14         THE COURT:  Okay.  All right.  Any other supplements

15  you want to make to your motion?

16         MR. MIRKIN:  No, Your Honor.  That's it.  Thank you.

17  We'll rest on our papers.

18         THE COURT:  All right.  Let me hear from the

19  plaintiff and in similar order.  Let's first discuss the lack

20  of appeal on the state court judgment and the thinking behind

21  that and why you don't think that matters here.

22         MR. GULKO:  Yes, Your Honor.  Good morning.

23         THE COURT:  Good morning.

24         MR. GULKO:  First, I just want to thank Your Honor

25  for allowing us the opportunity to argue before the Court.  I

1   did a little investigation in terms of the Court's practices.

2   I obviously read the rules.  I know it's not typically the

3   Court's practice to hold oral argument, so we do appreciate

4   the opportunity.

5           Just with respect to what Your Honor had asked in

6   terms of the appeal, it was a simple basically analysis which

7   is that we really believe that this case belongs in Colorado.

8   It also belongs in federal court for the security-related

9   claims.  And we had an option of either appealing and

10  sustaining that appeal in New York courts or filing in

11  Colorado, and my client instructed me to not appeal it in New

12  York and -- for other reasons other than jurisdiction too, and

13  he felt that Colorado would be really the best place to hold

14  this matter.

15          THE COURT:  All right.  Let me have you address this

16  question.  In the New York case, what of your five state law

17  claims you've brought in this Colorado case could not have

18  been brought there for any particular reason?

19          MR. GULKO:  If it's okay with Your Honor, if you can

20  indulge me for a minute so I can get into a little bit of the

21  background, because I think that would help clarify our

22  position.

23          THE COURT:  All right.  Go ahead.

24          MR. GULKO:  So we're now just speaking with respect

25  to the branch of the motion dealing with res judicata,

 1    collateral estoppel, claim preclusion.  As Your Honor knows

 2    well, there are essentially a few instances where that would

 3    apply.  The simplest of those instances is where you pled a

 4    claim, that claim was adjudicated one way or the other, then

 5    in theory there would be this concept of res judicata, claim

 6    preclusion that would apply.

 7           There's also obviously where claims were dismissed --

 8    where they were adjudicated, they were dismissed with

 9    prejudice or -- well, really with prejudice, there's also this

10    notion of res judicata.  And lastly, you have this idea or

11    concept where claims should have been pled, and they weren't

12    pled.

13           Here, let's just -- I'm just going to focus on the

14    breach of contract claim for a minute.  The breach of contract

15    claim, as Your Honor may be aware, was initially pled in our

16    first complaint ever.  Now, what happened was after we pled

17    that claim, Mr. Mirkin reached out to me, I think by way of

18    letter, and essentially said, Mr. Gulko, you really don't have

19    a basis for a breach of contract claim.  Withdraw the claim.

20    Otherwise we'll move to dismiss, and we'll deal with it.  And

21    I looked at that letter, and I spoke to my client, and I

22    looked at what we had.  I didn't feel comfortable litigating

23    that claim, so I immediately withdrew that breach of contract

24    claim.

25           It's very important to note that there was never the

breach of contract claim pled beyond that point, meaning it

was withdrawn from our complaint.  It was never adjudicated.

It was never dismissed.

Now, defendants' counsel -- and it's not my practice

to point these things out, but I think they're very important

for the Court to note -- defendants' counsel makes two

misrepresentations to the Court, which is that the Court

dismissed the initial complaint and the amended complaint.

Mr. Menaker says this in his declaration at paragraph 10.  And

then he also says the Court found it meritless and dismissed

it with prejudice.  That's at defendants' motion to dismiss

page 2 of line 18.  Again, the Court never dismissed the

initial complaint.  That's one.  And, two, there was never any

claim, let alone the breach of contract claim, that was

dismissed with or without prejudice.

So now back to Your Honor's question, which is could

this have been brought?  It was brought initially.  The issue

was that we had no information.  As we went through discovery,

there were numerous things that came into play that we

discovered.  For example, Mr. De Baets admitted multiple,

multiple times that the agreement itself was actually never

terminated.  He also admitted to the fact that there was funds

that were sent to Securitize.

In fact, Mr. Menaker, defendants' counsel, said this

point-blank in a letter that he sent to us.  And if I may, if

1   I could read just a short snippet, quote, Kirschenbaum also

2   invested personal funds in various properties the company

3   established or invested in including a venture called Aspen

4   Coin and another called Securitize.  Kirschenbaum retains his

5   investment in those enterprises.

6           Now, Your Honor, this is a very different response

7   than what has happened throughout the litigation, which is

8   they've taken the position that we don't even know who

9   Kirschenbaum is.  In fact, in Mr. De Baets' deposition

10  transcript, which I have with me -- I can quote from it too --

11  Mr. De Baets refers to Mr. Kirschenbaum as essentially his

12  administrative assistant.  We don't know where he came from.

