IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

**Civil Action No.: 24-cv-01950-CNS**

JASON KIRSCHENBAUM

Plaintiff,

v.

STEPHANE DE BAETS, ELEVATED RETURNS, LLC, 315 EAST DEAN ASSOCIATES, INC. THOSAPONG JARUTHAVEE, RAVIPAN JARUTHAVEE, ER GLOBAL LLC, ER MERRY WAY LP, and ASPEN DIGITAL, INC.

Defendants.

---

**MOTION TO DISMISS AND STRIKE**

---

Defendants Stephane De Baets ("De Baets"), Elevated Returns, LLC ("Elevated Returns"), 315 East Dean Associates, Inc. ER Global LLC, ER Merry Way LP, and Aspen Digital, Inc. ("Aspen Digital") (collectively, the "U.S. Defendants"), by and through their undersigned counsel, hereby respectfully submit this Motion to Dismiss the Second Amended Complaint ("SAC") pursuant to Fed. R. Civ. P. 12(b)(6). Dismissal is required because Plaintiff has again failed to plead facts sufficient to make out his Exchange Act claims; he has not alleged any material, false statements that he relied upon to purchase or sell securities to his detriment. Indeed, the gravamen of Plaintiff's claims is that, though the buyback program announced by Defendants got his hopes up, he has ***not*** been able to trade the illiquid securities in which he invested. That is not a valid Exchange Act claim.

## I. CERTIFICATION CONCERNING CONFERRAL

In accordance with Civil Practice Standard 7.1B, counsel for Defendants conferred with counsel for Plaintiff regarding the relief requested in this Motion. During conferral, counsel for Defendants notified counsel for Plaintiff that Plaintiff has again failed to plead federal securities claims for the reasons stated below, which are not curable. Plaintiff's counsel disagreed. Therefore, this dispositive Motion is opposed.

## II.SUMMARY OF ARGUMENT

Plaintiff purchased 1.36 million shares (called "tokens" or "coins") of an illiquid security, wants to sell them, but can find no buyer. The Purchase Agreement subjects his shares to transfer restrictions and gives him no right to redemption or dividends. The issuer, Aspen Digital, offered to buy back shares worth up to $250,000 in the essentially illiquid public market in which they are available, and bought from Plaintiff what he calls a "de minimis" amount. Plaintiff wishes, however, to sell his entire holding, so he claims in this action denial by Defendants of a supposed "right to redeem" in the guise of "market manipulation" claims under the Exchange Act. (SAC ¶ 86). The claim is defectively pleaded. Moreover, its theory is wrong as a matter of law. The Exchange Act does not create rights of redemption where the parties' agreement bars it. Thus, the SAC must be dismissed with prejudice.

## III. FACTUAL AND PROCEDURAL BACKGROUND

### A. PLAINTIFF'S DEALINGS WITH DEFENDANTS.

The Court is familiar with the background of this case, as noted in its Decision and Order announced on June 30, 2025 (*see* Transcript, Dkt. No. 74) on the motion by the

U.S. Defendants to dismiss the Amended Complaint, which had included state law and federal law claims. In brief, Plaintiff met De Baets in 2015 and entered into a series of transactions with him and his company, Elevated Returns, which employed him in 2018-2019 (SAC ¶¶ 21, 45). Among the deals they worked on together was the initial offering for a securitized digital token named Aspen Coin, through which investors could acquire an interest in Aspen Digital, a Maryland corporation that would hold an interest in the St. Regis Hotel in Aspen (*id.* ¶¶ 11, 42). Along with several of the Defendants, Plaintiff decided to invest in the project, purchasing 1.36 million Aspen Coin tokens at a price of $1 per token through a Purchase Agreement dated October 2, 2018 (*id*. ¶ 47) (**Exhibit 1** to Declaration of Alexander Mirkin, dated September 8, 2025, filed concurrently herewith).

