IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Charlotte N. Sweeney

Civil Action No. 1:24-cv-01950-CNS

JASON KIRSCHENBAUM,

Plaintiff,

v.

STAPHANE MR. DE BAETS,
ELEVATED RETURNS, LLC,
315 EAST DEAN ASSOCIATES, INC.,
ASPEN DIGITAL, INC.,
THOSAPONG JURUTHAVEE,
RAVIPAN JURUTHAVEE,
ER GLOBAL LLC, and
ER MERRY WAY LP,

Defendants.

---

**ORDER**

---

Before the Court are two related motions. First, Defendants Stephane De Baets (Mr. De Baets), Elevated Returns, LLC (Elevated Returns), 315 East Dean Associates, Inc., ER Global LLC, ER Merry Way LP, and Aspen Digital, Inc. (collectively, the U.S. Defendants) filed a Motion to Dismiss and Strike. ECF No. 83. Plaintiff Jason Kirschenbaum opposes the motion, ECF No. 88, and the U.S. Defendants have filed a reply, ECF No. 91. Second, Defendants Thosapong Jaruthavee and Ravipan Jaruthavee

(Jaruthavee Defendants[1]) filed a Motion to Dismiss. ECF No. 84. Plaintiff opposes the motion, ECF No. 89, and the Jaruthavee Defendants have filed a reply, ECF No. 90. For the following reasons, the Court grants in part and denies in part the U.S. Defendants' Motions to Dismiss and Strike, ECF No. 83, and grants the Jaruthavee Defendants' Motion to Dismiss, ECF No. 84.

## I. BACKGROUND[2]

This action arises out of a series of cryptocurrency investments by Plaintiff with Defendants. Towards the end of 2015, Plaintiff began to discuss the formation of a single asset real estate investment trust (REIT) with Mr. De Baets. ECF No. 71, ¶ 21. Around February 2016, Mr. De Baets introduced Plaintiff to his partner, Mr. Jaruthavee, to discuss the REIT and other business ventures. *Id.* ¶ 22. Mr. De Baets and Mr. Jaruthavee represented to Plaintiff that they would be partners with Plaintiff in implementing Plaintiff's ideas. *Id.* Mr. Jaruthavee would fund the venture and maintain 50% equity, while Plaintiff and Mr. De Baets would each hold 25% equity. *Id.* Plaintiff, Mr. Jaruthavee, and Mr. De Baets agreed to share in the profits and liabilities. *Id.* ¶ 23. On March 22, 2026, Plaintiff, Mr. Jaruthavee, and Mr. De Baets signed an agreement letter to that effect. *Id.* ¶ 27. The agreement contemplated the creation of a single asset REIT using the Sunset Tower Hotel in Los Angeles, California, as well as other deals. *Id.* ¶¶ 27, 28.

---

[1] Previously identified as Juruthavee in the First Amended Complaint (FAC). ECF No. 43 at 5.

[2] The following facts are drawn from Plaintiff's Second Amended Complaint (SAC). ECF No. 71. For purposes of this motion, the Court accepts as true, and views in the light most favorable to Plaintiff, all factual allegations contained in the complaint. *See Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009).

In 2017, Plaintiff, Mr. Jaruthavee, and Mr. De Baets agreed to change the underlying asset of the REIT from the Sunset Tower Hotel to the St. Regis Aspen Hotel. *Id.* ¶ 34. Defendants restructured the sale of shares in the St. Regis Aspen Hotel as a securitized token known as Aspen Coin. *Id.* ¶ 42. In October 2018, Mr. De Baets represented to Plaintiff that they could not close the deal or obtain investments from certain other Defendants if Plaintiff did not contribute to the Aspen Coin deal. *Id.* ¶ 46. Aspen Coin closed at $18 million, with Plaintiff contributing over $1.36 million based on Mr. De Baets' representations. *Id.* ¶ 48. Plaintiff then invested his Aspen Coin into Securitize, a compliance platform and protocol for digitizing securities in the blockchain. *Id.* ¶ 57.

Plaintiff, Mr. Jaruthavee, and Mr. De Baets agreed that Defendants would liquidate or redeem Plaintiff's coins under commercially reasonable terms. *Id.* ¶ 47. Despite Defendants' repeated acknowledgement of Plaintiff's equity interest in the various ventures, *id.* ¶ 64, Defendants have not made any distributions from Plaintiff's investments and have denied him the ability to liquidate or redeem his interests, *id.* ¶¶ 47, 62–63, 67.