13  Now, Mr. Kirschenbaum invested millions and millions of

14  dollars with Mr. De Baets, so for Mr. De Baets to now take a

15  position to say that he doesn't know who he is, he's an

16  administrative assistant, he was nothing other than an office

17  assistant is a far cry from what the facts, in fact, were.

18          So just to sum up in terms of that response, the

19  breach of contract claim here relates to three different -- at

20  least three different agreements, which is very different than

21  the breach of contract claim that we brought in our initial

22  complaint and the only time we ever brought it, which was

23  withdrawn.  It was never adjudicated.  In fact, in Judge

24  Borrok's decision on summary judgment, he didn't issue an

25  order with respect to breach of contract, but what he did say,

1    which I believe to be dicta, was that Mr. Kirschenbaum has

2    essentially three breach of contract claims.  He had viable

3    agreements that sustain those claims.  However, in light of

4    the fact that you have an unjust enrichment claim and I'm

5    going to deny that unjust enrichment claim, that can't be

6    duplicative of breach of contract, therefore the breach of

7    contract goes away.  But he didn't actually rule on our --

8    well, let me back up.

9         After -- during discovery we discovered all these new

10   facts that supported the securities claims and the breach of

11   contract claims.  We then went to amend our complaint, and as

12   Your Honor knows in these types of cases, you can have amended

13   complaints up until the day of trial, right?  Numerous amended

14   complaints.  So we went to amend our complaint.  I believe

15   this was the third time we went to amend our complaint, and

16   that was denied.  The reason why that was denied is very

17   simple, and I have the decision order here.  I can read it.

18   It's one line.

19        Judge Borrok says, I ruled on summary judgment.  The

20   case is dismissed.  Therefore, there's no active complaint.

21   Therefore, I can't grant the motion to amend because there's

22   nothing to amend.  There's no active complaint.  There was no

23   ruling as to breach of contract.  And even if there was, we

24   cite case law that a denial on a motion to amend is not --

25   does not have any preclusive effects for res judicata.  So

1    that was everything related to the breach of contract.  It

2    appeared once, and that was it.

3         THE COURT:  Let me ask, in the third -- the motion to

4    amend for the third time, did you just seek to add fraud and

5    conversion, or did you also seek to add a breach of contract?

6         MR. GULKO:  We sought to add a breach of contract.

7         THE COURT:  Okay.

8         MR. GULKO:  So, Your Honor, just to clarify also, so

9    throughout the discovery, as I said, we discovered that the

10   agreement was never terminated.  Mr. De Baets admits this

11   numerous times throughout his transcript.  I can cite to that

12   if Your Honor would like.  We discovered not only, but more

13   importantly, that the agreement evolved over time.  There was

14   this March 2016 agreement that the parties entered into, and

15   as the transaction transpired, it went from the Sunset Tower

16   deal, and then it went to another underlying asset.

17   Eventually the St. Regis Aspen was the underlying asset of

18   that transaction.

19        Mr. De Baets, again, concedes this time and time

20   again, and just so we have it for the record, I think that the

21   Sunset Tower deal, which they're alleging died, terminated,

22   never came to fruition, Mr. De Baets admits to the fact that

23   the Sunset Tower deal morphed into this deal, the Aspen

24   Digital deal.  He says this on page 113, lines 7 through 14.

25   He says this on page 114 of his transcript.  He says this on

1    page 132, lines 7 through 8, and he says it on page 158,

2    sentences 8 through 13.  I'm not going to get into every

3    single citation, but the point is that it's clear as day that

4    this was a transaction that evolved over time and wasn't

5    simply bound by the March 2016 agreement.

6            We also discovered, Your Honor, that there was this

7    transaction involving Securitize.  Now, what had happened was

8    -- in just quick detail -- was our client put money into this

9    deal through an entity called 315 East Dean.  We understood

10   that the money was sitting in this deal and safe.  And, in

11   fact, I just read that letter from Mr. Menaker, defendants'

12   counsel, who confirmed that the money was safe.

13           We are going through discovery.  We subpoena

14   Securitize for documents related to this deal.  Securitize

15   responds to us and says, Hey, we returned this money to

16   De Baets a while ago.  We don't know what you're talking

17   about.  We don't have the money.  So all this time we had

18   thought that our investment was safe.  In fact, it was

19   returned.  But, again, this is something that came out in the

20   course of discovery, and we sought to amend our complaint to

21   include these facts, which never made it because the motion

22   for summary judgment was granted.  But, again, this was new

23   facts, new parties that came about throughout the discovery

24   which lent to the complaint before this Court.