**B. THE ASPEN COIN PURCHASE AGREEMENT.**

The Purchase Agreement required Plaintiff to repeatedly acknowledge the illiquidity of Aspen Coin tokens. Plaintiff represented and warranted to Aspen Digital that he:

- "is aware that there are substantial restrictions on the transferability of the Aspen Digital Tokens and there will be no public market for the Aspen Digital Tokens initially and that no public market may ever develop" (Ex. 1 , ¶ 2.g.ii).
- "is purchasing the Aspen Digital Tokens for investment purposes, and not with a view to distribution or resale[,] is able to bear the economic cost of holding the Aspen Digital Tokens for an indefinite period of time[,] and . . . has no need for liquidity of the Aspen Digital Tokens" (*id*. ¶ 2.j).
- "Except as expressly set forth in this agreement, the purchaser acknowledges that it has not relied upon any representation or warranty and disclaims any reliance . . . on any statement made, or any information provided, by Aspen Digital, or any other person on Aspen Digital's behalf" (*id*. ¶ 2.r. (emphasis removed)).

The Purchase Agreement did not include any right to liquidate, redeem or otherwise sell Aspen Digital Tokens to Defendants or anyone else, and did not provide for mandatory

distribution of profits. Further, the Purchase Agreement provided that it "constitute[s] the entire agreement between the parties hereto with respect to the subject matter of this Purchase Agreement and may be amended only in writing, executed by all parties hereto." (*id*. at 24, ¶ 8.e.).

### C. The Buyback Program.

Aspen Digital announced a series of buyback programs in 2022-2024, culminating in the sixth buyback program, which was announced in April 2024 by Aspen Digital and Elevated Returns, "after receiving approval from Defendants De Baets, TJ, and Ravipan" (SAC ¶¶ 75, 77). The buyback programs consisted, according to the SAC, of offers by Aspen Digital and Elevated Returns to buy tokens worth up to an aggregate total of $250,000 over 90 days (*id*.), and in April 2024, "Defendants Aspen Coin, Elevated Returns and De Baets, after receiving approval from TJ and Ravipan" are alleged to have issued a press release stating that the sixth buyback program had, as of the date of that release, "bought back 21,800 tokens at an average price of 3.4usd per token" (*id*. ¶ 78).[1] Plaintiff participated in the sixth buyback program but was able to sell what he considers only an "insignificant" or "de minimis portion of Plaintiff's tokens" (*id*. ¶¶ 82, 84).

Plaintiff contends that the buyback programs were false—that they never truly existed (*id*. ¶ 86). Based on this contention, he has identified (*id.* ¶ 138) the following representations that he believes were false and give rise to liability under the Exchange Act:

---

[1] At a price of $3.40 per token, a $250,000 buyback program would purchase just under 73,530 tokens. Kirschenbaum purchased 1.36 million tokens at the initial offering.

(1) Aspen Digital's announcement of the October 2022 buyback program, including unspecified Defendants' statement that the "current market price of its tokens does not reflect their intrinsic value and that the buyback program is consistent with the objective of creating long term token holders value, improve liquidity and market efficiency" (*id*. ¶ 75).

(2) Aspen Digital and Elevated Returns' April 2024 statements that they were launching a sixth buyback program, including both the terms of the program and the statement that there were five previous programs (*id*. ¶ 77).

(3) Aspen Digital, Elevated Returns and De Baets' press release in April 2024 saying that they have bought back over 20,000 tokens at an average price of $3.40 per token (*id*. ¶ 78).

(4) Aspen Digital's statement that "tokens are up around 320%" over an unspecified period of time (*id*.).

(5) De Baets' twitter post that "Aspen Coin the only security token with 'any form of volume and demand'" (*id*. ¶ 79).

(6) Unparticularized statements by unidentified defendants on unspecified "website, blog posts, social media accounts, and elsewhere that Aspen Digital tokens can be sold back to Defendants through their Buy Back program, and that Defendants agreed to buy back up to $250,000 worth of token in an effort to reduce the supply of Aspen Coin and create further false liquidity" (*id*. ¶ 80).

### D. THE NEW YORK LAWSUIT AND THIS ACTION.

In 2019, Plaintiff sued the U.S. Defendants in New York state court, asserting state-law claims substantially similar to those pleaded in Counts I-V and VIII of the SAC. The New York court rejected those claims in a series of decisions and orders and ultimately dismissed the action with prejudice in a judgment that was not appealed. Meanwhile, Plaintiff commenced this action, adding claims under the Securities and Exchange Act of 1934 to his state-law claims. This Court dismissed all claims in the Amended Complaint in its June 30, 2025 Decision, the state law claims with prejudice, and the federal law claims with leave to replead.