In June 2019, Plaintiff brought an action in New York County Supreme Court, *Kirschenbaum v. Mr. De Baets*, INDEX No. 653287/2019 (Sup. Ct. N.Y. Cty.), against all Defendants named in the instant action, with the exception of Ms. Jaruthavee, for unjust enrichment, breach of contract, breach of fiduciary duties, fraud, conversion, declaratory judgment, and other claims. *Id.* ¶ 68; ECF No. 50-1. All of Plaintiff's claims were

dismissed,[3] *id.* ¶ 73, and final judgment was entered with no appeal taken and the judgment satisfied. ECF No. 50-1 at 5; *see* Judgment-Money and Satisfaction of Judgment, *Kirschenbaum v. Mr. De Baets*, INDEX No. 653287/2019 (Sup. Ct. N.Y. Cty.), Dkt. Nos. 256, 258.

After the New York action commenced, Defendants announced a buy-back program where they would buy back up to $250,000 worth of Aspen Coin. ECF No. 71, ¶¶ 74–75. Defendants issued a press release stating that they had bought back over 20,000 tokens at an average price of $3.40 per token. *Id.* ¶ 78. Defendants repeatedly maintained that the Aspen Coins could be sold back to them through the buy back program. *Id.* ¶ 80. Plaintiff tried to sell his tokens but was unable to do so. *Id.* ¶ 82. He made almost a dozen attempts to sell his tokens at or around $3.40, but only an insignificant portion of the trades were executed. *Id.* ¶ 84. Plaintiff was only able to sell a negligible number of the tokens between $3.35 and $3.34. *Id.* After attempting to sell his tokens, the trading platform terminated his trades. *Id.* ¶ 85.

On July 15, 2024, Plaintiff filed the instant action. ECF No. 1. On December 17, 2024, Plaintiff filed an Amended Complaint, ECF No. 43, which the U.S. Defendants moved to dismiss. ECF Nos. 50, 55. After hearing oral argument, the Court granted the motion in part and dismissed without prejudice the state law claims on the grounds of res judicata. ECF No. 68. The Court noted that the ruling appeared applicable to the Jaruthavee Defendants even though they did not join the motion because they were in

[3] The New York court found that it did not have personal jurisdiction over Mr. Jaruthavee. ECF No. 71, ¶ 68.

privity with the U.S. Defendants, and in particular Mr. De Baets. ECF No. 69 at 32:9–23. The Court allowed Plaintiff to amend the complaint to clarify whether the Jaruthavee Defendants were in privity with the U.S. Defendants. *Id*. at 32:17–23. The Court also dismissed Plaintiff's two federal claims under the Exchange Act without prejudice to amendments addressing which Defendants made the misstatements that Plaintiff allegedly relied on, and in what capacity. *Id*. at 31:4–11. The Court subsequently denied Plaintiff's motion for reconsideration of its order. ECF No. 105.

Plaintiff filed a Second Amended Complaint (SAC), and brings claims for declaratory relief, breach of contract, conversion, fraudulent inducement, civil theft, unjust enrichment, and violations of Sections 9(a), (f), and 20(a) of the Securities Exchange Act. ECF No. 71. Among other changes, the SAC adds a claim for unjust enrichment against the Jaruthavee Defendants. *Id*. ¶¶ 150–55. The SAC also contains additional allegations relative to privity and the buy back program. *See, e.g.*, *id.* ¶¶ 12, 75–90. Defendants have again moved to dismiss. ECF Nos. 83, 84.

## II. LEGAL STANDARD

### A. Federal Rule of Civil Procedure 12(b)(2)

A dismissal motion pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure may be granted if the court lacks personal jurisdiction over the defendant. "Although the plaintiff bears the burden of establishing personal jurisdiction over the defendant, at the preliminary stage of the litigation, this burden is 'light,'" *BASF Corp. v. Willowood, LLC*, 359 F. Supp. 3d 1018, 1024–25 (D. Colo. 2019) (citing *Intercon, Inc. v.*

*Bell Atl. Internet Sol., Inc.*, 205 F.3d 1244, 1247 (10th Cir. 2000)), and Plaintiff need "only make a prima facie showing of personal jurisdiction" for its claims to survive. *Melea, Ltd. v. Jawer SA*, 511 F.3d 1060, 1065 (10th Cir. 2007). This prima facie showing can be met "by demonstrating, via affidavit or other written materials, facts that if true would support jurisdiction over the defendant." *Id.* (citation omitted). While the Court must accept as true the well-pled facts in Plaintiff's complaint, it will do so only if those facts are undisputed by the defendants' affidavits. *Id.* (citing *Wenz v. Memery Crystal,* 55 F.3d 1503, 1505 (10th Cir. 1995)). If the jurisdictional allegations are challenged by an appropriate pleading, Plaintiff must then "support [the] jurisdictional allegations in a complaint by competent proof of the supporting facts." *Pytlik v. Prof'l Ltd*., 887 F.2d 1371, 1376 (10th Cir. 1989); *see also BASF Corp.*, 359 F. Supp. 3d at 1024–25.