25           THE COURT:  Okay, but --

1           MR. GULKO:  We also obviously discovered a lot of the

2    facts related to the claims related to the securities

3    violations.

4           THE COURT:  Let me stop you there --

5           MR. GULKO:  Sure.

6           THE COURT:  -- because isn't that the point of claim

7    preclusion, meaning you're in a New York court where these

8    claims come to your attention through discovery.  The proper

9    vehicle is to move to amend, and if that's denied, appeal in

10   that court so the appellate court can reach a decision on

11   that.  I mean, this does seem to be an end-around of I don't

12   want to appeal through the New York appellate court.  I'm just

13   going to pick a new forum and come over here and try this

14   again.

15          MR. GULKO:  No, Your Honor.  What happened was we

16   came across these security-related issues, and when we

17   realized that, we had to file in federal court for the

18   securities claims.  So now that we're filing in federal court

19   based on the security claims, we had two options:  To either

20   appeal and wait for that appeal to come through, and/or file

21   in federal court at the same time.  The question would be then

22   what federal court, and the issue for us was -- we had two

23   options, federal court in New York or federal court in

24   Colorado.  And given the issues related to jurisdiction that

25   they raised initially on the state court complaint, we chose

1   to file in Colorado, because, to us, there was no issue in

2   terms of jurisdiction here.

3          But to answer your question -- sorry -- is that we

4   have to be in federal court at some point.  That's really what

5   it came down to.

6          THE COURT:  Well, I understand you have to be in

7   federal court on the federal claims, but my concern is the

8   state law claims is that you had them in a New York court who

9   was looking at them, and I don't agree that the Court didn't

10  comment on the breach of contract claims.  I mean, I don't --

11  it doesn't seem as if the only reason that the motion to amend

12  the third time was denied was because he or she had ruled on

13  summary judgment, because there's a lengthy diatribe about

14  what's wrong with the breach of contract claim and that the

15  Court, whether in dicta or otherwise, does pass on the

16  substance of that claim to say that the plaintiff has not --

17  provided no evidence that a breach of contract occurred.

18         MR. GULKO:  I completely agree, Your Honor, that

19  there's obviously references and discussion about the amended

20  complaint.  Whether or not that is controlling, I think that's

21  for Your Honor to decide obviously, but I will just read

22  quickly from the decision and order issued by Judge Borrok on

23  the summary judgment motion.  That's -- on the New York court

24  docket that's 229.  And I'll just say -- I'm going to read

25  three lines, if that's okay with Your Honor.

1          THE COURT:  Yeah.

2          MR. GULKO:  Upon the foregoing documents the

3     plaintiff's motion to amend is denied because the third --

4     because the proposed third amended complaint is palpably

5     insufficient as a matter of law, and defendants' motion for

6     summary judgment is granted because there are no material

7     issues of fact for trial.  And then there was the -- give me

8     one more second -- sorry -- there was, I think, two different

9     decisions on the summary judgment.

10          Here it is.  Okay.  This is 247 on the New York

11     docket.  After discovery, by decision and order dated

12     October 30th, 2023, the Court granted the defendants' motion

13     seeking summary judgment and dismissal of the claims for

14     unjust enrichment.  Thus, the case has been disposed, and

15     there's no complaint left to amend.

16          So I don't disagree with Your Honor in the sense that

17     there was certainly a discussion as to the third proposed

18     amended complaint.  Two points to that.  One is that we cite

19     case law -- black letter law that says that if a motion to

20     amend is denied, that does not have preclusive effect with

21     respect to res judicata.  And, two, is it's apparent from

22     Judge Borrok's decision that once the decision on the summary

23     judgment was granted, there was nothing left to discuss with

24     respect to the third amended complaint.

25          So although he does get into it or some discussion on

1      it, really anything that happens after his decision on the

2      summary judgment really can't be binding on the third proposed

3      amended complaint with respect to res judicata.

4             THE COURT:  Well, but then -- so I understand that,

5      but then didn't you file another like renewed motion to file

6      the amended complaint, and then he, again, addressed kind of

7      the underlying merits or futility of allowing that?

8             MR. GULKO:  Yes, Your Honor, in the sense that we did

9      file a -- called it a motion to reargue, a motion to renew.

10     The same exists obviously under federal law.  In New York

11     state court that goes back before the same judge and gives the

12     judge an opportunity to decide whether he misread or there's

13     something that he didn't consider, et cetera, and that was

14     denied, correct, Your Honor.

15            THE COURT:  Okay.

16            MR. GULKO:  Because for the fact that there was, at

17     least according to the decision -- the decision speaks for

18     itself -- that the Court found that everything was presented

19     in the underlying motion, there was nothing on a motion to

20     renew to reconsider.