The SAC alleges seven claims against the U.S. Defendants: Counts I-V replead, ostensibly "for preservation," the state-law claims that were dismissed with prejudice in the June 30, 2025 Decision. Count VI, entitled "Violation of Section 20(a) of the Exchange Act Against Defendant De Baets," alleges that De Baets "participated in the operation and management of [unspecified] Defendants' business, including the oversight of the markets for certain digital tokens, and conducted and participated, directly and indirectly, in the conduct of Defendants' business affairs." *Id*. ¶ 126. As a "senior officer," De Baets is alleged to have been "able to, and did, control the contents of the various reports, press releases and public filings which [unspecified] Defendants disseminated in the marketplace" (*id*. ¶ 129), and "therefore was a 'controlling person' of [unspecified] Defendants within the meaning of Section 20(a) of the Exchange Act" (*id*. ¶ 131). It is alleged that he exercised the ability "to cause, [sic] Defendants to engage in the [unspecified] unlawful acts and conduct complained of herein." *Id.* ¶ 132, also ¶ 130 (acts also unspecified). On

this basis Plaintiff claims De Beats to be liable for Exchange Act violations alleged to have been committed by unspecified Defendants. *Id.* ¶ 135.

Count VII asserts claims, in connection with the buyback program against all Defendants under Sections 9(a) and 9(f) of the Securities Exchange Act of 1934 for "(a) employ[ing] devices, schemes, and artifices to defraud; (b) ma[king] untrue statements of material fact and/or omit[ing] to state material facts necessary to make the statements not misleading; and (c) engag[ing] in acts, practices, and a course of business that operated as a fraud and deceit upon the purchasers of securities in an effort to maintain artificially high market prices for certain digital tokens." *Id*. ¶ 137. The statements complained of are alleged to have "create[d] the appearance of liquidity in Aspen Coin or artificially inflate[d] the price of Aspen Digital". *Id.* ¶ 139. Plaintiff alleges he believed "said misrepresentations and omissions . . . to be true," and that, had he and the marketplace known the truth regarding Defendants' control over the market and manipulation of the price of redemption, which was not disclosed by Defendants, Plaintiff would not have transacted for or held Defendants' securities, or, if he had, he would not have done so at the artificially inflated prices." *Id*. ¶¶ 143, 144.

## IV. ARGUMENT

### A. Legal Standards

Defendants bring this Motion under Fed. R. Civ. P. 12(b)(6), which allows for early dismissal of a complaint under the doctrine of claim preclusion, *Stan Lee Media, Inc. v. Walt Disney Co.* 774 F.3d 1292 (10th Cir. 2014), and for failure to satisfy pleading standards. *Employees' Ret. Sys. of Rhode Island v. Williams Companies, Inc.*, 889 F.3d 1153,

1161 (10th Cir. 2018). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Brokers' Choice of Am. Inc. v. NBC Universal, Inc.* 861 F.3d 1081, 1103 (10th Cir. 2017).

### B. This Motion Need Not Be Converted to a Motion for Summary Judgment

Civil Practice Standard 7.1B(c) requires a Rule 12(b) movant who relies on matters outside the pleadings to address whether the motion should be converted into a motion for summary judgment. In this case, the Motion need not be converted.

On a motion under Rule 12(b)(6), the Court may consider the contents of the complaint, and (1) documents that the Complaint incorporates by reference; (2) documents referred to in the Complaint if the documents are central to the plaintiff's claim and the parties do not dispute their authenticity; and (3) matters of which the Court may take judicial notice. *Wasatch Equality v. Alta Ski Lifts Co.* 820 F.3d 381, 386 (10th Cir. 2016).

Here, the Amended Complaint references the Purchase Agreement (SAC ¶ 47) and alleges a contractual claim to "liquidate or redeem" his coins (*id*. ¶ 103) and thus is central to Plaintiff's claim. Furthermore, the Purchase Agreement annexed as an exhibit hereto was filed as an exhibit in the New York litigation, where its authenticity was not contested. Moreover, the filings in the New York Lawsuit are subject to judicial notice. *See* F.R.E. 201; *Bruce v. City and County of Denver*, 57 F.4th 738, 742 fn.3 (10th Cir. 2023) ("In ruling on a motion to dismiss, a federal court may take judicial notice of another court's publicly filed records if they have a direct relation to the matters at issue"). Thus,

the Court may consider the Purchase Agreement without converting the Motion to one for summary judgment.