**B. Federal Rule of Civil Procedure 12(b)(6)**

Under Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Allegations are read in "the context of the entire complaint." *Chilcoat v. San Juan Cnty.*, 41 F.4th 1196, 1207 (10th Cir. 2022) (quotation omitted). In evaluating a motion to dismiss, "the court must take as true all well-pleaded facts, as distinguished from conclusory allegations, view all reasonable inferences in favor of the nonmoving party, and liberally construe the pleadings." *Reznik v. inContact, Inc.*, 18 F.4th 1257, 1260 (10th Cir. 2021) (citation modified). A plausible claim is one that allows the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662,

678 (2009). If a complaint's allegations are "so general that they encompass a wide swath of conduct, much of it innocent," then a plaintiff has failed to "nudge [the] claims across the line from conceivable to plausible." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quotation omitted). In assessing a claim's plausibility, "legal conclusions" contained in the complaint are not entitled to the assumption of truth. *See Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011). The standard, however, remains a liberal pleading standard, and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Dias v. City & County of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009) (quotation omitted).

## III. DISCUSSION

### A. State Law Claims

#### *1. Personal Jurisdiction Over Jaruthavee Defendants*

The Jaruthavee Defendants argue that the Court lacks personal jurisdiction over them. ECF No. 84 at 8–10. "First, [courts] ask whether any applicable statute authorizes the service of process on defendants. Second, [courts] examine whether the exercise of such statutory jurisdiction comports with constitutional due process demands." *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008). Rule 4(k)(1)(A) "instructs the district court [] to apply the law of the state in which the district court sits." *Id*. "Colorado's long-arm statute, in turn, confers the maximum jurisdiction permissible consistent with the Due Process Clause." *Id*. (citing *Archangel Diamond Corp. v. Lukoil,*

123 P.3d 1187, 1193 (Colo. 2005)). "Thus, in our case, the first, statutory, inquiry effectively collapses into the second, constitutional, analysis." *Id*.

The Jaruthavee Defendants contend that the Court does not have specific personal jurisdiction over them. ECF No. 84 at 8–9. "[S]pecific jurisdiction is proper if (1) the out-of-state defendant purposefully directed its activities at residents of the forum State, and (2) the plaintiff's alleged injuries arise out of or relate to those activities." *XMission, L.C. v. PureHealth Rsch.*, 105 F.4th 1300, 1308 (10th Cir. 2024) (citations and quotations omitted).

Plaintiff contends that Mr. and Ms. Jaruthavee own the St. Regis Hotel in Aspen, ECF No. 71, ¶¶ 13, 19, did business while on a flight to Colorado, *id*. ¶ 44, and allegedly manipulated the Colorado market with their false buy back program, *id*. ¶ 77. According to the SAC, Mr. Jaruthavee started a cryptocurrency venture in 2015 for security tokens backed by the St. Regis Aspen Hotel. *Id*. ¶ 2. Although a close call, the Court finds that the first prong of the specific jurisdiction test is met because Mr. Jaruthavee has allegedly continuously invested in and traded Colorado property assets since 2015. *See CIT Grp./Com. Servs., Inc. v. Love*, No. 07-CV-01272-JLK-GJR, 2007 WL 4300113, at *5 (D. Colo. Oct. 17, 2007), *report and recommendation adopted,* No. CIV.A. 07-CV-01272JL, 2007 WL 4322010 (D. Colo. Dec. 6, 2007) (concluding that there was specific personal jurisdiction where "a central, and indeed necessary, part of [the] suit [was Defendant]'s interest in the Colorado property."). As his daughter acted as his alter ego, *id*. ¶ 13, her alleged activities also satisfy the first prong. The second prong is also met

because Plaintiff's alleges injuries that primarily stem from his inability to redeem the Aspen Coin. Thus, the constitutional demands of due process are met.