21            THE COURT:  Okay.  All right.  Let me have you

22     address the federal claims in terms of whether they're

23     sufficiently pled.

24            MR. GULKO:  Okay.  If Your Honor doesn't mind, if I

25     can just go quickly through some of the other state law claims

1   because we do make this in our papers, but with respect to the

2   fraud claim, again, that claim was never dismissed with

3   prejudice.  The original claim that was pled in New York was

4   based on this Securitize investment, and it was dismissed

5   because it didn't meet the heightened pleading standard that

6   you can see in the decision and order of the New York court on

7   October 16th, 2020, page 8.

8           But, more importantly, the fraud claim here is

9   entirely different than the fraud claim that was pled in the

10  New York case.  I'll just say that the same is true for a lot

11  of these other state law claims, that they weren't dismissed

12  with prejudice.  With respect to the conversion claim, as I

13  mentioned, there was this letter from defendants' counsel

14  admitting to the fact that they had the funds.  Now they no

15  longer have the funds.  There was discovery that we came

16  across that shows that the funds were returned to them but not

17  to us.  So, again, that was the reason why we sought to amend

18  our complaint, which we couldn't, but that was the basis for

19  the amendment and for the claim here.

20          The same is true for declaratory judgment.  Wasn't

21  dismissed without prejudice, plus the declaratory judgment in

22  the instant complaint relates to different claims entirely

23  than what was originally pled.

24          Now, with respect to the Securitize claims, it's our

25  position that we pled those claims sufficiently.  The who,

1    what, where, when related to those securities law claims.

2    They moved to dismiss based on failure to state a claim.

3    Obviously we believe that those claims were sufficiently and

4    more than sufficiently pled.  And I'm happy to rely on my

5    papers for those arguments too.

6         THE COURT:  Okay.  Let me have you specifically

7    address the notion as to your sixth and seventh claim that you

8    haven't set forth specific statements by specific defendants

9    so as to even give the defendants notice of the claims.

10        MR. GULKO:  I'm sorry, Your Honor.  That was -- let

11   me just pull up my notes.  Your Honor, that was the argument

12   -- you're asking that we did not provide sufficient notice to

13   give --

14        THE COURT:  Well, the claims require that you set

15   forth specific statements that were made that you're claiming

16   were in violation of the Exchange Act by specific people.

17   There's also a state of mind requirement as to at least one of

18   those claims, and that that isn't set forth either.

19        MR. GULKO:  Sure, Your Honor.  I do address that in

20   my opposition papers.  Let me just grab it for a second so I

21   can speak to that.  Yes, Your Honor.  So on page 21 of our

22   opposition addressing that issue specifically, there were

23   press releases that claim the defendants bought back over

24   20,000 tokens.  We attached copies of those press releases.

25   There's press releases stating that they agreed to buy back up

1    to $250,000 worth of tokens.  We don't believe that to be

2    true.

3           There's statements saying that the market -- that,

4    quote, the tokens are up around 320 percent, end quote.  And

5    also represented that Aspen Point is the only security token

6    with, quote, any form of volume and demand, end quote, which,

7    again, we adamantly deny.  Our client has attempted time and

8    time again to redeem his tokens, to transfer them out, and he

9    has been unable to.

10           And just while we're on that point, just to

11    Mr. Mirkin's point before, which is -- which we also addressed

12    in our papers, aside from clear -- there are damages in terms

13    of what he's able to redeem, but the damages are also what

14    he's not able to redeem.  So there's not just the damages of

15    what he could have made or should have made on those

16    redemptions, but the fact that he's been unable to actually

17    redeem anything, because we do believe defendants control this

18    private marketplace and have thwarted our ability to actually

19    redeem our investment.

20           THE COURT:  And what do you mean by that?  I mean, I

21    read that, but I didn't really understand what that meant.

22    How is he unable to redeem?

23           MR. GULKO:  Essentially he'll put in a trade for a

24    certain price, and we've tried this at numerous different

25    price tranches, because obviously if he's looking to sell out

1    for, say, $30 and the coin is only worth $2, you're not going

2    to get it.  So we did different tranches, and no matter what

3    tranche he's put it in, the lowest -- it's still -- there's no

4    redemption.  There's no trades.

5        What's interesting also is that throughout

6    Mr. De Baets' transcript -- and I don't want to get into it

7    too much, but it is in his transcript -- he talks about his

8    involvement in this company called Alpha Toy, I believe it is,

9    and I can give you the exact citation, which actually is a

10   company that works on I guess you can say the white hat

11   version of market manipulation.