### C. PLAINTIFF'S STATE-LAW CLAIMS ARE BARRED BY THE COURT'S PRIOR DECISION AND SHOULD BE STRICKEN AS TO THE U.S. DEFENDANTS.

The SAC purports to re-allege Counts I-V of the Amended Complaint against the U.S. Defendants, which the Court dismissed in its June 30, 2025 Decision without leave to replead (Dkt. No. 74, Tr. at 30:19-31:3) ("These claims could have been, should have been, and in some cases were brought in the New York litigation, and it is wholly improper to try and revive them here . . . . So the state law claims are barred, and so to the extent the motion to dismiss targets those five claims, that will be granted."). Plaintiff's suggestion that these claims are "repeated here for sake of preservation" (SAC nn. 2-6) is without merit. Parties are not required "to replead claims previously dismissed on their merits in order to preserve those claims." *David v. TXO Prod. Corp.,* 929 F.2d 1515, 1518 (10th Cir.1991). "Thus, inclusion of claims already dismissed by the Court is unnecessary and inserts futile claims back into the complaint. Further, under the law of the case doctrine, parties cannot simply reincorporate allegations made in their previous complaint that have already been dismissed." *Friedman v. Dollar Thrifty Auto. Grp., Inc.*, No. 12-CV-02432-WYD-KMT, 2015 WL 4036319, at *8 (D. Colo. July 1, 2015) (striking previously-dismissed claims from amended pleading under Rule 12(f)).

Under Fed. R. Civ. P. 12(f), the "court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." "To the extent Plaintiff may have attempted to reassert claims in his Second Amended Complaint . . . that were dismissed *with prejudice* from his Amended Complaint . . . , an argument could

be made that such material is redundant, immaterial, or perhaps even impertinent. "*Allen v. Williams*, No. 20-CV-01944-WJM-KLM, 2022 WL 17551564, at *4 (D. Colo. Dec. 8, 2022), *report and recommendation adopted sub nom. Allen v. CHP*, No. 20-CV-1944-WJM-KLM, 2023 WL 2553116 (D. Colo. Mar. 17, 2023). Here, Counts I-V of the SAC were dismissed with prejudice as against the U.S. Defendants; they should be stricken.

### D. Plaintiffs' Federal Claims Fail to State a Claim for Relief.

Where a Complaint "asserts a claim under the Securities Exchange Act, it must also satisfy the requirements of the Private Securities Litigation Reform Act," which "requires that allegations of misrepresentation must satisfy a heightened standard." *Employees' Ret. Sys. of Rhode Island*, *supra*, 889 F.3d at 1161. Under the PSLRA, the complaint must "specify each statement alleged to have been misleading" and must "with respect to each act or omission alleged to violate this chapter, state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C.A. §§ 78u-4(b)(1)(B), 78u-4(b)(2)(A). Both Counts VI and VII are subject to this heightened pleading standard.

Count VII charges Defendants with liability under Section 9(a) of the Exchange Act, 15 U.S.C. § 78i, but fails to plead any actual grounds for liability under that provision. Though Plaintiff does not state which subsections of Section 9(a) form the basis for his claim, the only subsections that might be germane are subsections 9(a)(2) and 9(a)(4).[2]

[2] In his opposition to the U.S. Defendants' Motion to Dismiss the Amended Complaint, Plaintiff relied on the standard for Section 9(a)(2), *see* Dkt. No. 59 at 18, and it would be appropriate to hold him to that construction of his claim. Nevertheless, the U.S. Defendants also analyze the Section 9(a)(4) standard for completeness' sake.