Next, the Jaruthavee Defendants contend that they were not properly served with process. ECF No. 84 at 10. "In opposing a motion to dismiss for insufficient process or insufficient service of process, plaintiff bears the burden of making a prima facie case that he has satisfied statutory and due process requirements so as to permit the court to exercise personal jurisdiction over the defendant." *Sarnella v. Kuhns*, No. 17-CV-02126-WYD-STV, 2018 WL 1444210, at *1 (D. Colo. Mar. 23, 2018) (quotations and citations omitted). "Plaintiff must demonstrate that the procedure employed by him to effect service satisfied the requirements of Rule 4 of the Federal Rules of Civil Procedure." *Id.*

Here, Plaintiff argues that he served Ms. Jaruthavee at her dwelling in compliance with Rule 4(e)(2)(B), which contemplates "leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there." The Court is not convinced.

Plaintiff submits an affidavit of service on an individual over the age of thirty-five at a New York address allegedly confirmed to be Ms. Jaruthavee's residence. *See* ECF No. 87. Yet, Ms. Jaruthavee testifies that she resides in Thailand, and she only occasionally uses the New York apartment when she visits the United States. ECF No. 84-1, ¶¶ 5, 7. Plaintiff has also filed two affidavits of service that appear to contradict one another. ECF Nos. 54, 87. The two affidavits are identical except that one affidavit states that Ms. Jaruthavee was served at "Apt. #30AE" while the other contemplates service at "Apt.

#38E" at a New York address. *Compare* ECF No. 87, *with* ECF No. 54. Ms. Jaruthavee also testifies that while she holds an interest in apartment 30AE, there is no apartment 38E in the building. ECF No. 84-1, ¶ 5. Plaintiff maintains that the discrepancy is "merely a dictation typo," ECF No. 89 at 10 n.5, but the record does not establish that Ms. Jaruthavee was served at the intended address or that the New York apartment is her dwelling or usual place of abode.

The Court also finds that Plaintiff has failed to properly serve Mr. Jaruthavee. Rule 4(f) governs service on an individual in a foreign country and allows for service "by any internationally agreed means [] such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents." If there is no internationally agreed means of service, an individual in a foreign country may be served by a "method that is reasonably calculated to give notice [] as prescribed by the foreign country's law for service in that country," "as the foreign authority directs in response to a letter rogatory or letter of request," or "by other means not prohibited by international agreement, as the court orders." Fed. R. Civ. P. 4(f)(2).

Here, Thailand is not a signatory to the Hague Convention. *Moglia v. Israelsen*, No. 1:25-CV-00086, 2025 WL 2819358, at *3 n.26 (D. Utah Oct. 3, 2025) (citing Contracting Parties, Hague Conference on Private International Law, (Hague Contracting Parties) https://www.hcch.net/en/instruments/conventions/status-table/?cid=17). It is therefore necessary to determine whether service was made in accordance with Rule

4(f)(2). Plaintiff submits a declaration[4] by Mr. Tongmee, a licensed Thai attorney, which contains an English translation of the Thai Civil Procedure Code (CPC). ECF No. 89-2. Plaintiff relies on Section 74 and 76 of the CPC to argue compliance with Rule 4(f)(2). ECF No. 89 at 11. Those provisions, however, contemplate service by a court officer. *See* ECF No. 89-2 at 14 ("Service…by a court officer" and "When a court officer cannot find the party…"). And Section 83 of the CPC provides that a court officer is a "competent authority of the court." *Id*. at 16.

Plaintiff's submitted affidavit of service upon Mr. Jaruthavee shows that service was performed by a messenger, not a court officer. ECF No. 58. Thus, the Court finds that there was not proper service under Rule 4(f)(2).

Accordingly, the Court does not have personal jurisdiction over the Jaruthavee Defendants. Thus, the claims as to the Jaruthavee Defendants are dismissed without prejudice.[5]

---

[4] The declaration was originally submitted in a different matter, *In re Old DDUS, Inc.*, 659 B.R. 810, 829 (Bankr. S.D.N.Y. 2024).

[5] Even if Plaintiff were to properly serve the Jaruthavee Defendants, the claims against them are likely barred by res judicata. Claims One through Five and Eight of the SAC assert state law claims against all Defendants. ECF No. 71. The Court previously dismissed Claims One through Five as barred by res judicata. ECF No. 69 at 32:9–16. Plaintiff filed a Motion to Reconsider. ECF No. 80. That motion remained pending until the Court's February 4, 2026 Order. ECF No. 105. In the interim, Plaintiff filed his Second Amended Complaint and reasserted Claims One through Five against all Defendants. ECF No. 71 at 35–42, 49. The Court's order, ECF No. 105, confirms that those claims are dismissed against all Defendants. *See* ECF No. 69 at 32:7–16. Given the above, the U.S. Defendants' Motion to Strike the re-alleged claims is denied as moot. ECF No. 83.