12       So, again, these were things that we discovered, and

13   between that -- our client's ability to try to redeem, the

14   buyback program which came out numerous times but also during

15   the course of litigation, again, all gave rise to us filing

16   these claims, you know, as soon as we could here.  It was

17   Alpha Point.  Sorry, Your Honor.  I said Alpha Toy.  It was

18   Alpha Point, and that was in Mr. De Baets' transcript,

19   page 215, lines 10 through 16.

20       THE COURT:  Okay.  Anything else you want to add?

21   I'm going to give the defendants a chance to respond.

22       MR. GULKO:  No, Your Honor.  Other than the fact

23   that, you know, my client is -- you know, he invested a lot of

24   his life savings into this.  You know, he really hasn't had

25   the opportunity to fully litigate those claims, again, with

1   respect to the breach of contract.  I understand there are

2   arguments that go both ways, but, at the end of the day, there

3   was never an actual breach of contract claim pled that was

4   adjudicated with respect to the original March 2016 agreement

5   or the subsequent agreements that we discovered throughout

6   discovery and which the court in New York actually

7   acknowledged but never gave us that chance to amend.  So we

8   appreciate again the opportunity to be heard and thank the

9   Court.

10          THE COURT:  All right.  Mr. Mirkin, let me have you

11  respond, and one thing I want you to talk about is this notion

12  that there was no -- I don't quite know how to phrase it -- no

13  adequate chance or no legitimate chance to add the breach of

14  contract claim because the Court denied the third amended

15  complaint and denied the motion to renew so somehow the

16  plaintiff was really deprived of the opportunity of doing

17  that.

18          MR. MIRKIN:  Thank you, Your Honor.  The breach of

19  contract claim was asserted from the very beginning.  The

20  breach of contract claim was in the first complaint.  When we

21  made a motion to dismiss -- I suppose that's the letter that

22  plaintiff's counsel meant -- when we made a motion to dismiss

23  for failure to state a cause of action based on the terms of

24  the contract, plaintiff amended to remove that claim.  He

25  removed that claim, but the Court, nevertheless, considered

1  that contract in evaluating the motion to dismiss the initial

2  complaint, and in considering that contract found it to bar

3  most of the plaintiff's claims.

4          Plaintiff then had the opportunity to add his claims

5  as to Securitize and as to Aspen Digital, and those claims

6  were fully before the Court.  The contracts pursuant to which

7  the Aspen Digital investment was made and pursuant to which

8  the investments in Securitize were made were in the summary

9  judgment record, and they were in the summary judgment record

10  precisely because we put them there.  We put them there so

11  that the Court could fully evaluate these claims because they

12  were in the proposed motion to amend.

13          And it's worth noting that there were a lot of

14  motions to amend in this case.  Here we're talking about the

15  first time the plaintiff tried to add a third amended

16  complaint.  That was before summary judgment was entered.

17  There was a complaint still in existence.  It was a

18  cross-motion that was made at the same time and evaluated on

19  the same paper.  And in that motion plaintiff wanted to add a

20  breach of contract claim.  We specifically showed that claim

21  would be without merit.

22          And in the decision the Court says that, For the

23  avoidance of doubt, the Court notes the plaintiff's proposed

24  breach of contract claim alleging defendants owe plaintiff

25  1.36 million, apparently pursuant to his investments in Aspen

1    Coin, would, nevertheless, be unavailing because plaintiff's

2    proposed third amended complaint fails to allege defendant

3    committed any specific breach of the purchase agreement.  That

4    is in Exhibit H to Mr. Menaker's declaration.  In the New York

5    docket it's 247.

6         Now, I don't want to get too far into the facts of

7    what happened in New York because this isn't a summary

8    judgment motion.  This is a motion to dismiss the pleading

9    before you, Your Honor, and so I'm not going to cite to

10   deposition transcripts you don't have or other documents that

11   aren't in the record, but there are some things that I do need

12   to clear up.

13        The first thing I wanted to address -- I'll address

14   the letter, but I did want to address the question of

15   appealing, because New York allows interlocutory appeals,

16   which means that the decision not to appeal wasn't just made

17   when this judgment was entered.  The decision not to appeal

18   was made when the first motion to dismiss was granted.  It was

19   made when the second motion to dismiss was granted, because

20   there was a motion to dismiss the second amended complaint as

21   well.  It was made when the summary judgment decision was

22   granted.  Then it was made again when the judgment wasn't

23   entered.

24        So that's four separate times spread over many years

25   that plaintiff could have appealed, and he never once chose to

1    appeal even though -- you can take my word for it -- filing a

2    notice of appeal in New York is easy.  At this point, his time

3    to appeal in New York has run.  He can't resurrect those

4    claims in New York other than moving to vacate the judgment,

5    which is a high standard, and that is why he finds himself

6    here before you.