To adequately plead a claim under Section 9(a)(2) of the Securities Exchange Act, 15 U.S.C. § 78i, Plaintiff would need to allege "(1) a series of transactions in a security creating actual or apparent trading in that security or raising or depressing the price of that security, (2) carried out with scienter (3) for the purpose of inducing the security's sale or purchase by others, (4) [that] was relied on by the plaintiff, and (5) affected plaintiff's purchase or selling price." *Perry v. Eastman Kodak Co.*, 962 F.2d 10 (Table), 1992 WL 103695 at *7 (7th Cir. 1992). Similarly, "Subsection 9(a)(4), as privately enforced through subsection 9(e), requires a (1) misstatement or omission (2) of material fact (3) made with scienter (4) for the purpose of inducing a sale or purchase of a security (5) on which the plaintiff relied (6) that affected plaintiff's purchase or selling price." *Id*. at 1161-62 (footnotes omitted). *Accord*, *Salvani v. InvestorsHub.com, Inc.*, 628 F. App'x 784, 786 (2d Cir. 2015). Plaintiff's allegations fail to show most of these elements.

**1. Plaintiff has failed to plead his claims with the requisite particularity.**

When the Court dismissed Plaintiff's prior attempt at stating an Exchange Act claim, it instructed Plaintiff that the SAC must "identify particular defendants in terms of what they're actually doing or saying that you're claiming is a violation of the Exchange Act and at least some allegations that they possess the requisite state of mind to have these claims" (Dkt. No. 74, Tr. 31:13-17). Plaintiff has disregarded this direction: the SAC is littered with group pleading, including such uninformative allegations as "Defendants acted with scienter" (SAC ¶ 81); "Defendants' representations to the market were intended to (and have) created a false sense of liquidity and volume" (*id*. ¶ 74); and "Defendants' hidden intentions were to keep him stuck in Aspen Coin" (*id*. ¶ 90). Indeed, the

SAC makes no mention at all of Defendants 315 East Dean Associates, Inc. ER Global LLC, ER Merry Way LP as to the federal claims, yet Count VII is asserted against each of them.

**2. Plaintiff did not rely on Defendants' statements or transactions.**

"Reliance by the plaintiff upon the defendant's deceptive acts is an essential element of" these claims because proof of reliance ensures that there is a proper connection between a defendant's misconduct and a plaintiff's injury." *In re Jan. 2021 Short Squeeze Trading Litig.*, No. 21-2989-MDL, 2023 WL 9035671, at *21 (S.D. Fla. Nov. 13, 2023) (internal quotation marks omitted). Plaintiff has failed to plead facts demonstrating reliance because "nowhere in the [S]AC is there any mention that the . . . Defendants did anything that influenced Plaintiffs' conduct. Plaintiffs . . . never tie any of their own actions to anything the . . . Defendants purportedly did." *Cohen v. Stevanovich*, 722 F. Supp. 2d 416, 433 (S.D.N.Y. 2010).

Here, Plaintiff cannot say that he relied on Defendants' buyback program statements or transactions in choosing to buy Aspen Coin Tokens because he bought his tokens in 2018, many years before the buyback programs (and the statements about them) occurred. Moreover, the Purchase Agreement (Ex. 1 hereto) makes clear that when Plaintiff purchased the tokens in 2018, he knew they were illiquid. Nor does Plaintiff complain about selling his tokens at an alleged manipulated price—while he admits that he participated in the buyback program, his claim is specifically ***not*** aimed at any of those transactions; his grievance is that he was unable to sell more tokens at the advertised buyback price. This does not flow from any reliance by Plaintiff on the buyback program.

*See Cohen*, *supra* (holding that "Plaintiffs who allegedly were 'precluded from selling their stock' altogether . . . did not take any action and, therefore, could not have relied on the . . . Defendants' alleged statements.").

**3. Plaintiff cannot satisfy the purchase-or-sale requirement.**

"A plaintiff may recover only for losses that result from decisions to buy or sell, not from decisions to hold or refrain from trading." *Cohen*, *supra* (citation omitted). Since Plaintiff's Section 9(a) claim does not concern his consummated purchases or sales of tokens, he cannot show that Defendants' acts affected his "purchase or selling price," an element of both Section 9(a)(2) and 9(a)(4) claims. *See id*. ("[B]ecause it is well-established that the mere retention of securities during a period of an alleged violation does not satisfy the purchaser-seller requirement, those Plaintiffs [who were unable to sell their stock] have pled themselves out of their claims.") (citation omitted).