**B. Federal Claims**

Plaintiff asserts two federal claims in the SAC. In his Seventh Claim, Plaintiff alleges that Defendants manipulated the market in violation of Section 9(a) and 9(f) of the Exchange Act. ECF No. 71, ¶¶ 136–49; 15 U.S.C. § 78i. Plaintiff also alleges in his Sixth Claim that Mr. De Baets was a "controlling person" of Defendants under Section 20(a) of the Exchange Act, and was therefore liable for the other Defendants' actions. *Id.* ¶¶ 125–35. The U.S. Defendants move to dismiss both claims, averring that Plaintiff fails to state a claim. ECF No. 83. The Court agrees.

*1. Consideration of Extrinsic Exhibits on a Rule 12(b)(6) Motion to Dismiss*

The U.S. Defendants submit the Purchase Agreement for the Court to consider in connection with their dismissal motion. *See id*. at 3; ECF No. 83-1. And Plaintiff submits his declaration in support of his response to the dismissal motion. ECF No. 88-1. Generally, in considering a dismissal motion under Rule 12(b)(6), "the sufficiency of a complaint must rest on its contents alone." *Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010) (citing *Casanova v. Ulibarri,* 595 F.3d 1120, 1125 (10th Cir. 2010)). Limited exceptions to this restriction include "(1) documents that the complaint incorporates by reference, (2) documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity, and (3) matters of which a court may take judicial notice." *Id.* (cleaned up and citations omitted).

The Purchase Agreement was referenced in the SAC. *See* ECF No. 71, ¶¶ 47, 73. Plaintiff argues that the Court should not consider the Purchase Agreement on motion to dismiss, but does not explicitly contest its authenticity. ECF No. 88 at 13. Nonetheless,

the Court retains discretion to consider external exhibits and it declines to consider the Purchase Agreement at this stage of litigation. *See Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002) ("[T]he district court *may* consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity.") (emphasis added). In addition, the Court cannot properly consider Plaintiff's declaration, ECF No. 88-1, as it does not fall into any of the three exceptions.

*2. Seventh Claim: Sections 9(a) and (f)*

Plaintiff alleges that Defendants engaged in a fraudulent scheme to promote their Buy-Back Program in violation of Sections 9(a) and (f) of the Securities Exchange Act. ECF No. 71, ¶ 137. The U.S. Defendants present four arguments as to why Plaintiff's allegations are insufficient. The Court accepts most of the arguments.

15 U.S.C. § 78i prohibits the manipulation of securities prices. *See* 15 U.S.C. § 78i(a)(1),(4) (prohibiting manipulation of security prices for the purpose of creating a "false or misleading appearance of active trading" and "inducing the purchase or sale of such security" through false and misleading statements). Market manipulation is "virtually a term of art when used in connection with securities markets. It connotes intentional or willful conduct designed to deceive or defraud investors by controlling or artificially affecting the price of securities." *Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 199 (1976) (quotations and citations omitted). Although the Tenth Circuit has not defined the pleading requirements to state a claim under Section 9(a), the Court applies the elements of a claim under Section 10(b) and Rule 10b-5:

> (1) the defendant made an untrue or misleading statement of material fact, or failed to state a material fact necessary to make statements not misleading; (2) the statement complained of was made in connection with the purchase or sale of securities; (3) the defendant acted with scienter, that is, with intent to defraud or recklessness; (4) the plaintiff relied on the misleading statements; and (5) the plaintiff suffered damages as a result of his reliance.

*Mark Tcherkezian v. Ibotta, Inc. et al.*, No. 25-CV-01213-NYW-SBP, 2026 WL 2224643, at *6 (D. Colo. Aug. 3, 2026) (quoting *In re Level 3 Commc'ns, Inc. Sec. Litig.*, 667 F.3d 1331, 1333 (10th Cir. 2012)); *see Set Cap. LLC v. Credit Suisse Grp. AG*, 996 F.3d 64, 82 (2d Cir. 2021) (defining the same elements under Section 9(a) and 10(b)); *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 616–17 (7th Cir. 2011) (establishing similar elements under Section 9(a)).