7             Now, plaintiff made this argument that his loss, his

8    damages on the federal claim come from his inability to redeem

9    his interest.  The reality is and what this case is about as

10   far as that claim is concerned is that plaintiff chose to

11   invest in an illiquid security.  He chose to put a lot of

12   money into something that's not traded on any public market.

13   Unlike those listings on NASDAQ that they talked about in the

14   initial agreement, here, the listing is on a market for

15   Securitize digital token, a coin for which there happens just

16   not to be much of a market.

17            Now, plaintiff would like to redeem it as sometimes

18   happens to people who invest in illiquid securities, but

19   there's a contract pursuant to which he invested.  That

20   contract apparently doesn't give him redemption rights, at

21   least he's not asserting them here.  Instead he wants to

22   somehow turn that into an Exchange Act claim, and there's no

23   reason for that.  There's no basis for that.  That's not the

24   type of harm the Exchange Act protects from.  That's not a

25   matter of market manipulation.

1          Plaintiff drew a lot of attention to and spent a lot

2     of time on the letter sent by my colleague in March of 2019

3     where he said that plaintiff retains his investments.  Now,

4     it's true that letter does mention Securitize, and as we later

5     discovered, plaintiff never did invest in Securitize.  That

6     letter was sent in March of 2019 in response to a demand

7     letter before we'd seen a single pleading, and my colleague

8     just got it wrong.  He didn't know the facts on that point.

9     That's not something that can bind our client as to what, in

10    fact, happened with the money.  There was no money invested by

11    plaintiff in Securitize.  But, again, I don't want to get too

12    far into this because this isn't really before you on a motion

13    to dismiss, Your Honor.

14         Practically speaking, this case is simple.  You asked

15    plaintiff what claims could not have been brought in New York,

16    and he didn't name a single one.  You asked him about the

17    federal claims, and he said he'll rely on his papers which

18    don't demonstrate a loss.  Unless Your Honor has further

19    questions, we can rely on our papers here.

20         THE COURT:  All right.  Thank you.

21         MR. MIRKIN:  Thank you.

22         THE COURT:  Okay.  Let's talk about the state law

23    claims first because I do think that's an easier question, and

24    while New York law does apply, it appears New York law and

25    Colorado law are quite similar on claim preclusion.  And let

 1    me just first note what we're talking about is claim

 2    preclusion, not issue preclusion.  Claim preclusion is far

 3    broader than issue preclusion.  So some of the plaintiff's

 4    argument I read as if it's directed towards issue preclusion.

 5    Claim preclusion bars subsequent litigation to all claims that

 6    could have been raised in the prior lawsuit but were not.  It

 7    doesn't matter if they actually were brought.  It's could they

 8    have been brought.

 9            And why it's important that Colorado and New York law

10    are similar on this is last week the Tenth Circuit issued a

11    decision which I feel is remarkably on all fours.  It's called

12    *Markley v. U.S. Bank National Association*.  I don't have the

13    Westlaw cite, but it's Tenth Circuit case appeal number

14    24-1163.  And in there the Tenth Circuit spends a lot of time

15    on how res judicata works, particularly when there's claims

16    that are dismissed without prejudice.

17            And in that case, the Tenth Circuit held that because

18    the underlying court had issued a final ruling on one claim

19    and dismissed others without prejudice, the final ruling on

20    one claim meant that res judicata applied to the whole

21    underlying action.  So it did not matter that the Court did

22    not dismiss the state law claim there with prejudice or

23    without.  It simply found that because there was an underlying

24    ruling on the federal claim which was dismissed with

25    prejudice, the whole action therefore res judicata applied and

1    claim preclusion applied, and the plaintiff could not revive

2    the claim dismissed without prejudice because of that.

3         So it's an interesting read, and I do think it has

4    lots of application here because it takes care of the argument

5    as to whether these claims were dismissed with prejudice or

6    not.  It doesn't matter.  The moment the Court entered a

7    ruling on the unjust enrichment and ruled on the merits, claim

8    preclusion now kicks in, and it applies to bar any claim that

9    could have been or should have been raised in that underlying

10   action regardless of whether it was.

11        Now, it so happens many of these claims were raised,

12   particularly the breach of contract claim.  That the plaintiff

13   voluntarily withdrew it is neither here nor there.  That the

14   Court denied efforts to get it back in is neither here nor

15   there.  That simply highlights the appropriate vehicle to

16   challenge that is through an appeal of that New York decision,

17   not through coming to another federal court trying to get the

18   claims back in.

19        So in large sense, I feel my hands are tied.  These

20   claims could have been, should have been, and in some cases

21   were brought in the New York litigation, and it is wholly

22   improper to try and revive them here when there was a final

23   judgment and, unlike here, New York did allow interlocutory

24   appeals.  But regardless, now the final judgment has been

25   entered on March 5th of 2025, with no appeal taken and the

1    judgment satisfied.  So the state law claims are barred, and

2    so to the extent the motion to dismiss targets those five

3    claims, that will be granted.