**4. Plaintiff cannot demonstrate a loss caused by Defendants' actions.**

Under the PSLRA, Plaintiff has "the burden of proving that the act or omission of the defendant alleged to violate this chapter caused the loss for which the plaintiff seeks to recover damages." 15 U.S.C. § 78u-4. This requires Plaintiff to plead both a specific loss and "a causal connection between [Defendants' allegedly wrongful conduct] and the loss. *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 342 (2005). Plaintiff has neither pleaded a loss—his claim revolves around tokens he owns, not tokens he sold or whose value fell after he purchased them at a manipulated price—nor has he attempted to connect a loss to any particular Defendant's conduct. Indeed, since Plaintiff alleges that the market price of his tokens has been ***increased*** by the supposed "market manipulation" (SAC ¶¶ 137,

140, 143-46), he could not possibly plead a loss in connection with a sale, let alone loss causation.

### 5. Count VI must be dismissed for failure to plead De Baets' control over a culpable person.

Counts VI alleges a claim against Defendant De Baets under Section 20(a) of the Exchange Act, 15 U.S.C. § 78t(a). This provision allows a private action against an individual who constitutes a "control person" under the Act, making such person liable for securities law violations committed by another person he or she controls. *In re Overstock Sec. Litig.*, 119 F.4th 787, 807 (10th Cir. 2024). "To avoid dismissal, a complaint must allege facts from which it can be inferred that the defendant had actual power or influence over the controlled person. The Section 20(a) defendant must not only have actual control over the primary violator, but have actual control over the *transaction* in question." *Cohen*, supra, 722 F. Supp. 2d at 435 (emphasis in original) (citations omitted).

Count VI fails to meet these standards. Despite broad, conclusory allegations about De Baets' control over "Defendants," the SAC does not identify the specific "controlled person" whose liability De Baets is to share, let alone plead with particularity facts demonstrating his control over that person's culpable conduct. And, since liability under Section 20(a) hinges on a controlled person's liability for a primary violation, *see In re Overstock Sec. Litig.*, 119 F.4th at 807, the deficiencies in Count VII require the dismissal of Count VI as well.

## V. CONCLUSION

Plaintiff's attempt to make a federal case out of a long-ago dismissed state law claim should be rejected: Plaintiff's "injury" is caused not by market manipulation but by

his choice to invest his money in an illiquid asset that is difficult to sell. While he may well be disappointed that a $250,000 buyback program did not allow him to sell over a million dollars' worth of tokens, that disappointment does not arise from Defendants misleading the market, let alone from his reliance thereon, and that disappointment does not constitute an economic loss. There is no potential amendment that could cure these issues, so the SAC should be dismissed with prejudice.

WHEREFORE, the U.S. Defendants respectfully move this honorable Court, in accordance with Fed. R. Civ. P. 12(b)(6) and 12(f), to grant this Motion, strike Counts I-V of the Second Amended Complaint as to them, and dismiss Plaintiff's Second Amended Complaint and each claim for relief therein against the U.S. Defendants with prejudice.

DATED this 8th day of September, 2025.

Respectfully submitted,

*/s/ Christopher D. Bryan*
Christopher D. Bryan
Macklin Henderson
GARFIELD & HECHT, P.C.
625 East Hyman Ave., Suite 201
Aspen, Colorado 81611
Telephone: (970) 925-1936
Fax: (970) 925-3008
cbryan@garfieldhecht.com
mhenderson@garfieldhecht.com

Richard G. Menaker
Alexander Mirkin
OFFIT KURMAN, P.A.
590 Madison Avenue, 6th Floor
New York, New York 10022
Telephone: (212) 545-1900
Fax: (212) 545-1656
rmenaker@offitkurman.com

amirkin@offitkurman.com

*Attorneys for Defendants*
*Stephane De Baets,*
*Elevated Returns, LLC,*
*315 East Dean Associates, Inc.*
*ER Global LLC, ER Merry Way LP,*
*and Aspen Digital, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 8th day of September, 2025, a true and correct copy of the foregoing **MOTION TO DISMISS AND STRIKE** was filed with the Court and served upon all parties of record via CM/ECF.

*/s/ Rebekah Ortell*
Rebekah Ortell