Because Plaintiff asserts a claim under the Securities Exchange Act, the SAC must also satisfy the requirements of the Private Securities Litigation Reform Act (PSLRA). *See Employees' Ret. Sys. of Rhode Island v. Williams Companies, Inc.*, 889 F.3d 1153, 1161 (10th Cir. 2018). "[T]he PSLRA requires that allegations of misrepresentation must satisfy a heightened standard: [T]he complaint must specify each statement alleged to have been misleading, the reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which [the plaintiff's] belief is formed." *Id*. (quotations and citations omitted). The PSLRA imposes a pleading standard that is more strict than that of Rule 9(b). *In re Molycorp, Inc. Sec. Litig.*, 157 F. Supp. 3d 987, 1001 (D. Colo. 2016), *as amended* (Jan. 28, 2016) (citing *In re Qwest Commc'ns Int'l, Inc.*, 396 F. Supp. 2d 1178, 1188 (D. Colo. 2004) and *City of Phila. v. Fleming Cos.,*

*Inc.,* 264 F.3d 1245, 1258 (10th Cir. 2001)). First, the Court will address whether Plaintiff's claims meet the PSLRA's particularity requirements.

*i. Particularity*

First, Defendant argues that Plaintiff failed to plead his claims with the requisite particularity because he relies on group pleading and does not make any allegations as to 315 East Dean Associates, Inc., ER Global LLC, or ER Merry Way LP. ECF No. 83 at 11.[6] Courts in this District have repeatedly recognized that group pleading is incompatible with the PSLRA's particularity requirements, especially relative to scienter allegations. *See Mark Tcherkezian v. Ibotta, Inc. et al.*, No. 25-CV-01213-NYW-SBP, 2026 WL 2224643, at *9 (D. Colo. Aug. 3, 2026); *Cupat v. Palantir Techs., Inc.*, No. 1:22-CV-02805-GPG-SBP, 2025 WL 1141534, at *8 (D. Colo. Apr. 4, 2025); *Annette Martin v. Ignacio Cruz-Mendoza et al.*, No. 25-CV-02457-NYW-TPO, 2026 WL 2640639, at *4 (D. Colo. Sept. 8, 2026). Plaintiff's cited authority, *Lamothe v. Decentral Life, Inc.*, No. 23-CV-03251-RMR-STV, 2024 WL 5055576, at *4 (D. Colo. Oct. 24, 2024), fails to persuade because it addresses the pleading standard under Rule 9(b), rather than the heightened PSLRA standard.

Here, the SAC does not tie the scienter allegations to specific defendants, except with regards to Mr. De Baets and the Jaruthavee Defendants. *See* ECF No. 71, ¶¶ 76, 81, 140. Thus, Plaintiff fails to plead with particularity except as to Mr. De Baets and the Jaruthavee Defendants, the latter of which the Court has no jurisdiction over (*see supra*).

[6] The Court previously instructed Plaintiff to identify which defendants took actions or made statements that Plaintiff claims to be violations of the Securities Exchange Act. ECF No. 69 at 31:4–11.

*ii. Reliance*

Next, the U.S. Defendants argue that Plaintiff failed to allege that he relied on defendant's deceptive statements. ECF No. 83 at 12. First, the U.S. Defendants rely on the Purchase Agreement to demonstrate that Plaintiff knew the Aspen Coin Tokens were illiquid when he purchased them. *Id*. For the reasons stated above, the Court will not consider extrinsic evidence at this stage.[7]

Plaintiff attempts to invoke a rebuttable presumption of reliance based on the fraud-on-the-market theory. ECF No. 88 at 13. As the Supreme Court has explained:

> The fundamental premise of the fraud-on-the-market theory underlying *Basic*'s presumption is "that an investor presumptively relies on a misrepresentation so long as it was reflected in the market price at the time of his transaction. To invoke the *Basic* presumption, a plaintiff must prove: (1) that the alleged misrepresentation was publicly known; (2) that it was material; (3) that the stock traded in an efficient market; and (4) that the plaintiff traded the stock between the time the misrepresentation was made and when the truth was revealed. The defendant may then rebut the presumption through [a]ny showing that severs the link between the alleged misrepresentation and either the price received (or paid) by the plaintiff, or his decision to trade at a fair market price.

*Goldman Sachs Grp., Inc. v. Arkansas Tchr. Ret. Sys.*, 594 U.S. 113, 118 (2021) (citations and quotations omitted).