4         Now, the federal claims res judicata does not apply

5    to.  Those claims arose after.  But upon review of the

6    complaint, I do find it deficient, so I'm going to dismiss

7    those two claims but without prejudice and give you ten days

8    to amend.  Please know that the amendment must address the

9    deficiencies in this claim.  It is not enough simply to attach

10   a press release.  That doesn't tell me who made the

11   statements, in what capacity.

12        I realize discovery has not begun, but there needs to

13   be more effort to identify particular defendants in terms of

14   what they're actually doing or saying that you're claiming is

15   a violation of the Exchange Act and at least some allegations

16   that they possess the requisite state of mind to have these

17   claims.

18        The issue of loss, I'm, frankly, not as concerned

19   about.  I understand the argument, but I would think you could

20   supplement.  To the extent you think one or more of the

21   defendants is responsible for the inability to redeem the

22   coin, that needs to be detailed as well.  So I assume the

23   plaintiff will be able to modify those two claims and satisfy

24   the pleading standard.

25        Now, what I don't want to see is a second motion to

 1  dismiss unless the defendants are convinced that this still

 2  doesn't meet the requirements.  It would be -- as you know on

 3  a motion to dismiss, the plaintiff does get some benefits on

 4  these claims, but not -- it's not as liberal as the plaintiff

 5  would have me believe.  But I don't want to see another motion

 6  to dismiss if it's an arguable case, because that can be

 7  ferreted out through discovery.  So the motion is granted in

 8  part and denied in part, granted as to the state law claims.

 9          Although the other two defendants are not in the

10  room, the plaintiff's counsel is in the room, so let me note

11  that the motions to dismiss, as I understand them, are more

12  about jurisdiction than the underlying merits, but please know

13  that this ruling would apply to them because the only thing I

14  see holding them responsible for any of the state law claims

15  is their privity with the prior -- with these defendants, or

16  particularly De Baets.

17          So if you feel you need to amend to make something

18  clear that they're not in privity such that my ruling on the

19  state law claims would apply to them, you should go ahead and

20  plan on doing that, because otherwise the state law claims

21  will not be applicable to them either, because, as I see it

22  from reading the complaint even, they were in full privity

23  with De Baets.

24          So let me ask, because I think it warrants a

25  conversation, have there been any talks of resolution or

1    attending a mediation before we go down this road now that you

2    have some definition on where exactly we're going?

3         MR. MIRKIN:  Your Honor, we have provisionally

4    addressed the subject in the course of our 26(f) conference,

5    but the parties are really quite far apart.  We already have a

6    final judgment on the merits dismissing the state law claims,

7    so you can understand that our position and plaintiff's might

8    be a bit different.

9         THE COURT:  Okay.  And let me just say, under our

10   local rules you would need permission to seek a settlement

11   conference with Magistrate Judge Starnella.  Consider this

12   your standing permission to do that.  If it becomes useful and

13   you want to do that, you would just send a joint e-mail to her

14   chambers.  This would be your authorization.  You don't need

15   to file another motion, and that will hold true as this case

16   goes on.

17        Perhaps with some -- because the case has been

18   limited and defined here, maybe there may be a point in doing

19   that before you get going on the two federal claims, but I'll

20   leave that up to you, but just know that you have that

21   permission.

22        Let me just say another thing about our rules.

23   Because a couple of you are coming in from New York, it can

24   get confusing over here, and I just invite you to -- at least

25   several of the judges, we have uniform practice standards, so

 1   please follow those.  And typically I won't entertain a

 2   request if it's sent by e-mail.  So, for instance, a letter

 3   saying you want oral argument typically will not be

 4   considered.  Please go ahead and file a motion.  Tell me what

 5   the other side thinks.

 6        And I'm not sure where you heard about my practice,

 7   but I often grant oral argument.  I often set oral argument

 8   whether people want it or not, because you all need an answer,

 9   and you need it quicker than what sometimes writing it up

10   allows us to do.  So do not be surprised if we have other

11   hearings on other matters because I find that's an efficient

12   way to get through things and get you all the answers you

13   need.

14        But please remember we have uniform practice

15   standards, we also have local rules, and we also have the

16   rules of civil procedure.  So I realize you're going to be

17   consulting three sets of rules, but please do it.  It does

18   help us.  We will strike things if they don't comply.  If

19   they're over page limits, if they're in the wrong font, it's

20   an automatic strike.  So please take a look at those and make

21   sure you are operating under the right rules.

22        I will put in a plug for Magistrate Judge Starnella.

23   She has settled a number of different cases, so I wouldn't

24   hesitate to use her if you think it's useful.  It can save you

25   the mediation costs.  I get that this is a fairly complicated

1    issue.  You may want to consider a private mediation.  That's

2    fine too.