Here, Plaintiff fails to invoke the *Basic* presumption because he does not sufficiently plead any of the factors that identify an efficient market. *See In re Accelr8 Tech. Corp. Sec. Litig.*, 147 F. Supp. 2d 1049, 1056–57 (D. Colo. 2001) (noting that the

---

[7] Moreover, Plaintiff clarifies in his response to the U.S. Defendants' dismissal motion that the SAC does not allege that Defendants misrepresented that Plaintiff had an inherent right to liquidate his tokens, and instead alleges that the buy back program was a farce. ECF No. 88 at 13. In any case, claims based on the representations of liquidity prior to the buy back program are likely barred by res judicata. *See, e.g.*, ECF No. 71, ¶ 60.

factors that identify an efficient market are "(a) a large weekly trading volume; (b) the existence of a significant number of reports by securities analysts; (c) the existence of market-makers and arbitrageurs in the security; (d) the eligibility of the company to file an S–3 Registration Statement; and (e) a history of immediate movement of the stock price caused by unexpected corporate events or financial releases.") (citations omitted).

The Court also concludes that Plaintiff has not properly pleaded traditional reliance. "The traditional (and most direct) way for a plaintiff to prove reliance is to show that he was aware of a defendant's misrepresentation and engaged in a transaction based on that misrepresentation." *Goldman Sachs Grp., Inc.*, 594 U.S. at 118 (quotations and citations omitted). The SAC alleges that Plaintiff attempted to trade his tokens through the buy back program, but the trades were terminated. ECF No. 71, ¶ 85. *See In re Jan. 2021 Short Squeeze Trading Litig.*, 620 F. Supp. 3d 1231, 1250 (S.D. Fla. 2022) (holding that a trading platform's rejection of customers' requests to facilitate purchase of securities falls within the meaning of a transaction). Although Plaintiff alleges that Mr. De Baets heavily invested in the platform, ECF No. 71, ¶ 85, the SAC fails to connect the termination of Plaintiff's trades to Mr. De Baets. And while Plaintiff alleges that he was forced to sell his tokens at a lower price after he could not sell them at the advertised price, *id*. ¶ 144, he does not establish that he relied on Defendants' misrepresentations in doing so. In fact, he alleges that he discovered the program was a farce before he sold the tokens at a lower price. CF No. 71, ¶ 82. Thus, the Court agrees that Plaintiff fails to

allege reliance. Notwithstanding Plaintiff's failure to allege reliance, the Court agrees with the U.S. Defendants' other arguments for dismissal.

*iii. Purchase-or-sale requirement*

The U.S. Defendants also argue that Plaintiff's allegations do not meet the "purchase-or-sale requirement." ECF No. 83 at 13. "If a person 'purchase[s] or sell[s] any security at a price which was affected" by certain manipulation, "the person so injured may sue ... to recover the damages sustained as a result of any such act or transaction.'" *Med. Marijuana, Inc. v. Horn*, 604 U.S. 593, 639 n.5 (2025) (citing 15 U.S.C. § 78i(f)).

Here, the Court agrees that Plaintiff may not recover for his inability to sell his tokens. *See* ECF No. 83 at 13; *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 735 (1975) (holding that a plaintiff has no standing to sue where there is "no actual purchase or sale of securities, or a contract to purchase or sell, affected or tainted by a violation") (citations omitted); *compare with Marini v. Adamo*, 995 F. Supp. 2d 155, 189 (E.D.N.Y. 2014), *aff'd,* 644 F. App'x 33 (2d Cir. 2016) (holding that promises that the coins were liquid and of inflated prices constituted misrepresentations under the Exchange Act because the promises were consideration for the transfer of securities).

Plaintiff cites to *Koch v. S.E.C.*, 793 F.3d 147, 150 (D.C. Cir. 2015) and *S.E.C. v. Malenfant*, 784 F. Supp. 141, 145 (S.D.N.Y. 1992), for the proposition that he need not allege that he actually purchased or sold the securities in a manipulated market. ECF No. 88 at 12. He is incorrect. Those cases are distinguishable because they are Securities and Exchange Commission (SEC) enforcement actions. Unlike private suits seeking redress of particular shareholders, "the Commission is not an injured victim." *S.E.C. v.*

*Teo*, 746 F.3d 90, 102 (3d Cir. 2014) (citied in *United States Sec. & Exch. Comm'n v. Camarco*, No. 19-1486, 2021 WL 5985058, at *15 (10th Cir. Dec. 16, 2021), to distinguish between an action initiated by a private party and an action initiated by SEC). In contrast to the requirements for private litigants set out in *Blue Chip*, the Commission need only allege that the defendant made a misrepresentation "in connection with the purchase or sale of securities." *S.E.C. v. Wolfson*, 539 F.3d 1249, 1256 (10th Cir. 2008).