3         If at any point you do go to a settlement conference

4    or mediation, please let me know that.  You may do that via a

5    joint e-mail to chambers simply saying you went, it settled or

6    didn't settle.  That's all I need to know.  It just helps me

7    understand how the case is progressing and what I can look

8    forward to in a few months.

9         With that, do we have any other questions about

10   procedure or the case, how it's going to move forward?

11        MR. GULKO:  Yes, Your Honor.  Just one slight

12   request.  Mr. Mirkin and I were discussing the motion to

13   dismiss filed by the other defendants.  Now based on the

14   ruling, we're probably going to have another discussion, but

15   I'm actually scheduled to leave the country tomorrow for two

16   weeks, so if there's any way that the Court would be inclined

17   to give me a little bit more than ten days, that would be

18   helpful.  I do plan on trying to do some work, but it's going

19   to be a little harder to do while I'm away.

20        THE COURT:  Do you have any objection to extending

21   that time?

22        MR. MIRKIN:  No objection, Your Honor.

23        THE COURT:  Let me give you three weeks from today --

24        MR. GULKO:  Thank you, Your Honor.

25        THE COURT:  -- to get that done, but I do want full

1    conferral on the other motions to dismiss too.  If you -- I

2    think that was just Friday -- were those filed Friday?

3              MR. MIRKIN:  Yes, Your Honor.

4              THE COURT:  All right.  So the 21 days, this should

5    align pretty closely, so hopefully that will give you time for

6    that conferral.  If you get to that 21 days, you're close but

7    haven't quite reached an agreement and you all agree, I would

8    consider a further extension.  I just don't want to push it

9    too far out because I want to get going on the federal claims

10   if they're moving forward.

11             MR. GULKO:  Understood, Your Honor.  Thank you.

12             MR. MIRKIN:  Your Honor, if I may, about those

13   motions filed on Friday, in light of today's ruling, how

14   should we proceed?  Will the Court entertain those motions as

15   to the amended complaint?  Should we re-file them when the

16   amended complaint is filed?

17             THE COURT:  What I want you to do is confer about

18   that, and if you reach an agreement, simply file a motion to

19   withdraw the motion -- or just a notice of withdrawal of the

20   motion to dismiss indicating plaintiff indicated he's amending

21   the complaint as to all defendants.  That would be fine, and

22   that seem s like an appropriate solution.  If the amendment is

23   not going to be addressed to those two defendants, maybe

24   that's not appropriate.  But I do want you to confer about it,

25   because that seems to be an easy thing to agree upon, and as

1   long as you're agreeing, I don't really care about the timing

2   as long as we get going in the next month or two.

3        MR. MIRKIN:  Thank you, Your Honor.  And so if

4   plaintiff doesn't amend the jurisdictional facts, can we rely

5   on the motions as filed notwithstanding the amendment?

6        THE COURT:  Yes.  It sounds like you could unless

7   there's substantial changes.  I have given kind of a heads-up

8   that what I want to hear about is privity, so to the extent

9   there's amendments made about privity, you may decide we need

10  a new motion and you would just do a notice of withdrawal

11  indicating that the amended -- upon information and belief and

12  conferral, the amended complaint is going to address that and

13  you want a new bite at that new apple, and that's fine.  So I

14  think the initial conferral needs to be about is the amended

15  complaint going to change anything for the two gentlemen who

16  just filed the motions to dismiss on Friday.

17       MR. MIRKIN:  Thank you, Your Honor.

18       THE COURT:  Anything else we can address?

19       MR. GULKO:  Nothing for plaintiff, Your Honor.  Thank

20  you.

21       MR. MIRKIN:  Nothing.

22       THE COURT:  We'll be in recess.  Thank you.

23       THE COURTROOM DEPUTY:  All rise.  Court is in recess.

24     (The proceedings were concluded at 9:51 a.m.)

25

1       <u>REPORTER'S CERTIFICATE</u>

2

3    I, SARAH K. MITCHELL, Official Court Reporter for the

4 United States District Court for the District of Colorado, a

5 Registered Professional Reporter and Certified Realtime

6 Reporter, do hereby certify that I reported by machine

7 shorthand the proceedings contained herein at the time and

8 place aforementioned and that the foregoing pages constitute a

9 full, true and correct transcript.

10    Dated this 3rd day of July, 2025.

11

12

13

14     <u>/s/ Sarah K. Mitchell</u>

15      SARAH K. MITCHELL
       Official Court Reporter
16    Registered Professional Reporter
     Certified Realtime Reporter
17

18

19

20

21

22

23

24

25

     Sarah K. Mitchell, RPR, CRR