The Supreme Court is clear that a plaintiff who does not purchase or sell securities may not sue for intangible economic injury such as "loss of a noncontractual opportunity to buy or sell," *Blue Chip*, 421 U.S. at 734, yet that is what Plaintiff asks the Court to allow here. *See Ohashi v. Verit Indus.*, 536 F.2d 849, 852 (9th Cir. 1976) (affirming district court's holding that plaintiff could not state a Section 10(b) or Rule 10b-5 claim based on his inability to sell or offer to sell his stock, even if his inability was caused by defendants' fraudulent or deceptive acts) (citing *id.*); 15 U.S.C. § 78bb(a) (limiting recovery in private suits to "actual damages"). Thus, only Plaintiff's allegations relative to the sale of his securities meet the purchase-or-sale requirement. The allegations must still be dismissed, however, for failure to meet the other requirements of Section 9(a).

*iv. Loss*

The U.S. Defendants also maintain that Plaintiff cannot demonstrate a loss caused by their actions. ECF No. 83 at 13. Plaintiff may recover for the sale of his tokens if he proves that "the defendants' fraud caused an economic loss or 'loss causation.'" *In re SemGroup Energy Partners, L.P.*, 729 F. Supp. 2d 1276, 1301 (N.D. Okla. 2010) (quoting *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 344 (2005)). "Alleging that price has been

inflated as a result of a misrepresentation is not enough—even if the plaintiff has suffered a loss—unless the plaintiff can identify a "causal connection" between the loss and the misrepresentation." *In re Williams Sec. litigation-WCG Subclass*, 558 F.3d 1130, 1136–37 (10th Cir. 2009) (citation omitted). The plaintiff bears the burden of showing that his losses were attributable to the revelation of the fraud and not other factors that could affect a company's stock price. *Id.*

Plaintiff alleges that his loss materialized when he was only able to sell the tokens below the advertised buy back price. ECF No. 71, ¶¶ 78, 84, 143. But, as discussed above, Plaintiff has failed to allege a fraud-on-the-market theory of reliance. *See id*. ¶¶ 143–46. Even drawing all reasonable inferences in Plaintiff's favor, the SAC contains no allegations as to whether the revelation of Defendants' misrepresentations caused him to sell his tokens at a lower price. Further, Plaintiff fails to demonstrate how Defendants' misrepresentations that he could sell his tokens at a certain rate caused him to sell a portion of his tokens at a lower price. Plaintiff cites to *Marbury Management, Inc. v. Kohn,* 629 F.2d 705 (2d Cir.1980), which conflates transaction and loss causation, but that case has been effectively overruled by the Supreme Court in *Dura*. *See McCabe v. Ernst & Young, LLP.*, 494 F.3d 418, 431 (3d Cir. 2007).

Thus, Plaintiff fails to allege loss causation and fails to state a violation of Section 9(a) and (f) of the Exchange Act.

*3. Sixth Claim: Section 20(a)*

Plaintiff's Sixth Claim alleges that Mr. De Baets exercised his power and authority to cause Defendants to engage in wrongful acts. ECF No. 71, ¶¶ 125–135. Liability under § 20(a) of the 1934 Securities Exchange Act is derivative of another person's liability under the Act. *Employees' Ret. Sys. of Rhode Island v. Williams Companies, Inc.*, 889 F.3d 1153, 1162 (10th Cir. 2018). Section 20(a) provides that "a person who controls a party that commits a violation of the securities laws may be held jointly and severally liable with the primary violator." *Maher v. Durango Metals, Inc.*, 144 F.3d 1302, 1304–05 (10th Cir. 1998) ("[T]o state a prima facie case of control person liability, the plaintiff must establish (1) a primary violation of the securities laws and (2) 'control' over the primary violator by the alleged controlling person."). Because Plaintiff's claim under § 20(a) is premised on the claim that Defendants violated Section 9, the Court's rejection of Plaintiff's Section 9 claim necessarily disposes of the former as well.[8]cool

## IV. CONCLUSION

For the reasons above, the Court GRANTS IN PART and DENIES IN PART the U.S. Defendants' Motions to Dismiss and Strike, ECF No. 83, and GRANTS the Jaruthavee Defendants' Motion to Dismiss, ECF No. 84, and DISMISSES the SAC. ECF No. 71. The Clerk of Court is directed to correct the spelling of the Jaruthavee Defendants' names on the docket.

[8] The SAC also contains multiple allegations suggesting that the Jaruthavee Defendants, not Mr. De Baets, were the controlling persons. *See* ECF No. 71, ¶¶ 42, 44, 138; ECF No. 89 at 3.

DATED this 21st day of October 2026.

BY THE COURT:

____________________________________
Charlotte N. Sweeney
United States District Judge